**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(SOUTHERN DIVISION)**

| | | |
|---|---|---|
| COLOSSUS MEDIA, LLC, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | CIVIL ACTION NO. 8:24-cv-01402 |
| v. | § | |
| | § | |
| ADALYTICS RESEARCH, LLC, | § | JURY TRIAL DEMANDED |
| | § | |
| *Defendant.* | § | |
| | § | |

**AMENDED COMPLAINT**

Plaintiff Colossus Media, LLC ("Colossus SSP"), through its undersigned attorneys, files this Amended Complaint against Defendant Adalytics Research, LLC ("Adalytics") and alleges as follows:

**INTRODUCTION**

1.    Colossus SSP is a sell-side platform ("SSP") that provides advertisers of all sizes a programmatic advertising platform that automates the sale of ad inventory between advertisers and agencies leveraging proprietary technology.  Founded in 2012, Colossus SSP has grown rapidly and attracts an impressive roster of brands.  Colossus SSP is part of the Direct Digital Holdings family of brands.  Direct Digital Holdings, Inc. ("DRCT"), Colossus SSP's parent company, went public in 2019, becoming only the ninth Black-owned company to go public in the United States. On or about May 8, 2024, Adalytics began disseminating a blog post to media outlets that falsely attacked Colossus SSP.  Specifically, Adalytics falsely claimed in its post that Colossus SSP was misidentifying user IDs sent to demand side platforms ("DSPs").  Adalytics is a for-profit company that markets itself as an ad quality and transparency platform that helps brands secure control over their media investments.  Adalytics advertises and generates demand for its services by making

unfounded attacks against companies like Colossus SSP.  Adalytics has a track record of publishing inaccurate and false blog posts.  When Colossus SSP asked to review the full Adalytics post prior to publication, Adalytics callously refused and declared that Colossus SSP would see the full post when it was released to the public.  The author of the post even refused to take a phone call with one of Colossus SSP's executives to listen to the evidence showing the post was inaccurate.  Even after being presented with evidence that the Adalytics post was false and inaccurate, Adalytics refused to take down its post.  Adalytics chose to attack Colossus SSP in an effort to instill doubt in its business operations and win new customers for its "ad transparency" services.

## THE PARTIES

2.      Colossus SSP is a limited liability company formed under Delaware law.  Colossus SSP's sole member is Direct Digital Holdings, LLC, a limited liability company that has two members: DRCT, which is a corporation incorporated under Delaware law with its principal place of business in Houston, Texas, and Direct Digital Management, LLC.  The members of Direct Digital Management, LLC are SKW Financial LLC and AJN Energy & Transport Ventures, LLC. The members of SKW Financial LLC and AJN Energy & Transport Ventures, LLC are four individuals who are citizens of Texas.

3.      Defendant Adalytics is a limited liability company formed under Maryland law with its principal place of business in Gaithersburg, Maryland.  Upon information and belief, Adalytics' sole member is Krzysztof Franaszek, an individual who is a citizen of Maryland.

## JURISDICTION AND VENUE

4.      This is a civil action for federal false advertising and defamation and injurious falsehood under Maryland law.

5.      This Court has original subject matter jurisdiction over this action under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338.  This Court has supplemental jurisdiction over Colossus SSP's state and common law claims under 28 U.S.C. § 1367(a) because they are so related to the claims in this action over which this Court has original jurisdiction that they form part of the same case or controversy.

6.      This Court also has diversity jurisdiction over this lawsuit under 28 U.S.C. § 1332 because the matter in controversy exceeds $75,000, exclusive of costs and interests, and is between citizens of different states, as set forth in paragraphs 2–3.  As set forth below, Adalytics' false, defamatory, and disparaging post has caused Colossus SSP significant financial harm well in excess of $75,000.

7.      This Court has personal jurisdiction over Adalytics because it is a limited liability company formed under Maryland law and maintains its principal place of business in the state of Maryland.

8.      Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(1) because Adalytics resides in this district.  Venue is also proper in this judicial district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims asserted in this Complaint occurred in this judicial district. Venue is proper in the Southern Division because Adalytics resides in Gaithersburg, Maryland and the claims asserted in this Complaint arose from acts in Gaithersburg (Montgomery County).

