**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Southern Division)**

COLOSSUS MEDIA, LLC,                          *

     *Plaintiff*,                                        *

v.                                                          *          Case No. 8:24-cv-01402

ADALYTICS RESEARCH, LLC                   *

     *Defendant.*                                      *

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*

**DEFENDANT ADALYTICS RESEARCH, LLC'S REPLY IN SUPPORT**
**OF ITS MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

Koushik Bhattacharya
James "Jake" Schaller
**SCHULMAN BHATTACHARYA, LLC**
6116 Executive Blvd., Suite 425
North Bethesda, MD 20852
Tel: (240) 356-8551
kbhattacharya@schulmanbh.com
jschaller@schulmanbh.com

*Counsel for Defendant Adalytics Research, LLC*

August 14, 2024

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................... 1

ARGUMENT ....................................................................................................................... 2

   A.   Colossus SSP Fails to State Claim for False Advertising ................................. 2

      1.   Adalytics' Blog Post Neither Makes False Statements of Fact nor Conveys a Literally False Message by Necessary Implication ............................................................. 2

      2.   Colossus SSP Fails to Allege Blog Post Is Commercial Speech .................................. 6

      3.   Proximate Cause of Injury ........................................................................... 8

   B.   Colossus SSP Fails to State Claim for Defamation ........................................... 9

      1.   Blog Post Does not Contain Defamatory Statements Given Context, Tenor ............... 9

      2.   Colossus SSP Failed to Allege Adalytics Had Requisite Degree of Fault .................. 12

   C.   Colossus SSP Does Not State Claim for Injurious Falsehood ......................... 14

   D.   Court Should Consider Exhibits to Motion to Dismiss ................................... 14

CONCLUSION ................................................................................................................... 15

## TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ........................................................................................... 2, 14

*Batson v. Shiflett,*
325 Md. 684, 723, 602 A.2d 1191, 1210 (1992) ....................................................... 11

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544 (2007) ........................................................................................... 2, 14

*Bolger v. Youngs Drug Prods. Corp.,*
463 U.S. 60, 66, 103 S.Ct. 2875 (1983) .............................................................. 7-8

*Chapin v. Greve,*
787 F.Supp. 557 (E.D. Va. 1992) ........................................................................ 11-12

*Design Resources, Inc. v. Leather Indus. of Am.,*
789 F.3d 495, 501 (4th Cir. 2015) ........................................................................ 3

*Fisher v. Maryland Dept. of Public Safety and Correctional Services,*
2010 WL 2732334 (Civil No. JFM 10-CV-0206) (D. Md. July 8, 2010) ............................ 9, 15

*Greater Balt. Ctr. For Pregnancy Concerns, Inc. v. Mayor and City Council of Baltimore,*
721 F.3d 264, 284 (4th Cir. 2013) ........................................................................ 6-7

*Handsome Brook Farm, LLC v. Humane Farm Animal Care, Inc.,*
193 F.Supp.3d 556 (E.D. Va. 2016), *aff'd,* 700 F. App'x 251 (4th Cir. 2017) ......................... 7

*Harvey v. Cable News Network, Inc.,*
520 F.Supp.3d 693, 713 (D.Md. 2021) ................................................................ 9, 13

*Mejia v. Telemundo Mid-Atlantic LLC,*
440 F.Supp.3d 495, 501 (D. Md. 2020) ................................................................ 12

*Neurotron, Inc. v. American Ass'n of Electrodiagnostic Medicine,*
189 F.Supp.2d 271, 275 (D. Md. 2001) ................................................................ 6

*PBM Prods., LLC v. Mead Johnson & Co.,*
639 F.3d 111, 120 (4th Cir. 2011) ........................................................................ 3

*Radiance Foundation, Inc. v. N.A.A.C.P.,*
786 F.3d 316, 331-32 (4th Cir. 2015) .................................................................. 7-8

*Ramsay v. Sawyer Property Management of Maryland, LLC,*
    948 F.Supp.2d 525, 532 (D. Md. 2013) ................................................................. 3

*Redomonds Enter. v. CSX Transp., Inc.,*
    2017 WL 2335598 (D. Md. May 30, 2017) .......................................................... 14

*Solomon Found. v. Christian Fin. Res., Inc.,*
    2023 WL 3058321 (D. Md. Apr. 24, 2023) .......................................................... 13

