IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

COLOSSUS MEDIA, LLC                 :

                                :

    v.                            :   Civil Action No. DKC 24-1402

                                :

ADALYTICS RESEARCH, LLC             :

                                :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this false advertising and defamation case is the motion to dismiss the amended counterclaim filed by Plaintiff Colossus Media, LLC ("Colossus" or "Plaintiff"). (ECF No. 36). The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion will be granted.

## I.   Background

This court previously laid out the factual background of this case according to Plaintiff, (ECF No. 24), including an undisputed summary of the relevant industry:

> "Publishers auction advertising space on their websites through [supply-side platforms, or 'SSPs'] like Colossus SSP. Large brands and other advertisers buy advertising space through [demand side platforms, or 'DSPs']." (ECF No. 9 ¶ 11). Plaintiff "transacts with DSPs to deliver ad inventory to target audiences. Advertisers want to ensure that their ads are going to their respective target audiences. To ensure that ads are served to

> the buyer's target audience, SSPs and DSPs use cookie-based user IDs to identify, track, and categorize consumers." (ECF No. 9 ¶ 12).

(ECF No. 24, at 2) (footnote omitted).

On June 11, 2025, Defendant Adalytics Research, LLC ("Adalytics" or "Defendant") filed an amended answer and counterclaim.[1] (ECF No. 34). Adalytics "conducts advertising analytics, providing digital forensics to media buyers and advertisers in the digital advertising industry." (*Id.*, at 12). Adalytics provides insights to its clients on "how the advertising dollars they spend are being deployed" and occasionally publishes "reports regarding matters that it considers to be of public interest with no expectation of commercial or financial gain." (*Id.*). Many of these reports "document empirical research observations," and the reports "generally do not instruct or recommend to ad industry participants that they do anything but check their own records and make their own informed decisions based upon their own data." (*Id.*).

Colossus was acquired by Direct Digital Holdings, Inc. ("DRCT") in 2018. (*Id.*, at 16). Adalytics alleges that the 2021 Securities and Exchange Commission ("SEC") 10-K report for DRCT shows that Colossus quadrupled its year-over-year revenue during

---

[1] The following facts are set forth in the amended counterclaim and construed in the light most favorable to Defendant Adalytics, who is the non-moving party.

2021.  (*Id.*, at 17).   Colossus' revenue continued to climb into 2023; according to Adalytics, "Colossus clearly had found a way to increase sale volume / auction success, and a way of making each transaction more profitable."  (*Id.*).   After reviewing publicly available data, Adalytics alleges that Colossus' revenue growth was "due to consistent disregard of DSP and publisher ad server rules."  (*Id.*).   Specifically, it alleges that Colossus "declared its ad auctions on websites using the Google Ad Manager ('GAM') publisher ad server to be 'Second Price Auctions' despite the fact that GAM had switched exclusively to a 'First Price Auctions' model during 2019."  (*Id.*, at 17-18).   A First Price Auction resembles a traditional auction, where the advertiser with the highest bid wins and pays the amount that it bid.   (*Id.*, at 18).   A Second Price Auction is one in which the highest bidder wins and only pays the price of the second-highest bid.   (*Id.*).   Adalytics alleges that Colossus used a tactic called "bid shading," which it explains as follows:

> As a theoretical example, if a publisher website runs a First Price Auction, and two prospective media buyers submit $20 and $10 bids, the $20 bid wins, and the advertiser pays $20 for the ad slot.  In this case, demand side platforms use specially calibrated algorithms that perform "bid shading" to try to accurately predict the minimum bid needed to successfully win the First Price Auction. In a Second Price Auction, two prospective media buyers submit $20 and $10 bids, and the first media buyer wins and then pays a price-

> reduced final amount of $10 plus one cent ($10.01).  DSPs often do not use their bid shading algorithms in Second Price Auctions, as the DSP and their advertiser clients expect their bid to be price reduced.  However, if an ad exchange mis-declares a First Price Auction as a Second Price Auction, this can "trick" a demand side platform such as The Trade Desk not to bid shade and place a higher bid than it would have if it knew the Auction was actually a First Price Auction.  Such would cause The Trade Desk and its advertiser clients to pay more than they would have for ad inventory transacted by Colossus.