## FACTUAL BACKGROUND

### A.    Colossus and Its Business

9.      In 2012, Colossus SSP was founded to provide a diverse marketplace for brands. Colossus SSP is part of the Direct Digital Holdings family of brands.  DRCT, Colossus SSP's

parent company, went public in 2019, becoming only the ninth Black-owned company to go public in the United States.

10.     Colossus SSP is an SSP that provides advertisers of all sizes a programmatic advertising platform that leverages proprietary technology to automate the sale of ad inventory between advertisers and agencies.  Colossus SSP offers extensive reach within both general market and multicultural media partners to help brands and agencies scale to reach highly sought after audiences and helps publishers find the right brands for their readers, as well as drive advertising yields across all channels: web, mobile, and CTV.

11.     Colossus SSP has attracted some of the world's most recognizable brands.  Publishers auction advertising space on their websites through SSPs like Colossus SSP.  Large brands and other advertisers buy advertising space through DSPs.  An example of a DSP is The Trade Desk ("Trade Desk").

12.     Colossus SSP transacts with DSPs to deliver ad inventory to target audiences. Advertisers want to ensure that their ads are going to their respective target audiences.  To ensure that ads are served to the buyer's target audience, SSPs and DSPs use cookie-based user IDs to identify, track, and categorize consumers.  As an example: Person A visits ESPN's website on his laptop.  Person A is associated with a sports audience segment, and the internet browser declares a user ID for Person A that is sent to an SSP.  The advertising space on the ESPN webpage that Person A is viewing is effectively for auction or sale, and the SSP sends a request for bids on that ad space to a DSP.  To send the bid request, the SSP matches Person A's user cookie ID with a DSP user ID within the parameters of the DSP's targeted sports audience segment.  Based on the match between the SSP user ID and the corresponding DSP user ID within the targeted sports segment, the DSP

then bids on the ad space on behalf of the brand. The brand's ad then appears on the ESPN website that Person A is viewing.

13.     The foregoing happens both extremely quickly—in less than half a second—and on a massive scale. Colossus SSP sees 12-15 billion ad requests on a daily basis.

14.     Colossus SSP transacts with several different DSPs. Colossus transacts with some DSPs directly and other DSPs indirectly. The majority of Colossus SSP's business comes from transactions with DSPs that Colossus SSP sends through French-owned BidSwitch, an intermediary that helps connect SSPs with DSPs. Because Colossus SSP does not connect to these DSPs directly, there is an additional layer of ID matching when Colossus SSP transacts with a DSP through BidSwitch. One of the DSPs that Colossus SSP transacts with through BidSwitch is Trade Desk. For these DSPs, when Person A visits the ESPN website, and the browser-declared user cookie ID for Person A is associated with a sports segment and sent to Colossus SSP, instead of matching Person A's user cookie ID with a DSP user ID such as a Trade Desk ID ("TDID"), Colossus SSP matches the user cookie ID with a BidSwitch ID. BidSwitch then matches the BidSwitch user ID with a user ID on the DSP side. This matched user ID on the DSP side may or may not be a TDID depending on which DSPs BidSwitch decides to send the bid request to. Colossus SSP has no control or knowledge of the DSPs to which BidSwitch sends a particular bid request, the DSP user IDs, or the value of any particular DSP user ID.

15.     As a third-party expert in the field recently explained: "Since Colossus cannot read the TDID (cookie) set in the browser by adsrvr.org (a Trade Desk domain) it relies on BidSwitch to do the matching and identify which TDID corresponds to the Colossus IDs, through 2 steps – 1) Colossus ID to [BidSwitch] ID, and 2) [BidSwitch] ID to TDID."

**B.      Adalytics and Its False, Defamatory, and Disparaging Blog Post**

16.     Adalytics is a for-profit company that purports to conduct advertising analytics to serve brands and advertisement buyers.  Adalytics describes itself as "a next generation ad quality and transparency platform" that "help[s] brands secure control over their media investments."

17.     Adalytics provides so-called analysis on digital advertising performance and advertising technology vendors, publishers, and campaigns that improperly serve advertisements. Advertisement buyers pay Adalytics for information on ad technology vendors and publishers that improperly serve their advertisements.