**Statutes**
Lanham Act .......................................................................................................... 6, 15

**Rules**
Fed. R. Civ. P. 9(g) .................................................................................................. 14

Fed. R. Civ. P. 12 ...................................................................................................... 9

Defendant Adalytics Research, LLC ("Defendant" or "Adalytics") hereby submits its Reply in Support of its Motion to Dismiss the Amended Complaint ("Complaint") filed by Plaintiff Colossus Media, LLC ("Plaintiff" or "Colossus SSP"), and in support thereof states as follows:

## **INTRODUCTION**

In its Response in Opposition to Plaintiff's Motion to Dismiss ("Opposition"), Colossus SSP continues to press the notion that an observational report published on the internet by Adalytics ("Blog Post") is commercial speech and contains false and defamatory statements that it simply does not contain. In service of this objective, Colossus SSP attempts, on the slightest of technicalities, to discredit Adalytics' use of the Blog Post as an exhibit to its Motion to Dismiss. It completely ignores actual language in the Blog Post that states the diametric opposite of what Colossus SSP attempts to portray the Blog Post as saying. And, as a last-ditch effort, Colossus SSP suggests that, even if the Blog Post does not actually say what Colossus SSP claims it says, then – on second thought – such statements are necessarily implied by what Adalytics wrote in the Blog Post. In other words, Adalytics **meant** to say what Colossus SSP alleges Adalytics said even if Adalytics did not come right out and say it. A plain reading of Adalytics' straightforward, observational, and scholarly Blog Post in its entirety, however, belies this notion.

For instance, Colossus SSP states that "Adalytics falsely claims that Colossus is defrauding brands, and then Adalytics offers its services to brands to prevent that alleged fraud." Opposition, p. 1. Of course, there is **nothing** in the Blog Post that comes even close to claiming that Colossus SSP is defrauding brands, so Colossus SSP attempts to convince the Court that such is "the only reasonable interpretation of Adalytics' post." *Id.* at p. 16. And as far as Adalytics "offer[ing] its services to brands to prevent that alleged fraud," there is absolutely no mention of any of Analytics' services in the Blog Post. Colossus SSP only can point to the fact that elsewhere on Adalytics'

web site (but not in the post), Adalytics states that it "release[s] thought leadership on systemic issues … to … attract new clientele" (*Id.* at p. 1 (quoting Adalytics' web site)), which non-specific, generalized statement could describe the reason that essentially any company publishes a blog.

The Opposition also ignores the Blog Post's many statements and caveats that specifically refute the conclusions to which Colossus SSP leaps.  And it does not address Adalytics' argument that Colossus SSP's basic theory of its case – that Adalytics intentionally posts false reports about random companies to drum up business from sophisticated ad buyers – simply does not make sense.  Rather, Colossus SSP doubles down on this notion, claiming "Adalytics' business model is to be both the arsonist and firefighter at the same time."  Opposition, p. 1.  To accept that this actually is "Adalytics' business model," the Court would have to believe Adalytics intentionally misrepresented – and manipulated – data (based upon publicly available information that can be vetted), foisted it upon the press along with fake "sources" for the press to quote, and then hoped an advertiser would hire it to analyze a problem that it already analyzed for free on the internet.[1] Such theory defies the common sense a Court is to draw on, along with its judicial experience, to determine if a plaintiff has a plausible claim under *Twombly* and *Iqbal*.

## ARGUMENT

### A.  Colossus SSP Fails to State Claim for False Advertising

#### 1.  Adalytics' Blog Post Neither Makes False Statements of Fact nor Conveys a Literally False Message by Necessary Implication

In its Opposition, Colossus SSP includes select words and phrases from the Blog Post but avoids quoting any larger segments.  The reason for this is obvious: the Blog Post does not say

---

[1] In reality, Adalytics is neither an arsonist or firefighter.  In this analogy, it would be Smokey Bear, warning others that only they can prevent forest fires.

what Colossus SSP wishes to portray that it says.  Colossus SSP states that Adalytics' Blog Post "discusses how misdeclaration of user IDs equates to fraud and deception," and "ultimately concludes … that Colossus SSP is solely responsible for mis-declaring user IDs."  Opposition, p. 3.  Yet it provides no citation within the Blog Post for these claims.  Colossus SSP then states: "The post goes on to describe 'deceptive' and 'fraudulent' activity with a 'deterministic user identifier' that would fall within SIVT and then states that its so-called 'research objective' is to focus only on 'deterministic' user IDs used by Colossus SSP."  *Id.* at p. 3 (quoting ECF 19-2 (the Blog Post), at 7, 10).  Yet the words "deceptive" and "fraudulent" do not appear in the Blog Post and tying Adalytics' "Research Objectives" specifically to Colossus SSP misrepresents the plain language of the two paragraphs of that section.  *See* Blog Post, p. 10.