(*Id.*).  According to Adalytics, an article published in AdAge on May 10, 2024, stated that Colossus was blocked by a particular DSP, The Trade Desk, starting in 2023 because it "did not participate in the DSP's first-price auction format;" Colossus said it was unable to do so because it worked indirectly with The Trade Desk through a third-party called BidSwitch. (*Id.*, at 19).

Adalytics also alleges that Colossus could increase its revenues by mis-declaring user IDs in auctions. (*Id.*).  In April 2024, Adalytics noticed that in auctions involving Colossus, "the 'buyer user ID' field ***did not consistently*** match the buyer user ID provided by the DSP in advance of an ad auction."  (*Id.*).  The buyer user ID contains information about the user and corresponds to a "cookie" placed in his or her browser by the DSP.  (*Id.*, at 19-20).  The buyer user IDs submitted in ad auctions involving Colossus did not match but were real buyer user IDs, which could represent high-value customers; "[r]e-using high value cookie IDs

leads to more revenue because they would win more auctions and at higher prices." (*Id.*, at 20).  Adalytics further alleges that Colossus had been serving ads to "easy-to-identify, well-known 'bots' since December 2021," which is considered "not compensable under industry rules."  (*Id.*).

Adalytics alleges Colossus suffered some business setbacks in 2023 and early 2024.  According to DRCT's revised 10-K filed with the SEC in October 2024, "Google 'clawed back' almost $9 million in revenue" for 2023, which "its advertisers had paid for nonconforming inventory by refusing to pay Colossus for ads placed on this inventory."[2]  (*Id.*, at 20-21).  DRCT's revenue report in early March 2024 was approximately $25 million below stock market analyst expectations, and its auditor resigned in April 2024. (*Id.*, at 21).

Adalytics published a report titled "Are user IDs declared consistently in ad auctions?" (the "Report") on May 10, 2024, which was based on a "study of the source code of a sample of ads and bid responses served by The Trade Desk. . . on behalf of different advertisers and on different publisher properties."  (*Id.*, at 12). In the counterclaim, Adalytics alleges "in its sample data, for

---

[2] Adalytics alludes to this being because "[u]pon information and belief, in late November 2023, Google's DV360 [demand side platform] took action against Colossus for noncompliance with its rules for, *inter alia*, submitting false buyer user IDs." (*Id.*, at 20).

Colossus only, the user ID declared to The Trade Desk at the time of an ad auction appeared – multiple times – to be different from the actual, persistent user ID stored in the user's browser cookie storage, wherein that cookie had been present for days or weeks." (*Id.*, at 13).

On the same day Adalytics published the Report, DRCT gave a statement that was published in an outlet called Campaign. (*Id.*, at 24). The statement called the Report "part of 'a concerted effort to seek financial gain by attempting to discredit the performance and operations of' DRCT." (*Id.*). Colossus filed suit shortly after. (*Id.*, at 22). Adalytics alleges that Colossus also "began making defamatory statements to clients and potential clients of Adalytics as well as the public at large, including stating that the Report was 'false' and 'inaccurate' and part of some kind of conspiracy or 'concerted action' against Plaintiff." (*Id.*). Specifically, one of Colossus' SEC 10-Q filings included statements that Adalytics had published "a defamatory article / blog post" that was part of "a coordinated misinformation campaign." (*Id.*, at 22). In a November 12, 2024, press release, Mark Walker, the Chairman and Chief Executive Officer of DRCT, referenced a "targeted and defamatory disinformation campaign," noting that DRCT had "moved swiftly to address these claims, working closely with all of our partners to ensure they understood

6

the truth of our practices and taking legal action against the author of the defamatory claims." (*Id.*, at 23).  In the same press release, DRCT President Keith Smith is quoted as saying:

> [D]efamatory disinformation attacks go far beyond the advertising technology industry, distorting public perception, manipulating stock prices, often to the disadvantage of everyday investors, and stifling innovation. The weaponization of disinformation is posing a profound risk to small and up-and-coming businesses such as ours, and calls for a deeper dive into this pernicious and increasingly ubiquitous issue and an appropriate systematic response.