18.     Adalytics acknowledges that its posts are generated to advertise its services, stating: "Like many other companies, we release thought leadership on systemic issues affecting brands and their media investments . . . to . . . attract new clientele."

19.     Adalytics' business thrives on creating distrust between advertiser buyers and advertising technology vendors and products.  Adalytics is known for publishing inflammatory blog posts regarding advertising technology vendors and products for the purpose of winning new advertiser customers.

20.     In early May 2024, several reporters contacted Colossus SSP regarding an advance copy of a blog post that the reporters had received from Adalytics on Colossus SSP.  Based on the limited information that the reporters provided to Colossus SSP about the post, Colossus SSP knew that Adalytics' post contained false and inaccurate information about Colossus SSP.

21.     Colossus SSP and executives from its parent company, DRCT, reached out to Adalytics on May 8 and May 9, 2024 informing Adalytics that based on the limited information they received from reporters, the post contained false and inaccurate statements.  Colossus SSP and DRCT requested a copy of the post to allow Colossus SSP to provide information to Adalytics

to correct the false and inaccurate statements.  Colossus SSP and DRCT informed Adalytics that

they were prepared to provide all the facts and information establishing Adalytics' post was false.

22.    Departing from the standard practice of all reputable analysts or media outlets,

Adalytics refused to provide a copy of the post to Colossus SSP or DRCT prior to publishing the

post.  In addition, Adalytics refused Colossus SSP's request for a phone call prior to Adalytics

releasing the post to the public so Colossus SSP could explain in detail why the post was false and

inaccurate.

23.    On Friday, May 10, 2024, Adalytics published the blog post titled "Are user IDs

declared consistently in ad auctions?" on its website, https://adalytics.io/blog/user-id-rotation.  The

post makes false and misleading statements about Colossus SSP and its business to instill distrust

of Colossus SSP and other ad technology products among ad buyers and other ad technology

vendors for the purpose of winning new business from ad buyers.

24.    The post portrayed Colossus SSP as mis-declaring user IDs in its bid requests for

the purpose of selling ad space at higher prices to ad buyers seeking to serve advertisements to a

targeted audience.

25.    In the post, Adalytics purported to analyze and compare advertisements and bid

responses on the Trade Desk DSP through 16 different SSPs, including Colossus SSP, in order to

match the TDID declared by the SSP in its bid request and the actual cookie TDID stored in the

user's browser.  The post concluded that Colossus SSP is the only SSP for which there were

consistent misdeclarations of user IDs—that is, the TDID declared by Colossus SSP in its bid

request did not match the user's actual cookie TDID.  The post further concluded that for the other

fifteen SSPs, the TDID declared by the SSP "always perfectly" matched the user's actual cookie

TDID.

26.    The foregoing statements and conclusions of the post are false and misleading. Colossus SSP does not mis-declare or otherwise manipulate or alter user IDs in its bid requests. In fact, it is not possible for Colossus SSP to mis-declare a user's TDID because Colossus SSP connects to Trade Desk through BidSwitch and has no control or knowledge of whether BidSwitch sends a particular bid request to Trade Desk or another DSP.  And even if BidSwitch sends a bid request to Trade Desk, Colossus SSP has no knowledge of the TDIDs or the values associated with those TDIDs.  As one expert in the field recently described, SSPs that do not have direct connections to Trade Desk rely on intermediaries "to pass the correct TDID into auction on their behalf, because they are not able to do that themselves."  SSPs like Colossus SSP do not know where the bid requests will get routed by the third-party intermediary algorithms, so they do not know in advance if the bid request will be routed to Trade Desk.

27.    The post acknowledged that Colossus SSP connected to Trade Desk through BidSwitch but concluded that the mis-declared user TDIDs in Colossus SSP bid requests were unrelated to BidSwitch.  The post stated that when Trade Desk transacted with another SSP and BidSwitch, there were no discrepancies in the TDIDs sent in the bid response and the TDIDs in the users' browsers.  Instead, the post falsely concluded that for all 15 of the other SSPs that transacted with Trade Desk, the TDID declared by the SSP in its bid response "always perfectly" matched the TDID in the user's browser.  The post further stated that there were no technical explanations for the mis-declared user IDs in Colossus SSP bid requests, furthering the post's false, defamatory, and disparaging conclusion that Colossus SSP mis-declared user TDIDs.