Colossus SSP then – rather than quoting from the Blog Post itself – quotes from its Complaint in an attempt to demonstrate it has sufficiently alleged false statements of fact.  But these selected claims, appearing in bullet points on pages 3 and 4 of the Opposition, are almost entirely belied by the text of the Blog Post itself.  Given the Blog Post clearly should be considered, as it is integral to the Complaint and authentic, it must be given more weight than Colossus SSP's characterizations thereof.  *See Ramsay v. Sawyer Property Management of Maryland, LLC*, 948 F.Supp.2d 525, 532 (D. Md. 2013) (finding exhibits attached to complaint "factually inconsistent with" claim and giving "greater weight to the facts presented in the" exhibits than to the allegations in the complaint, "because when a 'document contradicts a complaint to which it is attached, the document's facts or allegations trump those in the complaint'") (internal citations omitted).

Colossus SSP cites to *Design Resources, Inc. v. Leather Indus. of Am.*, 789 F.3d 495, 501 (4th Cir. 2015), to establish that "Adalytics' post must be considered 'in its entirety.'"  Opposition, p. 4.  And Colossus SSP quotes *PBM Prods., LLC v. Mead Johnson & Co.*, 639 F.3d 111, 120 (4th

3

Cir. 2011) for the proposition that "[a] literally false message may be either explicit or conveyed by necessary implication when, considering the advertisement in its entirety, the audience would recognize the claim as readily as if it had been explicitly stated." Opposition, pp. 4-5.

But a reader considering the Blog Post in its entirety would ***not*** recognize – "as readily as if [] explicitly stated" – the claims Colossus SSP alleges can be gleaned from the post. Colossus SSP states that because "the Blog Post defines 'Sophisticated Invalid Traffic (SIVT),'" and then "immediately discusses Colossus SSP's representations on its website of its security mechanisms which are designed to prevent SIVT but then ultimately concludes that Colossus SSP is solely responsible for mis-declaring user IDs," that the "obvious and inevitable conclusion is that Colossus SSP has no real security measures and is engaged in SIVT by manipulating or falsifying user IDs." Opposition, p. 3. Putting aside that Adalytics in no way makes such a conclusion in its Blog Post, accepting Colossus SSP's meandering theory takes logical leaps that do not flow from necessary implication. Just because Adalytics explained SIVT in its Blog Post and also observed that, when bid responses from the Trade Desk were transacted by Colossus SSP, "the user ID declared to Trade Desk at ad auction time was markedly different from the actual user ID stored in the user's Chrome browser cookie storage" (Blog Post, p. 3) does not lead directly or inevitably to the conclusion that Colossus SSP is engaged in SIVT.

Moreover, if – as Colossus SSP insists – one must consider Adalytics' Blog Post "in its entirety" (Opposition, p. 4), then it must consider all of the statements Adalytics made to make clear that ***it was not*** accusing Colossus SSP of wrongdoing. For instance, Adalytics stated:

- "It is unclear whether there is a specific use case or valid technical reason for these observations … [that] [w]hen Trade Desk transacted via Colossus SSP and Bidswitch - there were observed

4

discrepancies in declared versus actual user IDs. … Reviewing various public written and technical documentation did not appear to mention or explain these observations."  Blog Post, p. 4.

- "Interpreting the results of this observational study requires nuance and caution."  *Id.* at p. 30.

- "This observational study ***makes no assertions with regards to the actual knowledge or intent of any parties observed or cited in this study***."  *Id.* (emphasis added).

- "The study cannot comment on whether any phenomenon, such as apparent mis-matches in various user ID related code parameters, were engineered for some specific reason.  It is ostensibly possible that any such mis-matches were due to valid ad serving behavior or due to new advances in user ID targeting technologies."  *Id.*

In addition, the Blog Post "encouraged" "media buyers and vendors … to evaluate the observations in this study by examining their own logfile data," and "encouraged" "[b]rands and ad tech entities … to audit their own media buys to analyze how much each entity transacted with any given vendor and whether the ad delivery via that vendor was consistent with their expectations."  *Id.*  And, notably, in the "Conclusion" section of the Blog Post, Adalytics' statements are couched by careful language indicating uncertainty.