(*Id.*, at 24).  Finally, Adalytics alleges it was "directly informed by (and received an email from) one prospective client that claimed Colossus had informed it that Adalytics' report was 'false and inaccurate.'" (*Id.*).  Adalytics believes Colossus made the same claims to other potential clients.  (*Id.*).  Adalytics avers that none of these statements were true, and that Colossus knew they were false.  (*Id.*, at 22).  Adalytics alleges that it has suffered harm because of these statements from Colossus, specifically losing clients and potential clients.  (*Id.*, at 27).

Plaintiff filed a complaint against Defendant on May 14, 2024, for violations of 15 U.S.C. § 1125 ("the Lanham Act"), as well as defamation and injurious falsehood under Maryland law. (ECF No. 1). On June 3, 2024, Plaintiff filed an amended complaint.  (ECF No. 9).  Plaintiff asserts federal question jurisdiction and

7

supplemental jurisdiction over the state law claims, and Plaintiff also asserts diversity jurisdiction.  After this court denied Defendant's motion to dismiss the amended complaint, (ECF No. 25), Defendant filed an answer to the amended complaint and a counterclaim on April 2, 2025, (ECF No. 28).  On June 11, 2025, Defendant filed an amended answer and counterclaim.  (ECF No. 34). Plaintiff filed a motion to dismiss the amended counterclaim on July 2, 2025.  (ECF No. 36).  Defendant filed a response in opposition on July 30, 2025, (ECF No. 40), and Plaintiff filed a reply on August 13, 2025, (ECF No. 41).

## II.  Standard of Review

A motion to dismiss under Fed.R.Civ.P. 12(b)(6) tests the sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).  The court "must accept the complaint's factual allegations as true and construe the facts in the light most favorable to the plaintiff."  *Barnett v. Inova Health Care Servs.*, 125 F.4th 465, 469 (4th Cir. 2025) (citing *Barbour v. Garland*, 105 F.4th 579, 589 (4th Cir. 2024)).  A complaint must only satisfy Rule 8(a)(2), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed.R.Civ.P. 8(a)(2).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has

not 'show[n]'—that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting Fed.R.Civ.P. 8(a)(2)). A Rule 8(a)(2) "showing" requires "stat[ing] a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that defendant is liable for the misconduct alleged." *Mays v. Sprinkle*, 992 F.3d 295, 299–300 (4th Cir. 2021) (quoting *Iqbal*, 556 U.S. at 678). Legal conclusions couched as factual allegations are insufficient, *Iqbal*, 556 U.S. at 678, as are conclusory factual allegations devoid of any reference to actual events*, United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

**III. Analysis**

Under Maryland law, defamation has four elements: "(1) that the defendant made a defamatory statement to a third person, (2) that the statement was false, (3) that the defendant was legally at fault in making the statement, and (4) that the plaintiff thereby suffered harm." *State Farm Mut. Auto. Ins. Co. v. Slade Healthcare, Inc.*, 381 F.Supp.3d 536, 565 (D.Md. 2019) (citation modified) (quoting *Norman v. Borison*, 418 Md. 630, 645 n.10 (2011)). Another court in this district previously laid out the pleading requirement for a defamation claim:

Case 8:24-cv-01402-DKC    Document 44    Filed 03/09/26    Page 10 of 20

> "Although a plaintiff need not plead a defamation claim under the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure, the pleadings in a defamation case must still be sufficiently detailed to enable a defendant to appropriately respond." *Estate of Jones v. St. Thomas More Nursing & Rehab Ctr.*, [No. 09-cv-1419-PJM], 2009 WL 3247929, at *3 (D.Md. Oct. 1, 2009); *see Hatfill v. New York Times Co.*, 416 F.3d 320, 329 (4th Cir. 2005) ("While the Federal Rules of Civil Procedure require more specific pleading in certain cases, defamation cases are not among them."). Thus, a "plaintiff may not baldly allege a broad course of conduct over a lengthy period of time and later sue on any act that occurred during that time period." *English Boiler & Tube, Inc. v. W.C. Rouse & Son, Inc.*, 172 F.3d 862, 1999 WL 89125, at *3 (4th Cir. 1999) (unpublished table decision). Moreover, every "alleged defamatory statement constitutes 'a separate instance of defamation,' which 'a plaintiff must specifically allege.'" *Gainsburg v. Steben & Co.*, 838 F.Supp.2d 339, 344 (D.Md. 2011) (quoting *English Boiler*, 1999 WL 89125, at *3); *see also Doe v. Salisbury Univ.*, 123 F.Supp.3d 748, 758 (D.Md. 2015) ("To satisfy federal pleading standards, a plaintiff must specifically allege each defamatory statement.").