28.    The post's statements and conclusions that the mis-declared user IDs in transactions with Colossus SSP do not have any technical explanation and are unrelated to Colossus SSP's indirect connection to Trade Desk through an intermediary are likewise false, defamatory, and

disparaging. Contrary to Adalytics' post, there were discrepancies between the TDID sent in the bid response and the TDID in the user's browser for transactions between Trade Desk and other SSPs that connect to Trade Desk through an intermediary, as demonstrated by a video assembled by Colossus SSP. That there were mismatches for other SSPs was also confirmed by a third-party expert in the field. The post falsely stated that there were no discrepancies in TDIDs for transactions with other SSPs in furtherance of the post's false and defamatory conclusion that Colossus SSP is responsible for the mis-declared TDIDs.

29.    In addition, the post includes the below image that purports to be a screenshot showing that there were no discrepancies in TDIDs for transactions with another SSP that connects to Trade Desk through an intermediary:



*Screenshot showing a Trade Desk DSP ad transacted via TrustX SSP and Bidswitch. The "tdid=" query string parameter in the Trade Desk win notification pixel matches the value of the .adsrvr.org TDID value stored in the user's Chrome browser.*

30.    Upon information and belief, Adalytics' doctored the above screenshot in furtherance of the post's false and defamatory conclusion that Colossus SSP is responsible for the

mis-declared TDIDs. This indicates that Adalytics was manipulating evidence that it presented as scientific, authentic research, putting all of Adalytics' "data" and conclusions in question.

31.     Upon information and belief, Adalytics actively worked to amplify these false statements in the marketplace in an attempt to destroy Colossus SSP's business and reputation.

32.     The post falsely defines Colossus SSP's activity as "Sophisticated Invalid Traffic" or "Cookie stuffing, recycling or harvesting (inserting, deleting or misattributing cookies thereby manipulating or falsifying prior activity of users)."

33.     As a company that claims expertise in advertising technology and programmatic advertising, Adalytics would be well aware that Colossus SSP, because its transactions occur within fractions of a second and go through an intermediary, could not systematically "fake" TDIDs to generate more revenue, as the Adalytics post states and/or implies.

34.     In fact, Adalytics' malicious intent to target Colossus SSP is apparent from its disparate treatment of BidSwitch in the same post where it defames Colossus SSP. Adalytics solely relies on BidSwitch public documentation for Adalytics' conclusion that BidSwitch is unable to deliberately mismatch TDIDs, and thus points the finger at Colossus SSP. Yet Adalytics also has no explanation for how Colossus SSP could feasibly engineer these alleged mismatches (it does not and cannot do so) but defames Colossus SSP anyway.

35.     Further demonstrating that Adalytics acted with malice, Adalytics disseminated the post to media outlets before it was public, without ever asking Colossus SSP for an explanation, underscoring that Adalytics' only goal was to spark demand for its "ad transparency" services by creating a media firestorm about Colossus SSP. And when Colossus SSP became aware of the forthcoming post from the media, Colossus SSP reasonably asked to review the full post prior to publication so that it could provide Adalytics with a complete response. Colossus SSP also

requested a phone call with Adalytics, informing Adalytics that it was prepared to provide evidence showing the post was false that it could explain to Adalytics in detail. Adalytics blankletly refused both requests. In fact, Adalytics' general counsel, Jonathan Lee, brashly told Colossus SSP that it would see the full post with the rest of the public after it was published.

36.    Enabled by Adalytics' strategy of previewing the post for the media (while refusing to release it to Colossus SSP), various media outlets published articles based on the post. Those articles further demonstrate the defamatory meaning of the Adalytics post: that Colossus SSP mis-declared user IDs in its bid requests for the purpose of increasing its sales.