> ***If*** an ad tech vendor does in fact mis-declare user IDs … in OpenRTB requests sent to DSPs such as the Trade Desk, ***this could*** degrade ad targeting, frequency capping, and attribution.  Furthermore, ***if*** a consumer had targeted ads served to them via mis-declared user IDs, ***this could*** impair that consumer's ability to exercise their "right to know" privacy rights under Europe's GDPR or California's CPRA legislation.

*Id.* at p. 32 (emphasis added).

Given all this language, a reading of the Blog Post "in its entirety" clearly does not lead to the conclusion that Adalytics is "accus[ing] Colossus SSP of intentionally misrepresenting user IDs and that such activity falls within SIVT."  Opposition, p. 5.  The false statements Colossus SSP alleges Adalytics made in the Blog Post, therefore, instead were conjured by Colossus SSP.

### 2.  Colossus SSP Fails to Allege Blog Post Is Commercial Speech

Whether the Blog Post constitutes commercial speech is the "threshold issue" for evaluating a Lanham Act claim (*Neurotron, Inc. v. American Ass'n of Electrodiagnostic Medicine*, 189 F.Supp.2d 271, 275 (D. Md. 2001)) – yet Colossus SSP addresses it second in its Opposition because it cannot clear this initial, dispositive hurdle.

In contesting Adalytics' contention that the Blog Post is not commercial speech, Colossus SSP baldly states in its Opposition that the post "clearly claims that Colossus SSP is intentionally mis-declaring user IDs such that those in the industry should stop using Colossus SSP's services." Opposition, p. 7.  Colossus SSP provides no citation to the Blog Post for this statement because such a statement simply does not appear in the post.  To the contrary, Adalytics made "no assertions with regards to the actual knowledge or intent of any parties observed or cited" in the post (Blog Post, p. 30), and "encourage[s]" "media buyers and vendors … to evaluate the observations in this study by examining their own logfile data."  *Id.* at p. 31.

As stated in Adalytics' Motion to Dismiss, "[t]he Supreme Court has defined commercial speech as speech proposing no more than a commercial transaction," or, alternatively, "more broadly … as an 'expression related solely to the economic interests of the speaker and its audience.'"  *Neurotron*, 189 F.Supp.2d at 275-76 (internal citations omitted).  The Supreme Court also has "described the proposal of a commercial transaction – e.g. 'I will sell you the X prescription drug at the Y price,' … – as 'the core notion of commercial speech.'"  *Greater Balt. Ctr. For Pregnancy Concerns, Inc. v. Mayor and City Council of Baltimore*, 721 F.3d 264, 284 (4th Cir. 2013) (internal citations omitted).  Where speech "cannot be characterized merely as proposals to engage in commercial transactions," the speech still can be considered commercial, but "proper

classification as commercial or noncommercial speech … presents a closer question." *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 66, 103 S.Ct. 2875 (1983).

Because the Blog Post clearly does more than propose a commercial transaction, it must be analyzed using three factors: "(1) is the speech an advertisement; (2) does the speech refer to a specific product or service; and (3) does the speaker have an economic motivation for the speech." *Greater Balt. Ctr.*, 721 F.3d at 285.  The Fourth Circuit's decision in *Radiance Foundation, Inc. v. N.A.A.C.P.*, cited the *Greater Balt.* decision and added another factor – "'the viewpoint of the listener,' i.e. whether the listener would perceive the speech as proposing a transaction."  786 F.3d 316, 331-32 (4th Cir. 2015) (quoting *Greater Balt. Ctr.*, 721 F.3d at 285-86).

Here, the Blog Post is not an advertisement – it is essentially an article reporting the results of a study.  This distinguishes the instant case from *Handsome Brook Farm, LLC v. Humane Farm Animal Care, Inc.*, 193 F.Supp.3d 556 (E.D. Va. 2016), *aff'd*, 700 F. App'x 251 (4th Cir. 2017), cited by Colossus SSP in its Opposition.  *See* Opposition, p. 8.  In *Handsome Brook Farm*, the email in question specifically "contain[ed] an advertisement … by stating 'I hope you will reconsider changing suppliers,' followed by a promotion."  193 F.Supp.3d at 569.  Here, the Blog Post does not contain any reference to a product or service, and Adalytics makes no solicitation to the reader to purchase anything.  Rather, it encourages "[b]rands and ad tech entities … to audit their own media buys to analyze how much each entity transacted with any given vendor and whether the ad delivery via that vendor was consistent with their expectations."  Blog Post, p. 31.