*Id.*

Colossus first argues that Adalytics' allegations are not specific enough to plead a defamation claim. (ECF No. 36-1, at 5). Regarding the statements in the SEC filings and press releases, Colossus argues that it cannot be held responsible for the statements of DRCT and its executives. (*Id.* at 9-10). Finally, Colossus argues that the statements are protected by both

10

the absolute litigation privilege and the conditional privilege of reply. (*Id.* at 5).

In its amended counterclaim, Adalytics identifies two categories of allegedly defamatory statements: (1) emails calling the Report "false" and "inaccurate," and claiming that Adalytics was "part of some conspiracy or 'concerted action'" against Colossus, sent to advertisers who were "clients or potential clients" of Adalytics, (ECF No. 34, at 25); and (2) statements made in SEC filings and press releases, which claimed in part that Adalytics had been part of "a targeted and defamatory disinformation campaign," (*Id.*).

## A.    Emails to Clients, Potential Clients

Adalytics alleges that Colossus "made targeted defamatory statements to individuals and entities." (*Id.*, at 24). The details it provides regarding these emails are sparse:

> Adalytics was directly informed by (and received an email from) one prospective client that claimed Colossus had informed it that Adalytics' report was "false and inaccurate." Based on this evidence, Adalytics believes that Colossus made the same false claims to other prospective clients (*i.e.* persons or entities that have signed non-disclosure agreements with Adalytics).

(*Id.*). This is insufficient to support a defamation claim.

Adalytics' assertions are "only a bare-bones rendering of what [Colossus] supposedly said." *State Farm*, 381 F.Supp.3d at

11

568. Adalytics fails to assert who received these alleged messages, who at Colossus sent them, how they were transmitted, dates that these messages were sent, or any information necessary to enable Colossus to respond. This is insufficient to survive a motion to dismiss. *See id.* (dismissing defamation claim where plaintiff provided only "vague and hazy allegations"); *Total Recon Auto Ctr., LLC v. Allstate Ins. Co.*, 705 F.Supp.3d 510, 525-26 (D.Md. 2023) (finding plaintiff failed to plead defamation where plaintiff did not allege which employees made the statements, who heard the statements, or precisely when the statements were made). The court will dismiss the defamation claim, as it relates to Colossus' alleged statements to advertisers, without prejudice to the filing of an amended counterclaim within 21 days, assuming Adalytics can provide the necessary detail.

**B.   Statements in SEC Filings, Press Releases**

Adalytics has also alleged that four specific statements, which were either corporate statements and press releases or contained in documents filed with the SEC, were defamatory. The statements are: (1) the May 10, 2024, DRCT statement published in Campaign that characterized the Report as "part of 'a concerted effort to seek financial gain by attempting to discredit the performance and operations of' DRCT," (ECF No. 34, at 24); (2) statements in Colossus' SEC 10-Q filings that Adalytics had

12

published "a defamatory article / blog post" that was part of "a coordinated misinformation campaign," (*Id.*, at 22); (3) statements from Mark Walker, the Chairman and Chief Executive Officer of DRCT, in a November 12, 2024, press release referencing a "targeted and defamatory disinformation claim," noting that DRCT had "moved swiftly to address these claims, working closely with all of our partners to ensure they understood the truth of our practices and taking legal action against the author of the defamatory claims," (*Id.*, at 23);  and (4) DRCT President Keith Smith's statement in the November 12, 2024, press release:

> [D]efamatory disinformation attacks go far beyond the advertising technology industry, distorting public perception, manipulating stock prices, often to the disadvantage of everyday investors, and stifling innovation. The weaponization of disinformation is posing a profound risk to small and up-and-coming businesses such as ours, and calls for a deeper dive into this pernicious and increasingly ubiquitous issue and an appropriate systematic response.

(*Id.*, at 24).  While Adalytics has sufficiently identified the "who, what, where, and when," *State Farm*, 381 F.Supp.3d at 568, it has failed to show that any of these statements can be attributed to Colossus.

To plead a defamation claim, Adalytics must allege facts showing "that the *defendant* made a defamatory statement to a third person."  *State Farm*, 381 F.Supp.3d at 565 (emphasis added).