37.    For example, on May 10, 2024, AdExchanger published an article on its website titled "Adalytics Claims Colossus SSP Is Injecting Fake IDs into Its Bid Requests," relying on the Adalytics post. Even after counsel for DRCT and Colossus SSP reached out to AdExchanger about the article, AdExchanger changed the title of the article to "Adalytics Claims Colossus SSP Is Misdeclaring IDs In Its Bid Requests."[1] The article states that "through matching data logs," Adalytics "documented [Colossus] SSP repeatedly misrepresenting [user] IDs." Relying on the Adalytics posts, the article states that "the altered ID info consistently replicated cookie IDs that were recently bid on highly by the Trade Desk, the DSP used by Adalytics in the report." The article also interprets the Adalytics post as concluding that BidSwitch is not responsible for the mis-declared user IDs, stating that "[t]he Adalytics report also looked at other supply-side vendors, such as TrustX and MediaGrid, which use BidSwitch for the same purpose, and found no ID injection." The article noted that "[f]or the 15 other SSPS [sic] evaluated for the report, the IDs matched every time."

---

[1] The article is available at: https://www.adexchanger.com/online-advertising/adalytics-claims-colossus-ssp-is-injecting-fake-ids-into-its-bid-requests/.

38. In short, the AdExchanger article interpreted the Adalytics post as presenting "a compelling claim of repeated fraud" by Colossus SSP.

39. Several other similar articles have been published since the release of the Adalytics post, all of which demonstrate its defamatory meaning: that Colossus SSP mis-declared user IDs for the purpose of increasing its sales, including an article on The Drum titled "Supply-side provider Colossus accused of misrepresenting user IDs in ad auctions."

40. Upon information and belief, Adalytics' false and illegal efforts were designed to eliminate Colossus SSP from the industry in order to benefit Adalytics financially.

41. Upon information and belief, Adalytics illegally doctored the screenshot and made other false statements in furtherance of this financially motivated scheme. Colossus SSP believes such illegal conduct warrants investigation by the appropriate governmental authorities.

**C.    Adalytics' False Blog Post Has Directly Harmed Colossus SSP.**

42. The false, defamatory, and disparaging post published by Adalytics has caused massive harm to Colossus SSP's business and reputation and threatens its very existence.

43. After Adalytics released an advanced copy of the post to the media on or about May 8 or May 9, 2024, on May 9, 2024, Trade Desk suspended business with Colossus SSP because of the post's claims that Colossus SSP misrepresented user IDs in its bid requests.

44. In addition, only mere hours after Adalytics published the false post on May 10, 2024, BidSwitch suspended Colossus SSP from trading through its platform because of the claims made in the Adalytics post, causing Colossus SSP significant financial harm as the majority of Colossus SSP's revenue, well in excess of the jurisdictional amount in controversy, comes from transactions through BidSwitch.

45. Beyond the direct financial harm sustained by Colossus SSP as a result of Adalytics' false post, the post has caused damage to Colossus SSP's reputation and goodwill by

accusing Colossus SSP of engaging in fraudulent activity and impeaching Colossus SSP's honesty, integrity, and core business.

## CAUSES OF ACTION

### Count I: Federal False Advertising and Unfair Competition (15 U.S.C. § 1125(a))

46.     Colossus SSP incorporates the preceding paragraphs by reference as if fully set forth herein.

47.     As described above, Adalytics made false and misleading statements in commercial advertising and promotion in violation of the Lanham Act, 15 U.S.C. § 1125.

48.     These false and misleading statements were made in an effort to damage Colossus SSP's business and reputation for the purpose of selling Adalytics' services and winning new business from ad buyers.

49.     Adalytics' statements are false and misleading descriptions of fact that have or are likely to cause confusion, mistake, or deception and misrepresented the nature, characteristics, and qualities of Colossus SSP's business and the services that it offers.

50.     Adalytics' statements have materially influenced, or are likely to materially influence, purchasing decisions because publishers, ad buyers, and ad technology vendors are misled to incorrectly believe that Colossus SSP is disreputable, is untrustworthy, and employs fraudulent business practices when it does not.

51.     Adalytics knew that its statements were false and/or misleading based on the evidence that Colossus SSP provided to Adalytics before it published the post.

52.     Adalytics' false and misleading descriptions of fact have caused and will continue to cause the loss of goodwill and the loss of current and prospective customers and industry partners who, but for Adalytics' actions, would continue or begin to do business or otherwise associate with Colossus SSP.