In addition, the email in the *Handsome Brook Farm* case was sent

> to 69 individuals with authority to make egg purchasing decisions at 36 retailers, including the 10 largest conventional grocers in the country. The clear purpose of the email, then, was to induce major retailers not to purchase Handsome Brook's eggs, and to purchase HFAC-certified eggs, from which HFAC receives a licensing fee.

193 F.Supp.3d at 569.  Here, on the other hand, the Blog Post simply was posted on Adalytics' web site.  It was not sent to any particular possible consumers of Adalytics' services.

The only possible factor that could weigh in favor of the Blog Post being considered commercial speech is Adalytics' purported economic motivation.  Yet, as Adalytics noted in its Motion to Dismiss, the fact a party "has an economic motivation" for its publication is "clearly [] insufficient by itself to turn the materials into commercial speech."  *Bolger*, 463 U.S. at 67.  The Fourth Circuit's *Radiance Foundation* decision is instructive.  *Radiance Foundation* dealt with trademarks – whether the Radiance Foundation had infringed the NAACP's trademarks in an online article – but it analyzed whether the article that purportedly infringed, tarnished, or diluted the marks was "commercial."  While noting the district court found the marks commercial "because Radiance 'offered various opportunities for visitors … to donate to Radiance, pay to sponsor billboards, secure license content, or erect state-specific webpages for a fee,'" the Fourth Circuit disagreed the use of marks was commercial.  *Id.* at 332.  The Court explained:

> The article in contention was not an advertisement.  Nowhere in the piece did it offer the reader anything for sale.  The article did not even mention Radiance's services. … The fact that the websites provided opportunities to engage in financial transactions does not demonstrate that the article itself was commercial.  The key here is the viewpoint of a reasonable reader.  A person navigating to the article, even if through a Google search for "NAACP," is highly unlikely to read *the article* as advertising a Radiance service or proposing a transaction of any kind.

*Id.* (emphasis in original).  Similarly, here, a reasonable reader of the Blog Post would not understand it to be advertising Adalytics products or services.  As such, Count I fails.

### 3.  Proximate Cause of Injury

Colossus SSP's allegations regarding the proximate cause of the injury are conclusory and called into question by the very articles Colossus SSP references but insists the Court may not consider.  As Adalytics explains in Section D, *infra*, should the Court find the AdExchanger article

should not be considered on a motion to dismiss, it may treat Adalytics' motion as one for summary judgment. *See Fisher v. Maryland Dept. of Public Safety and Correctional Services*, 2010 WL 2732334 (Civil No. JFM 10-CV-0206) at *2 (D. Md. July 8, 2010) (explaining that "[w]hen a defendant attaches documents to a motion to dismiss, a court has three options," including converting the motion into a motion for summary judgment); *see also* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.").

### B. Colossus SSP Fails to State Claim for Defamation

In its Opposition, Colossus SSP contends that Adalytics, in addressing the defamation claim, "makes the same argument that it makes as to the false advertising claim – that Colossus SSP fails to allege that Adalytics made a false statement of fact." Opposition, p. 13. This statement misrepresents Adalytics' arguments. First, with regard to false advertising, Adalytics' point was more nuanced – while Colossus SSP made conclusory statements about false statements of fact, it had not identified the specific statements. Motion to Dismiss, p. 15. With regard to defamation, Adalytics did not state that Colossus SSP failed to make a false statement of fact – it stated that Colossus SSP did not allege ***defamatory*** statements. *Id.* at p. 18. A defamatory statement in Maryland "is one that tends to expose a person to public scorn, hatred, contempt or ridicule, thereby discouraging others in the community from having a good opinion of, or from associating or dealing with that person." *Harvey v. Cable News Network, Inc.*, 520 F.Supp.3d 693, 713 (D.Md. 2021). Adalytics did not make such statements in the Blog Post.