According to the counterclaim, each of the statements made in the press releases was made by DRCT or an executive for DRCT. The parties agree that Colossus is owned by DRCT, (ECF Nos. 36-1, at 6; 34, at 16), but Adalytics does not provide any theory of law that could hold Colossus liable for the statements of its parent, DRCT, and DRCT executives. Adalytics tries to tie the two entities together in its response, saying that DRCT "operates through its companies," and highlighting that the individual executives have held roles at Colossus as well. (ECF No. 40, at 9-10). Even if these facts could help their case, the court will not consider new facts raised in the briefing as part of a motion under Fed.R.Civ.P. 12(b)(6). *See S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013) ("It is well-established that parties cannot amend their complaints through briefing or oral advocacy."); *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 449 (4th Cir. 2011) ("[S]tatements by counsel that raise new facts constitute matters beyond the pleadings and cannot be considered on a Rule 12(b)(6) motion."). As Colossus notes, (ECF No. 41, at 6), Adalytics' attempts to analogize to an employer being held liable for the statements of its employees, or a company being liable for the comments of its principal, are simply inapplicable. In those contexts, liability runs from the agent to the principal; here, if

14

any agency relationship exists, liability is asserted to run from the principal to the agent.    Defendant has not presented any compelling rationale for why a subsidiary company should be held liable for the statements of its parent company.    Adalytics has failed to plead facts supporting its allegation that Colossus is responsible for the statements made by DRCT and its executives, and the defamation claims based on these statements fail as a matter of law.

The statements in the SEC filing deserve a closer look.    The amended counterclaim alleges that Colossus made a defamatory statement in a Form 10-Q filing with the SEC.    (*See* ECF No. 34, at 22 ("[I]n its SEC 10-Q filing for the third quarter of 2024, Colossus claimed . . .")).    Elsewhere in its amended counterclaim, however, Adalytics twice references the SEC 10-K report filed by DRCT for information about Colossus.    (*See* *id*., at 17, 20). Neither party attached any of the SEC filings to its briefing, but Colossus does not dispute that it authored the 10-Q filing.    (*See* ECF No. 41, at 8 n.2).    Nonetheless, the court has an obligation to ensure dismissal is proper, even if the opposing party does not respond to an issue.    *See Guzman v. Acuarius Night Club LLC*, 167 F.4th 217, 221-22 (4th Cir. 2026).    The court may consider documents that are explicitly incorporated into the complaint by reference. *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir.

15

2016).   Searching the SEC website reveals that Colossus does not have *any* filings; DRCT, however, has both 10-K forms and 10-Q forms.   DRCT's publicly available 10-Q filing for the third quarter of 2024 contains the statements cited in the amended counterclaim. (*See* ECF No. 34, at 22).   The DRCT 10-Q filing is signed only by DRCT, not Colossus.   The court may take judicial notice of matters of public record, including SEC filings, on a motion to dismiss. *See Tchatchou v. India Globalization Cap. Inc.*, No. 18-cv-3396-PWG, 2021 WL 307415, at *5 (D.Md. Jan. 29, 2021) (citing *In re Mun. Mortg. & Equity, LLC, Sec. & Derivative Litig.*, 876 F.Supp.2d 616, 653 n.7 (D.Md. 2012), *aff'd sub nom.*, *Yates v. Mun. Mortg. & Equity*, *LLC*, 744 F.3d 874 (4th Cir. 2014)).   The court will take judicial notice that the 10-Q filing is signed by DRCT.   Because the statement within the 10-Q filing is properly attributed to DRCT, not Colossus, the defamation claim based on this statement also fails as a matter of law and must be dismissed.

## C.   Leave to Amend

In a footnote, Adalytics requests leave to amend its counterclaim "to add DRCT and/or Mr. Walker and Mr. Smith as third-party defendants in this case" if the court finds it cannot hold Colossus liable for their statements.   (ECF No. 40, at 10 n.3). The United States Court of Appeals for the Fourth Circuit has "interpreted [Fed.R.Civ.P.] 15(a) to provide that 'leave to amend

a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile.'"  *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (citing *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986)).