**Count II: Defamation (Maryland Law)**

53.     Colossus SSP incorporates the preceding paragraphs by reference as if fully set forth herein.

54.     Adalytics published false statements to the public, actual and prospective customers of Colossus SSP, and members of the industry.

55.     Adalytics' post contains false, misleading, disparaging, and defamatory statements, as described above.  These statements are unambiguously defamatory, both on their face and by necessary implication.

56.      Adalytics' false, misleading, disparaging, and defamatory statements specifically refer to Colossus SSP and are understood as referring to Colossus SSP.

57.     Adalytics' false, misleading, disparaging, and defamatory statements expressly or impliedly assert facts that are objectively verifiable.

58.     Adalytics knew that its statements were false and/or misleading based on its expertise in advertising technology and programmatic advertising, as well as Colossus SSP's repeated communications to Adalytics prior to it publishing the post to the public informing it that the post was false and Colossus SSP could demonstrate its falsity to Adalytics, which Adalytics refused.  Therefore, Adalytics published its statements with actual malice.

59.     Adalytics' false, misleading, disparaging, and defamatory statements directly and proximately injured Colossus SSP, causing the loss of customers and industry partners and resulting in special damages, as well as the loss of good will and reputational injury.

**Count III: Injurious Falsehood (Maryland Law)**

60.      Colossus SSP incorporates the preceding paragraphs by reference as if fully set forth herein.

61.     As described above, Adalytics published false, misleading, and disparaging statements about Colossus SSP's business to the public, actual and prospective customers of Colossus SSP, and members of the industry.

62.     Adalytics' statements disparage Colossus SSP's business because they claim that Colossus SSP employs fraudulent business practices when it does not.

63.     These false and misleading statements were made in an effort to damage Colossus SSP's business and reputation for the purpose of selling Adalytics' services and winning new business from ad buyers.

64.     Adalytics knew that its statements were false and/or misleading based on its expertise in advertising technology and programmatic advertising, as well as Colossus SSP's repeated communications to Adalytics prior to it publishing the post to the public informing it that the post was false and Colossus SSP could demonstrate its falsity to Adalytics, which Adalytics refused.  Therefore, Adalytics published its statements with actual malice.

65.     Adalytics' false statements have caused and will continue to cause Colossus SSP to lose current and prospective customers and industry partners who, but for Adalytics' actions, would continue or begin to do business or otherwise associate with Colossus SSP.  Adalytics' false statements played a material and substantial part in inducing industry partners and customers not to do business with Colossus SSP.

## JURY DEMAND

Colossus SSP demands a trial by jury on all claims and issues so triable.

## PRAYER FOR RELIEF

Colossus SSP respectfully requests that the Court enter judgment in its favor and against Adalytics as follows:

A.     an award of Colossus SSP's damages;

B.      disgorgement of Adalytics' ill-gotten profits;

C.      an award in an amount that will enable Colossus SSP to engage in corrective

advertising at a level that will effectively counter Adalytics' unlawful activity;

D.      an award of Colossus SSP's reasonable attorneys' fees and costs of this action;

E.      punitive damages in a sum to be determined by the trier of fact;

F.      pre- and post-judgement interest as allowed by law;

G.      an order requiring Adalytics to retract its false statements and engage in corrective

advertising; and

H.      such other and further relief to which Colossus SSP may be entitled.

Dated:  June 3, 2024                            Respectfully submitted,

                                                 /s/ Melissa O. Martinez
                                                Ava E. Lias-Booker (Federal Bar No. 05022)
                                                Melissa O. Martinez (Federal Bar No. 28975)
                                                **McGuireWoods LLP**
                                                500 East Pratt Street, Suite 1000
                                                Baltimore, MD 21202-3169
                                                (410) 659-4400
                                                (410) 659-4482 Fax
                                                alias-booker@mcguirewoods.com
                                                mmartinez@mcguirewoods.com

                                                *Counsel for Plaintiff Colossus Media, LLC*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on June 3, 2024, a copy of the foregoing *Amended Complaint* was electronically filed and served via the Court's CM/ECF system on all counsel of record.

*/s/ Melissa O. Martinez*
Melissa O. Martinez