### 1. Blog Post Does not Contain Defamatory Statements Given Context, Tenor

Colossus SSP attempts to convince the Court that it properly alleged a claim for defamation without "explicitly stat[ing] the exact words 'Colossus SSP intentionally mis-declared user IDs.'"

Opposition, p. 13.  But in this effort, Colossus SSP actually makes Adalytics' point: Count II of Colossus SSP's Complaint must fail because Colossus SSP does not identify defamatory statements.  Considering the entirety of the Blog Post, with its straightforward, scholarly language, its multiple caveats, and how far it goes out of its way not to assign blame for mis-matched IDs, it should be clear that an objective, reasonable reader would consider neither the challenged statements (whatever exactly those statements are), nor the Blog Post as a whole, as exposing Colossus SSP to public scorn, hatred, contempt, or ridicule.

Colossus SSP, however, claims in its Opposition that "the only reasonable interpretation of Adalytics' post is that it accuses Colossus SSP of intentionally misrepresenting user IDs." Opposition, p. 14.  Such conclusion – for reasons explained *infra* – is entirely unreasonable.  And it is for that reason that Colossus SSP, in its Opposition, must embellish its interpretation of the Blog Post.  For instance, Colossus SSP claims that Adalytics, two times early in the Blog Post, "states that ad tech vendors *like Colossus SSP* can mis-declare user IDs for the purpose of increasing the monetary value that advertisers will pay *Colossus SSP* to serve ads to that user ID." *Id.* at p. 14 (citing Blog Post, p. 2) (emphasis added).  The Blog Post, of course, did not actually reference Colossus SSP in the above-described portions of the post.  The name "Colossus SSP" simply does not appear in these sections.

Similarly, Colossus SSP claims in its Opposition that Adalytics "purportedly refutes any possible technical explanation for the mismatched user IDs," which Colossus SSP states is a false conclusion.  Opposition, p. 14.  But Adalytics did not refute any possible technical explanation – it stated that there did "not *appear to be* technical explanations" in a finite list of sources.  Blog Post, p. 4 (emphasis added).  Such comment does not lead to the "inevitable conclusion that Colossus SSP intentionally mis-declared user IDs."  Opposition, p. 14.  To the contrary, Adalytics'

comment rules out neither the possibility that there could be a technical explanation (perhaps from another source) nor a non-technical explanation.  That Adalytics then discusses "sophisticated Invalid Traffic" is of no moment as it does so in general terms without referencing Colossus SSP.

Furthermore, and saliently, Adalytics cannot be found to have directed readers to the conclusion that Colossus SSP has intentionally mis-declared user IDs via necessary implication (as Colossus SSP contends in its Opposition at p. 16) when in the same post Adalytics **specifically states the opposite**.  *See* statements in Section A.1.b, *supra*.  Adalytics was reporting the results of its study.  It did not ascribe intent, and it left open the possibility that there was a valid explanation for what it observed.  As the Maryland Supreme Court (formerly the Court of Appeals) has held,

> [t]he threshold question of whether a publication is defamatory in and of itself, or whether, in light of the extrinsic facts, it is reasonably capable of a defamatory interpretation is for the court upon reviewing the statement **as a whole**; words have different meanings depending on the context in which they are used and **a meaning not warranted <u>by the whole publication</u> should not be imputed**.

*Batson v. Shiflett*, 325 Md. 684, 723, 602 A.2d 1191, 1210 (1992) (emphasis added).

Instructive is *Chapin v. Greve*, 787 F.Supp. 557 (E.D. Va. 1992), in which the president of a non-profit organization that provided care packages for military personnel (Roger Chapin) sued media defendants for a newspaper article on his project.[2]  The article "characterize[d] the project as 'wildly successful,'" but it raised questions about, *inter alia*, whether the personnel who received the packages or Chapin would benefit more from the project and the eventual disposition of surplus donations.  *Id.* at 560.  Chapin and his organization, "citing a decline in donations," sued.  *Id.* at 561.  The media defendants moved to dismiss, and the key question was whether their report was defamatory.  *Id.* at 562.  The Court stated that "[t]he dispositive question presented is

---

[2] While the Court applied Virginia law, the key portions of defamation law in Virginia is essentially the same as in Maryland.  *See Chapin*, 787 F.Supp. at 562.