While Adalytics requests leave to add DRCT and its executives as "third-party defendants," the request is inapposite.  Third-party practice is governed by Fed.R.Civ.P. 14, which states in relevant part "[a] defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it."  Fed.R.Civ.P. 14(a)(1).  There is no allegation here that DRCT and its executives may be liable to Adalytics for all or part of Colossus' claim against it.  Rather, the appropriate rules are Fed.R.Civ.P. 13(h) and 20(a)(2).  Rule 13(h), which governs counterclaims, states "Rules 19 and 20 govern the addition of a person as a party to a counterclaim or crossclaim."  As there is no suggestion that DRCT and its executives are required parties under Rule 19, Rule 20 controls here.  "The Federal Rules of Civil Procedure permit multiple defendants to be joined in one action if 'any right to relief is asserted against them. . . with respect to or arising out of the same transaction, occurrence, or series of transactions

17

or occurrences' and 'any question of law or fact common to all defendants will arise in the action.'" *Courthouse News Serv. v. Schaefer*, 2 F.4th 318, 325 (4th Cir. 2021) (quoting Fed.R.Civ.P. 20(a)(2)).    These requirements "are to be read as broadly as possible whenever doing so is likely to promote judicial economy." 7 Wright & Miller's Federal Practice & Procedure § 1653 (3d ed. 2025); *see also Aleman v. Chugach Support Servs., Inc.*, 485 F.3d 206, 218 n.5 (4th Cir. 2007).

Courts consider whether the claims arise out of the same "transaction or occurrence" on a case-by-case basis. *Saval v. BL Ltd.*, 710 F.2d 1027, 1031 (4th Cir. 1983).    The allegation is that Colossus, DRCT, and its executives made defamatory statements directly in response to Adalytics' Report.    While the statements occurred at different times and were directed to different audiences, they were all a part of the corporate response to the Report.    This is sufficient to find a common transaction or occurrence. *See Courthouse News Serv.*, 2 F.4th at 325 ("two claims arise from the same transaction — and therefore can be joined in the same action — when there is a 'logical relationship' between them.").    Common questions of fact will control, as the parties seek to establish whether the statements about the accuracy and intent of Adalytics' Report were false.    This is sufficient to satisfy the second prong of Rule 20's test. *See Stephens v. Kaiser*

18

*Found. Health Plan of the Mid-Atl. States, Inc.*, 807 F.Supp.2d 375, 384 (D.Md. 2011) (When considering joinder under Rule 20, "the rule requires only a single common question of law or fact."). Additionally, it will serve judicial economy to permit Adalytics to join DRCT and its executives to the counterclaim.   The requirements of Rule 20(a)(2) are satisfied.[3]

Colossus argues that the amendment should be denied as futile because the statements at issue are privileged.   (ECF No. 41, at 7 n.1).   Specifically, Colossus argues that two privileges apply: the absolute litigation privilege and the conditional privilege of reply.   But Colossus did not make these statements; DRCT and its executives did.   Because Colossus is not the correct defendant, the court will decline to consider if the privileges apply here. *See State Farm*, 381 F.Supp.3d at 565 ("[B]ecause the [counterclaim defendant] does not assert the absolute or qualified privilege as to its alleged oral statements, I shall not consider whether the

---

[3] A request for leave to amend a counterclaim to join additional parties carries the presumption that there *is* a counterclaim, that is, a claim against an opposing party.  *See* 6 Wright & Miller's Federal Practice & Procedure § 1435 (3d ed. 2025) ("[A] counterclaim. . . may not be directed solely against persons who are not already parties to the original action, but must involve at least one existing party.").  As explained above, the court will dismiss Adalytics' counterclaim against Colossus without prejudice, as Adalytics could plead additional facts to support its claim.   If Adalytics decides not to pursue a counterclaim against Colossus but does wish to pursue a claim against DRCT and its executives, Adalytics should file a new motion specifying the appropriate procedural mechanism.

privileges apply to them."); *see also Doe v. Johns Hopkins Health Sys. Corp.*, 274 F.Supp.3d 355, 367 (D.Md. 2017) ("The qualified privilege is an affirmative defense.").  Because Colossus has not argued that there is any other bar for amendment, the court will grant leave to amend.

## IV.  Conclusion

For the foregoing reasons, Colossus' motion to dismiss will be granted and Adalytics will have twenty-one (21) days to file a second amended counterclaim.  A separate order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge

20