whether or not a reasonable factfinder could conclude that the article or statements in the article state or imply, in their plain and natural sense, the defamatory means ascribed to them by plaintiffs in their complaint." *Id.* at 564.  Notably, as Colossus SSP does here, the plaintiffs in *Chapin* alleged the article said things it did not say.  The Court analyzed a collection of statements and found none of them to be defamatory.  *Id.* at 564-67.  In the end, the Court stated:

> Fundamentally, the Greve article raises questions about the Gift Pac project. In the Court's view, ***it is a story constructed around questions, not conclusions***.  But the mere raising of questions is, without more, insufficient to sustain a defamation suit in these circumstances.  Questions are not necessarily accusations or affronts.  Nor do they necessarily insinuate derogatory answers.  They may simply be, as they are here, expressions of uncertainty.  The Greve article advances alternative answers to the questions it raises, presenting both favorable and unfavorable views, but does not ultimately adopt any particular answer as correct. … ***Language of ambiguity and imprecision permeates the article, significantly coloring its tone***.  Examples include: "possible surpluses," "hard to answer," "appear to be under $10," "seems to be posting," "it is not clear where the rest of the money goes."  ***This tentative language underscores the interrogatory tenor of the article***.

*Id.* at 567 (emphasis added).  Similarly, here, Colossus SSP contends, *inter alia*, that "Adalytics' [Blog Post] clearly claims that Colossus SSP is intentionally mis-declaring user IDs such that those in the industry should stop using Colossus SSP's services."  Opposition, p. 7.  But the Blog Post (as Colossus SSP acknowledges) does not ***actually*** say that, and taking its overall, caveat-laden, and non-accusatory tenor, it does not provide actionable statements for a defamation claim.  The Court, therefore, should dismiss Count II of Colossus SSP's Complaint.

### 2.   Colossus SSP Failed to Allege Adalytics Had Requisite Degree of Fault

Colossus SSP claims in its Opposition that it "need only plead that Adalytics acted with negligence" (Opposition, p. 16), and Adalytics does not dispute that point.  Adalytics, in its Motion to Dismiss, noted that legal fault for defamation "requires a showing that, at a minimum, the party making the false statement acted negligently."  Motion to Dismiss, p. 20 (quoting *Mejia v. Telemundo Mid-Atlantic LLC*, 440 F.Supp.3d 495, 501 (D. Md. 2020)).  Adalytics focused its

Motion to Dismiss on the higher standard of actual malice, however, because Colossus SSP's Complaint attempted (unsuccessfully) to establish that bar and ignored pleading allegations to establish the negligence standard. *See* Motion to Dismiss, pp. 20-23.

In its Opposition, Colossus SSP claims it "sufficiently allege[d] that Adalytics acted with negligence" by alleging "Adalytics 'failed to act as a reasonable person under like circumstances in making the false and defamatory statements.'" Opposition, pp. 16-17 (quoting *Solomon Found. v. Christian Fin. Res., Inc.*, 2023 WL 3058321, at *7 (D. Md. Apr. 24, 2023)).[3] And it further claims that its "allegations are likewise sufficient to satisfy" the actual malice standard. Colossus SSP, however, points to just one statement in its Complaint that it claims satisfies both standards of fault: "As a company that claims expertise in advertising technology and programmatic advertising, Adalytics would be well aware that Colossus SSP, because its transactions occur within fractions of a second and go through an intermediary, could not systematically 'fake' TDIDs to generate more revenue, as the Adalytics post states and/or implies." Opposition, p. 17 (quoting Complaint, ¶ 33). This allegation does not satisfy either standard for multiple reasons.

First, the allegation is based upon a premise that, as is made clear by the Blog Post itself, is false. Adalytics, as explained *supra*, neither outright states nor implies that Colossus SSP systematically faked TDIDs to generate more revenue. Second, the allegation upon which Colossus SSP relies does not actually claim that Adalytics knew it was making a false statement; rather, it merely states that "Adalytics would be well aware … ." Nowhere in the Complaint is an allegation that Adalytics knew its statements were false – which by itself would not even be enough to plead adequately the requisite degree of fault. *See Harvey*, 520 F.Supp.3d at 722 ("Since the

---

[3] Colossus SSP actually cites to *21 of the *Solomon Found.* case in its Opposition, but there is no *21 in that case. The referenced language appears at *7 (and, again, at *8).

Supreme Court's decisions in *Iqbal* and *Twombly*, the Fourth Circuit has made it clear that conclusory allegations are insufficient to adequately plead knowledge of falsity or reckless disregard for the truth.").  The Court, therefore, should dismiss Colossus SSP's defamation claim.

### C.  Colossus SSP Does Not State Claim for Injurious Falsehood

Regarding special damages, Colossus SSP misses the point about the AdExchanger article. Putting aside whether such article – from which Colossus SSP quotes in its Complaint – should be considered by the Court (which point Adalytics addresses *infra* at Section D), the article clearly states that The Trade Desk's decision to suspend business with Colossus SSP had to do with more than just the Blog Post.  Furthermore, in *Redomonds Enter. v. CSX Transp., Inc.*, 2017 WL 2335598, at *4 (D. Md. May 30, 2017), cited by Colossus SSP in its Opposition, the Court noted that the plaintiff alleged the disparaging statement "caused it to lose approximately $6,000 per month in business" with two entities; and that plaintiff had "ceased its efforts to generate business with the other four contractor companies ***because it was informed by agents and employees of at least some of the contractor companies*** that they could not do business" with plaintiff because of the statement.  Such allegations provide far more particularity than those made by Colossus SSP.

Even if the Court determines that Colossus SSP's bare-bones allegations regarding special damages sufficiently satisfy the requirements of Fed. R. Civ. P. 9(g), however, the Court still must dismiss Colossus SSP's claim for injurious falsehood.  As explained *supra*, Colossus SSP has not adequately alleged – and cannot adequately allege – that Adalytics acted with actual malice in publishing its Blog Post or, for that matter, that Adalytics published a disparaging falsehood.

### D.  Court Should Consider Exhibits to Motion to Dismiss

With respect to the communications between the parties and the AdExchanger article, Colossus SSP would like to have its cake and eat it too.  It wants to refer to and characterize

portions of these documents, but it does not want the Court to consider them in their entirety because they hamper Colossus SSP's narrative. In its Compliant, in an effort to allege that Adalytics acted with malice, Colossus SSP makes multiple assertions regarding its communications with Adalytics prior to the publication of the Blog Post. *See*, *e.g.*, Complaint, ¶¶ 1, 21, 22, 35. Colossus SSP strategically did not incorporate the communications into its Complaint, but given that Colossus SSP has pointed to the pre-publishing correspondence to establish an allegation of malice, the Court should consider the correspondence in resolving this motion, even if it means treating the motion as one for summary judgment. *See Fisher*, *supra*.

Yet Colossus SSP would rather the Court not consider the correspondence because it demonstrates Adalytics did not act with malice. To the extent that there are questions about authenticity, Colossus SSP and its counsel should recognize and have copies of all the cited correspondence. To the extent necessary, Adalytics provides the Affidavit of Jonathan Lee, which is attached hereto as **<u>Exhibit A</u>**. As for the AdExchanger article, Colossus SSP claims it "does not adopt the contents of the article as true," but rather quotes from it "because it demonstrates how others in the industry interpreted Adalytics' post." Opposition, p. 22. But if that is the case, the Court should accept on this basis not only select portions of the article but also the claims of those quoted in the article, including the spokesperson from The Trade Desk and the source from Google. *See* AdExchanger article, pp. 4, 5.

<u>**CONCLUSION**</u>

The Blog Post was not commercial speech, meaning Colossus SSP cannot clear the first, necessary hurdle to state a claim for a Lanham Act violation. In addition, reading the entirety of the Blog Post, it is clear that Adalytics made neither defamatory statements nor acted with malice. The Court should dismiss Colossus SSP's Complaint in its entirety.

15

Dated: August 14, 2024    Respectfully submitted,

          **SCHULMAN BHATTACHARYA, LLC**

    By: */s/ Koushik Bhattacharya*
       Koushik Bhattacharya
       James "Jake" Schaller
       6116 Executive Boulevard, Suite 425
       North Bethesda, Maryland 20852
       Tel: (240) 356-8550
       Facsimile: (240) 356-8558
       Email: kbhattacharya@schulmanbh.com
         jschaller@schulmanbh.com

       *Counsel for Defendant Adalytics Research, LLC*

16

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on this 14th day of August, 2024, a copy of the foregoing Reply in Support of Motion to Dismiss, and the exhibit thereto, were served on all counsel of record via CM/ECF.

*/s/ Koushik Bhattacharya*
Koushik Bhattacharya