**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| COLOSSUS MEDIA, LLC, | * | |
| *Plaintiff*, | * | |
| v. | * | Case No. 1:26-mc-00096-RDM |
| ADALYTICS RESEARCH, LLC | * | |
| *Defendant*. | * | |

* * * * * * * * * * * * *

**DEFENDANT ADALYTICS RESEARCH LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS OPPOSITION TO COLOSSUS MEDIA, LLC'S MOTION TO QUASH NON-PARTY SUBPOENAS, OR IN THE ALTERNATIVE, FOR PROTECTIVE ORDER**

**HUGHES HUBBARD & REED LLP**
Koushik Bhattacharya (D.C. Bar. No. 1006901)
Hughes Hubbard & Reed LLP
1775 I Street, N.W., Sixth Floor
Washington, DC 20006-2401
Tel: (202) 721-4600
Facsimile: (202) 721-4646
Email: koushik.bhattacharya@hugheshubbard.com

*Counsel for Defendant Adalytics Research, LLC*

# TABLE OF CONTENTS


INTRODUCTION ........................................................................................................ 1

BACKGROUND ........................................................................................................ 3

LEGAL STANDARD.................................................................................................. 8

ARGUMENT ............................................................................................................ 10

A. Colossus' Undue Burden Arguments Are Meritless............................................ 10

1. Colossus Lacks Standing to Move to Quash Based on Non-Parties' Purported Burden ........................................................................ 10

2. Colossus's Motion for Protective Order Is Improper .............................. 13

3. Adalytics' Requests Are Not Burdensome .............................................. 14

B. The Court Should Not Quash the Subpoenas Based Upon Purportedly Confidential and Commercially Sensitive Information ....................................... 18

1. A Protective Order Will Shield Any Confidential or Proprietary Information Responsive to the Subpoenas.............................................. 18

2. Colossus Fails to Explain Sufficiently Why Documents Responsive to Subpoenas Would Be Confidential ......................................................... 19

3. Colossus Makes only Conclusory – or False – Assertions ....................... 21

C. The Subpoenas Target Information Directly Relevant to Adalytics' Defenses.... 24

D. Colossus' Request for Sanctions Is Baseless ...................................................... 26

CONCLUSION........................................................................................................ 28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Al Muderis v. Hernandez*,
Case No. 1:20-mc-00090-RM, 2021 WL 119348 (D. Colo. Jan. 13, 2021)....16

*Am. Home Assur. Co. v. KBE Bldg. Corp.*,
Civil No. CCB–13–1941, 2015 WL 348292 (D. Md. Jan. 13, 2015)....9, 10

*In re Am. Kidney Fund, Inc.*,
No. TDC-17-1787, 2019 WL 1894248 (D. Md. Apr. 29, 2019)....26

*Athridge v. Aetna Casualty and Surety Co.*,
184 F.R.D. 200 (D.D.C. 1998)....15

*Baron Fin. Corp. v. Natanzon*,
240 F.R.D. 200 (D. Md. 2006)....21

*Chubb Integrated Sys. Ltd. v. Natl. Bank of Washington*,
103 F.R.D. 52 (D.D.C. 1984)....24

*CineTel Films, Inc. v. Does 1-1, 052*,
853 F. Supp.2d 545 (D. Md. 2012)....9

*City of Ann Arbor Employees' Retirement Sys. v. Sonoco Prods. Co.*,
No. 4:08-2348-TLW-SVH, 2010 WL 11534402 (D.S.C. Oct. 19, 2010)....13

*In re Currency Conversion Fee Antitrust Litig.*,
No. MDL No. 1409, M 21-95, 2004 WL 848171 (S.D.N.Y. Apr. 21, 2004)....18

*Darling v. Girard*,
No. 15-mc-499, 2015 WL 13898434 (D.D.C. July 20, 2015)....24

*Deford v. Schmid Prod. Co.*,
120 F.R.D. 648 (D. Md. 1987)....21

*In re Denture Cream Prods. Liab. Litig*,
292 F.R.D. 120 (D.D.C. 2013)....24

*Diamond Servs. Mgmt. Co. v. Knobb*,
339 F.R.D. 334 (D.D.C. 2021)....23

*In re England*,
375 F.3d 1169 (D.C. Cir. 2004)....8

*Fenstermacher v. Moreno*,
No. 1:08–cv–01447–SKO PC, 2010 WL 5071042 (E.D. Cal. Dec. 7, 2010)..........................10

*U.S. ex rel. Fisher v. Network Software Assocs.*,
217 F.R.D. 240 (D.D.C. 2003)..........................................................................................15

*Flanagan v. Wyndham Intl. Inc.*,
231 F.R.D. 98 (D.D.C. 2005)..............................................................................................8

*Goldberg v. Amgen, Inc.*,
123 F. Supp.3d 9 (D.D.C. 2015).................................................................................26, 27

*Green v. iMentor, Inc.*,
Civil Action No. RDB-24-2567, 2026 WL 1074003 (D. Md. Apr. 21, 2026) ..........................9

*Hickman v. Taylor*,
329 U.S. 495 (1947)...........................................................................................................8

*Insulate America v. Masco Corp.*
227 F.R.D. 427 (W.D.N.C. 2005).......................................................................................23

*Lyman v. Greyhound Lines, Inc.*,
No. 2:20-CV-01812-DCN, 2021 WL 3811298 (D.S.C. Aug. 26, 2021).....................20, 21, 22

*Malibu Media, LLC v. Doe*,
No. 15-CV-3504, 2016 WL 4444799 (E.D.N.Y. Aug. 23, 2016) ..........................................11

*Mayor and City Council of Baltimore v. Unisys Corp.*,
Civil Case No. JKB–12–614, 2013 WL 6147780 (D. Md. Nov. 21, 2013) ............................18

*In re Mod. Plastics Corp.*,
890 F.3d 244 (6th Cir. 2018) ..............................................................................................26

*Mount Hope Church v. Bash Back!*,
705 F.3d 418 (9th Cir. 2012) ..............................................................................................27

*People for the Ethical Treatment of Animals, Inc. v. Vital Farms, Inc.*,
No. 2:22-mc-24-EWH-RJK, 2023 WL 5506028 (E.D. Va. Aug. 14, 2023) ...........................26

*Petruss Media Grp., LLC v. Advantage Sales & Mktg. LLC*,
No. 22-cv-3278-RC-ZMF, 2025 BL 104428 (D.D.C. Mar. 26, 2025) ...................................12

*In re Polymer Solutions International, Inc.*,
Civil Action No. DKC 18-1864, 2019 WL 1239778 (D. Md. Mar. 18, 2019)........................17

*Powell v. Allied Universal Sec. Servs., LLC*,
No. 17-CV-6133-ARR-SJB, 2018 BL 503513 (E.D.N.Y. Aug. 9, 2018) ............11, 12, 19, 20

*Refco Grp. Ltd., LLC v. Cantor Fitzgerald, L.P.*,
No. 13-CV-1654, 2014 WL 5420225 (S.D.N.Y. Oct. 24, 2014) ....19

*Richards v. Octane Environmental, LLC*,
No. 1:18-cv-158, U.S. Dist. LEXIS 263228 (N.D. W.Va. Mar. 12, 2020) ....22

*Richardson v. Sexual Assault/Spouse Research Ctr., Inc.*,
270 F.R.D. 223 (D. Md. 2010) ....18

*Ringdahl v. Afsharjavan*,
No. 8:18-cv-01006-PX, 2019 WL 2270693 (D.Md. May 24, 2019) ....10, 11

*In re Rule 45 Subpoena Issued to JP Morgan Chase Bank, N.A.*,
319 F.R.D. 132 (S.D.N.Y. 2016) ....11

*Rullan v. Goden*,
Civil No. 1:17-cv-03741-CCB, 2024 WL 1191600 (D. Md. Mar. 20, 2024) ....13

*Stati v. Republic of Kazakhstan*,
No. 14-1638 ABJ/DAR, 2020 WL 3259244 (D.D.C. June 5, 2020) ....15

*Stephenson v. Atrium Health, Inc.*,
No. 3:21-cv-103-FDW-DCK, 2021 U.S. Dist. LEXIS 222536
(W.D.N.C. Nov. 17, 2021) ....11, 12

*The Neighbors Law Firm, P.C. v. Highland Capital Mgmt., L.P.*,
No. 5:09–CV–352–F, 2011 WL 649925 (E.D.N.C. Feb. 10, 2011) ....13

*United States v. Idema*,
118 F.App'x 740 (4th Cir. 2005) ....11

*Webb v. Green Tree Servicing LLC*,
283 F.R.D. 276 (D. Md. 2012) ....9

*West Coast Prods., Inc. v. Does 1-5829*,
275 F.R.D. 9 (D.D.C. 2011) ....10

*Westernbank P.R. v. Kachkar*,
No. M8-85-X3, 2009 WL 856392 (S.D.N.Y. Mar. 26, 2009) ....8, 24

*Wyatt B. v. Kotek (In re Non-Party Subpoena to the Ctr. for the Study of Soc. Policy)*,
659 F.Supp.3d 54 (D.D.C. 2023) ....8

**Statutes and Rules**

Fed. R. Civ. P. 26(b)(1) ....8

Fed. R. Civ. P. 26(b) and (c) ....12

Fed. R. Civ. P. 26(c) ....................................................................................................9, 13

Fed. R. Civ. P. 26(c)(1)......................................................................................................13

Fed. R. Civ. P. 45(d)(1)......................................................................................................26

Fed. R. Civ. P. 45(d)(3)......................................................................................................13

Fed. R. Civ. P. 45(d)(3)(B) .........................................................................................18, 19

Defendant Adalytics Research, LLC ("Defendant" or "Adalytics"), by and through undersigned counsel, hereby files this Memorandum of Points and Authorities in Support of its Opposition to the Motion to Quash Non-Party Subpoenas, or in the Alternative, for Protective Order, filed by Plaintiff Colossus Media, LLC ("Plaintiff" or "Colossus").

## INTRODUCTION

Colossus' Motion to Quash Non-Party Subpoenas, or in the Alternative, for Protective Order ("Motion to Quash") is heavy on rhetoric but light on merit. While it speaks loudly, none of its three arguments holds up to even mild scrutiny, laying bare the true purpose of the motion – to further delay the discovery process and keep Adalytics away from dispositive and exonerating information. Indeed, the overheated and overstated response to what, in reality, is routine discovery, underscores that Colossus' concern is not the burden on non-parties or (run-of-the-mill) confidentiality issues, but the damaging information these parties possess.[1]

Colossus first asserts that Adalytics' document requests to BidSwitch Inc. ("BidSwitch") and Basis Global Technologies, Inc. ("Basis" and, collectively with BidSwitch, "Non-Parties") are unduly burdensome. As will be explained *infra*, they are not – Adalytics propounded just six narrowly-tailored document requests upon BidSwitch and five upon Basis in conjunction with the subpoenas served upon them ("Subpoenas"). But, regardless, Colossus lacks standing under Rule 45 to assert burdens it theorizes might fall on the Non-Parties in responding to the Subpoenas, and its alternative request for a protective order under Rule 26 is not available in this Court.

---

1 This became even more apparent earlier this week when Colossus served its objections and responses to the discovery Adalytics served on it on April 29, 2026. Despite having been granted a 30-day extension to respond, Colossus produced zero documents in response to Adalytics' requests for production of documents and provided evasive, often unresponsive answers to Adalytics' interrogatories.

Colossus next claims that the Subpoenas should be quashed because they "seek information from a third party which is confidential." Memorandum in Support of Motion to Quash ("Memo"), at 1. Colossus offers no explanation aside from its own *ipse dixit* of how the information sought in the Subpoenas – consisting of communications involving Basis, BidSwitch, and other parties, as well as Basis' and BidSwitch's internal business documents – constitutes the type of confidential and proprietary information that warrant non-disclosure. To the extent any of the Non-Party Subpoenas' document requests actually require production of Colossus' confidential or proprietary information, such is hardly uncommon in civil litigation and does not foreclose discovery. Rather, parties enter into protective orders to guard such sensitive information. Aware that there could be confidential information at issue in this matter, Adalytics sent a draft protective order to Colossus on ***May 4, 2026***, and followed up with Colossus numerous times via email and also during a teleconference. Colossus, however, provided no substantive engagement for more than ***seven weeks***, finally responding with a redline of the draft on June 24, 2026 (conveniently after it made its argument regarding confidential documents in its Motion to Quash).[2]

Finally, Colossus argues that Adalytics' requests are "irrelevant," which, for the reasons explained *infra*, is simply incorrect. Adalytics' narrowly tailored requests seek information and documents that directly impact and inform Adalytics' defenses and Colossus' claims in this matter. The requests are clearly relevant.

---

2 Similarly, Colossus has delayed Adalytics' attempts to reach agreement on issues of Electronically Stored Information ("ESI") so the parties can enter into an ESI Protocol and streamline the exchange of ESI in discovery. After ignoring for more than two months Adalytics' questions seeking basic information regarding how Colossus stored its electronic information and whether Colossus complied with Adalytics' preservation notice, Colossus flatly refused to provide requested information on June 24, 2026. Counsel for Colossus also failed to answer questions about preservation from Adalytics' general counsel at the outset of this litigation on multiple occasions.

The Motion to Quash, therefore – including its ridiculous request for sanctions – is entirely without merit. The Court should deny it and permit Adalytics to conduct routine non-party discovery to build its defenses to Colossus' baseless allegations in this lawsuit.

## BACKGROUND

Adalytics conducts advertising analytics and provides digital forensics to media buyers and advertisers in the digital advertising industry. Declaration of Dr. Krzysztof Franaszek, dated July 1, 2026 ("Franaszek Decl."), at ¶ 2. From time to time, it publishes reports on the internet that it considers of public interest. *Id.*, at ¶ 4. One such report was Adalytics' May 10, 2024 blog post titled "Are user IDs declared consistently in ad auctions?" ("Report"). *Id.*, at ¶ 11 & Ex. A. The published Report was based upon a study of the source code of ads and bid responses served by The Trade Desk (a demand side platform) on Chrome desktop browsers on behalf of different advertisers and on different publisher properties. Franaszek Decl., at ¶ 13. The study looked at bid responses transacted by The Trade Desk through 16 supply side platforms, including Colossus, on numerous websites. *Id*. Among Adalytics' observations was that, in its sample data – for Colossus only – the user ID declared to The Trade Desk at the time of an ad auction was different from the actual user ID stored in the user's browser cookie storage. *Id.* at ¶ 14. Adalytics based its unbiased, straightforward, and non-accusatory observations entirely upon publicly available information. *Id.* at ¶ 15.

Shortly after the Report was posted, in May 2024, Colossus threatened to sue AdExchanger (a digital ad industry publication) over things that Colossus knew at the time that the Adalytics Report did not say. Colossus then filed suit against Adalytics in the U.S. District Court for the District of Maryland (*Colossus Media LLC v. Adalytics Research LLC*, Case No. 8:24-cv-01402-DKC, hereinafter "Action"), claiming Adalytics intentionally made false statements in the Report to (somehow) secure more clients. Colossus quoted separate news publications about the Report

in its Amended Complaint (ECF No. 9,[3] hereinafter, "Complaint") but did not quote the Report itself. *See generally*, Complaint. While Colossus did not identify specific statements in the Report that were problematic or actionable, it argued that it was "not possible" for Colossus and its technology to be at fault for any incorrect declarations of user IDs. *See*, *e.g.* Complaint at ¶ 26 ("Colossus SSP does not mis-declare or otherwise manipulate or alter user IDs in its bid requests" and that it was "not possible for Colossus SSP to mis-declare a user's [Trade Desk ID] because Colossus SSP connects to Trade Desk through BidSwitch and has no control or knowledge of whether BidSwitch sends a particular bid request to Trade Desk or another DSP").

Colossus, therefore, believed that Adalytics was flatly incorrect in concluding that BidSwitch was highly unlikely to be responsible for the false "buyer user IDs" used in Trade Desk ad auctions. Adalytics offered on multiple occasions that, should any such "facts and information" require it, Adalytics would modify its Report. Franaszek Decl., at ¶ 16. Yet, despite claiming for more than two years now that it has "facts and information establishing Adalytics' post was false" (Complaint at ¶ 21), Colossus has never responded to Adalytics' repeated requests for Colossus to provide those facts and information. Franaszek Decl., at ¶¶ 18, 21.[4] To be clear, after insinuating in public and in the present Action that BidSwitch was the party responsible for the submission of inaccurate Chrome desktop user IDs to The Trade Desk, Colossus wants to hide the true answer via its unfounded Motion to Quash.

---

3 "ECF No." refers to the district court docket for the Action, *Colossus Media LLC v. Adalytics Research LLC*, Case No. 8:24-cv-01402-DKC (D. Md.).

4 Specifically, Colossus indicated it had .har files that proved Adalytics' claims in its Report were incorrect. But Colossus has not provided such information despite repeated requests by Adalytics, which indicated it would revise any portion of its Report that was proven inaccurate by the .har files or other data provided by Colossus. Franaszek Decl., at ¶¶ 20-21.

After months of preliminary motions, the Court entered a scheduling order on April 3, 2026. ECF No. 49. Pursuant to that order, the Parties held a conference about discovery of ESI as required on April 17, 2026. Declaration of James Schaller, dated July 1, 2026 ("Schaller Decl."), at ¶ 4. The court's scheduling order set various discovery deadlines, including Plaintiff's and Defendant's respective Rule 26(a)(2) expert report disclosures on June 2, 2026 and July 2, 2026, respectively, and the close of all discovery on August 17, 2026. ECF No. 49. During the discovery conference, counsel for Colossus declined to consent to Adalytics' request for an extension of certain discovery-related deadlines on the basis that additional time to complete discovery would not be necessary – *i.e.*, that two to three months of fact discovery in this highly technical dispute would be sufficient time for the parties to prepare expert reports, and that all discovery could be completed within four months. *See* Adalytics' Motion to Extend Schedule, ECF No. 51, at ¶ 8. On May 4, 2026, the trial court granted Adalytics' Motion to Extend Schedule, setting new deadlines for opening expert reports of August 3, 2026 and September 2, 2026, respectively, and the close of all discovery for October 19, 2026. *See* ECF No. 52.

During the parties' initial conference, counsel for Adalytics noted that discovery in the Action likely would require the production of large and difficult-to-manage ESI (including electronic information and code in file formats not addressed by typical or standard ESI protocols) and suggested the parties work together to streamline and simplify the exchange of data. Schaller Decl., at ¶ 5. Three days later, on April 20, 2026, counsel for Adalytics sent an email to counsel for Colossus with several questions regarding whether and how Colossus maintained its source code and other digital records that would assist Adalytics "in crafting the [ESI] stipulation and trying to figure out the best way to produce data that will be sought in discovery." Schaller Decl., at ¶ 6 & Ex. 1. When counsel for Colossus did not respond, counsel for Adalytics sent the questions

again on April 29, 2026, along with Adalytics' first set of discovery requests. Schaller Decl., ¶ 7 & Ex. 2.

Having not received any response, counsel for Adalytics sent the questions a third time on May 4, 2026, along with a draft protective order. Schaller Decl., at ¶ 8 & Ex. 3. After more than another week of silence, counsel for Adalytics again attempted to follow up regarding the ESI questions and the protective order in an email that included the subpoena it planned to serve on Basis. Schaller Decl., at ¶ 9 & Ex. 4. Counsel for Colossus finally sent an email on May 21, 2026 – but not in response to the ESI questions or the protective order. Rather, counsel requested a 30-day extension to respond to Adalytics' discovery responses. Schaller Decl., at ¶ 10 & Ex. 5, at 2. Counsel for Adalytics granted the requested extension but requested, in exchange, that Colossus "engage with us on efforts to put together a protective order and ESI stipulation." Ex. 5 at 1. Counsel for Colossus responded: "We will review your draft protective order and ESI questions and be in touch." *Id.*

Counsel for Colossus was back in touch on May 27, 2026, but again not to discuss ESI or the proposed protective order; rather, counsel sought to schedule a meet-and-confer regarding Colossus' planned motion to quash. Schaller Decl., at ¶ 11 & Ex. 6. On June 3, 2026, counsel held the meet-and-confer, during which Colossus made its only attempt to explain its objections to the subpoenas and in the process demonstrated that Colossus' Motion to Quash is merely another delay tactic intended to obstruct discovery and drive up Adalytics' fees. Schaller Decl., at ¶ 12. During the meet-and-confer, counsel for Colossus could not explain why Colossus had standing to argue relevance or undue burden objections on behalf of Basis and BidSwitch; what Colossus' confidentiality concerns specifically were; or what portions of the Subpoenas were overbroad or burdensome. *Id.*, at ¶ 13. When counsel for Adalytics mentioned confidentiality concerns could be

addressed in a protective order, a proposed draft of which Adalytics had by then circulated more than a month prior to no response, counsel for Colossus theorized that productions from Basis and BidSwitch could contain privileged documents that Colossus had the right to review prior to production. *Id.*, at ¶ 14. And when counsel for Colossus asked for Adalytics to voluntarily withdraw the portions of the subpoenas that Colossus contended were duplicative of requests to Colossus, counsel for Adalytics asked for confirmation of which portions of the subpoenas Colossus believed were duplicative and whether Colossus would produce those documents itself. *Id.*, at ¶ 15.

At the close of the meet-and-confer, counsel for Adalytics inquired about the ESI questions and protective order. *Id.* at ¶ 16. Counsel for Colossus indicated comments on the protective order were forthcoming, indicated that counsel was discussing the ESI questions with Colossus, and asked why Adalytics needed answers to the ESI questions it posed (more than six weeks earlier). *Id.* at ¶ 17. Counsel for Adalytics explained that the questions were meant to help streamline the exchange of ESI and indicated Adalytics would answer any similar questions Colossus might have. *Id.* at ¶ 18.

Colossus never provided the information counsel for Adalytics requested with respect to the Subpoenas. *Id.*, at ¶ 19. A week later, however, on June 10, 2026, counsel for Colossus requested Adalytics grant a 30-day extension for the Non-Parties to respond to the Subpoenas, despite the fact that neither Basis nor BidSwitch made such a request and despite acknowledging that counsel for Colossus did not represent Basis or BidSwitch. *Id.*, at ¶ 20 & Ex. 7. On June 24, 2026, a week after filing the Motion to Quash and more than seven weeks after first receiving Adalytics' draft, Colossus finally provided proposed revisions to the draft protective order in redline. *Id.* at ¶ 21. It also indicated it would not answer the questions Adalytics requested to assist

with designing an ESI protocol – including whether and how it preserved source code information at issue in this dispute – continuing its refusal to meaningfully engage in the discovery process. *Id.* at ¶ 22. On June 29, 2026, Colossus served its objections and responses to Adalytics' First Set of Interrogatories and First Set of Requests for Production of Documents. *Id.* at 25 & Exs. 8 and 9. Colossus did not produce any documents in response to Adalytics' 26 requests. *Id.*

## LEGAL STANDARD

Resolution of a discovery motion must start with the basic premise that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense" (Fed. R. Civ. P. 26(b)(1)), and that discovery rules "are to be accorded a broad and liberal treatment." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). *See also In re England*, 375 F.3d 1169, 1177 (D.C. Cir. 2004) ("The Federal Rules of Civil Procedure encourage the exchange of information through broad discovery."); *Wyatt B. v. Kotek (In re Non-Party Subpoena to the Ctr. for the Study of Soc. Policy)*, 659 F.Supp.3d 54, 58 (D.D.C. 2023) ("The Federal Rules of Civil Procedure … contemplate a broad scope of discovery."). This is especially true where, as here, a court is dealing only with a discrete discovery dispute relating to a case pending in another jurisdiction. "[A] district court whose only connection with a case is supervision of discovery ancillary to an action in another district should be especially hesitant to pass judgment on what constitutes relevant evidence thereunder." *Westernbank P.R. v. Kachkar*, No. M8-85-X3 (Part I), 2009 WL 856392, at *4 (S.D.N.Y. Mar. 26, 2009) (internal quotations and citations omitted). "[W]here relevance is in doubt, the district court is to be permissive." *Id.*

Here, Colossus seeks to quash the Subpoenas pursuant to Fed. R. Civ. P. 45, and, in the alternative, seeks a protective order pursuant to Fed. R. Civ. P. 26. Quashing a subpoena, however, is considered extraordinary relief, and "[a] court should be loath to quash a subpoena if other protection of less absolute character is possible." *Flanagan v. Wyndham Intl. Inc.*, 231 F.R.D. 98,

102 (D.D.C. 2005). Moreover, as will be explained *infra*, Colossus lacks standing to move to quash the Subpoenas on the ground that they are unduly burdensome to Basis and BidSwitch. *See*, *e.g.*, *Am. Home Assur. Co. v. KBE Bldg. Corp.*, Civil No. CCB–13–1941, 2015 WL 348292, at *15 (D. Md. Jan. 13, 2015) (finding defendant had standing to object to subpoenas on basis of its attorney-client privilege and work product doctrine arguments, but "lacks standing" "to object on the ground of undue burden") (citing *CineTel Films, Inc. v. Does 1-1, 052*, 853 F. Supp.2d 545, 556 (D. Md. 2012) ("[T]he undue burden contemplated by Rule 45 is one placed on the direct recipient of the subpoena. . . not on third parties . . .")).

While a party that lacks standing to challenge a Rule 45 subpoena may seek a protective order on a third party's behalf pursuant to Fed. R. Civ. P. 26(c) (*see Green v. iMentor, Inc.*, Civil Action No. RDB-24-2567, 2026 WL 1074003, at *3 n.4 (D. Md. Apr. 21, 2026)), that rule requires that the party move for the protective order "in the court where the action is pending … ." Fed. R. Civ. P. 26(c). That would be the District of Maryland, not this Court. Even if Colossus could bring its motion for protective order in this Court, a Rule 26(c) motion requires specificity. A party that moves for a protective order has the burden of establishing good cause and cannot "rely upon stereotyped and conclusory statements" but, rather, "a particular and specific demonstration of fact as to why a protective order must issue." *Webb v. Green Tree Servicing LLC*, 283 F.R.D. 276, 278-79 (D. Md. 2012) (internal citations and quotations omitted).

## ARGUMENT

### A. Colossus' Undue Burden Arguments Are Meritless

Whether as a basis for its Motion to Quash under Federal Rule 45 or its alternative motion for a protective order under Rule 26, Colossus cannot prevail on its undue burden arguments. As Colossus' brief acknowledges, any burden in responding to the Subpoenas would be shouldered by Non-Parties Basis and BidSwitch, not Colossus. Accordingly, Colossus lacks standing to object on the ground of undue burden under Rule 45. Colossus's alternative request for a protective order under Rule 26 is also improper because Colossus failed to seek that relief in the court in which it is available.

Even assuming Colossus could properly object to undue burden on behalf of Basis and BidSwitch, Colossus' burden arguments are meritless. Contrary to the picture painted by the overheated rhetoric in Colossus' Motion to Quash, the Subpoenas served on Basis and BidSwitch are not at all burdensome and do not solely seek information that is available from Colossus. Moreover, regardless of Colossus' (incorrect) assessment of the document requests, neither Basis nor BidSwitch has moved to quash the subpoenas, and neither joined in Colossus' motion. Counsel for Adalytics has been in touch with counsel for Basis and counsel for BidSwitch and, in a meet-and-confer with counsel for BidSwitch and an email to counsel for Basis, indicated a willingness to work to address any potential overbreadth issues. Schaller Decl., at ¶ 24.

#### 1. Colossus Lacks Standing to Move to Quash Based on Non-Parties' Purported Burden

As a preliminary matter, Colossus does not have standing to argue that Adalytics' Subpoenas foist an undue burden upon Basis and BidSwitch. That is an argument for Basis and BidSwitch. *See Am. Home Assur. Co.*, *supra*; *West Coast Prods., Inc. v. Does 1-5829*, 275 F.R.D. 9, 16 (D.D.C. 2011) (finding defendants' objections other than privacy interests "may only be

raised by [subpoena recipients] themselves in an appropriate motion to quash or for protective order") (citing *Fenstermacher v. Moreno*, No. 1:08–cv–01447–SKO PC, 2010 WL 5071042, at *3-5 (E.D. Cal. Dec. 7, 2010) (finding party lacked standing to quash subpoena based on alleged undue burden to the subpoenaed third party)).

"[A] party generally 'does not have standing to challenge a subpoena issued to a nonparty unless the party claims some personal right or privilege in the information sought by the subpoena.'" *Ringdahl v. Afsharjavan*, No. 8:18-cv-01006-PX, 2019 WL 2270693, at *3 (D. Md. May 24, 2019) (quoting *United States v. Idema*, 118 F.App'x 740, 744 (4th Cir. 2005)). While Colossus claims a right in the information sought by the Subpoenas, such information is not privileged and can be properly secured with a protective order, as further explained in Section B, *infra*. Objecting on burden, however, is up to the non-party subject to the subpoena.

In *Powell v. Allied Universal Sec. Servs., LLC*, No. 17-CV-6133-ARR-SJB, 2018 BL 503513 (E.D.N.Y. Aug. 9, 2018), the defendants moved to quash non-party subpoenas served by the plaintiffs, including a subpoena served on the Port Authority of New York and New Jersey. Among other objections, the defendants asserted "that the subpoena is overbroad and imposes an undue burden on the Port Authority." *Id.* at *2. But the court found that the defendants

> lack[ed] standing to make such an objection; any burden of production falls on the Port Authority, not Defendants. "[E]ven where the defendant has alleged some personal privacy right or privilege to the documents sought, the defendant still lacks standing to oppose a third-party subpoena on undue burden grounds." *Malibu Media, LLC v. Doe*, No. 15-CV-3504, 2016 WL 4444799, at *6 (E.D.N.Y. Aug. 23, 2016) (citations and quotation omitted) (collecting cases). "[C]ourts have consistently rejected the position that a party who is not the recipient of a subpoena can nonetheless challenge that subpoena because it creates an undue burden." *In re Rule 45 Subpoena Issued to JP Morgan Chase Bank, N.A.*, 319 F.R.D. 132, 135 (S.D.N.Y. 2016) (quotations omitted).

*Id.*

In support of its argument that the Court should quash the Subpoenas because of the undue burden placed upon non-parties, Colossus cites seven cases. *See* Memo, at 6-8. In all but one of those cases, however, the motion to quash was ***brought by the non-party*** served with the subpoena – not the party to the lawsuit opposite the party that served the subpoenas. And the one outlier case – *Stephenson v. Atrium Health, Inc.*, No. 3:21-cv-103-FDW-DCK, 2021 U.S. Dist. LEXIS 222536, at *9 (W.D.N.C. Nov. 17, 2021) – is distinguishable. As a preliminary matter, in *Stephenson*, the court noted that there was "some disagreement over the applicability of Fed. R. Civ. P. 45," but that it had "discretion to address the discovery dispute in accordance with Fed. R. Civ. P. 26(b) and (c)." *Id.* at *5.

Moreover, Colossus has yet to identify which of Adalytics' subpoena requests it contends are duplicative of its requests to Colossus – Colossus argues broadly they "tread much of the same ground" – nor what portion of the responses, if any, they will produce. In contrast, the plaintiff in *Stephenson* had already produced or agreed to produce all documents requested by the proposed subpoenas at the time of her motion to quash. *Stephenson*, 2021 WL 5407856, at *2. The court acknowledged that plaintiff had not provided a specific timetable for production and that the subpoenas sought information defendants were entitled to request from third parties "if plaintiff was unwilling or unable to provide satisfactory responses." *Id.* at *4. Accordingly, the court ordered plaintiff to "promptly complete and/or supplement" her discovery responses and productions, and it ruled that defendants were free to seek any remaining missing information from new subpoenas. *Id.* In doing so, the court rejected Stephenson's arguments regarding risk of embarrassment in the business community upon which Colossus also seeks to rely.

As far as the Subpoenas being "plainly duplicative" of discovery served upon Colossus, such is simply untrue (as explained *infra*), and, again, Colossus does not have standing to bring

this argument. Notably, the *Powell* Court stated that because the defendants lacked standing to raise a burden objection, the fact that the plaintiffs could "obtain the same documents through party discovery is not a basis to quash any of the subpoenas." *Powell*, No. 17-CV-6133-ARR-SJB, 2018 BL 503513 at *2, n.2; *see also Petruss Media Grp., LLC v. Advantage Sales & Mktg. LLC*, No. 22-cv-3278-RC-ZMF, 2025 BL 104428, at *7 (D.D.C. Mar. 26, 2025) (*quoting Powell*) ("Moreover, 'that [Judgment Creditors] may obtain the same documents through party discovery is not a basis to quash' the subpoena."). The Court, therefore, should reject Colossus' argument that the subpoenas should be quashed because they are burdensome or duplicative.

**2. Colossus's Motion for Protective Order Is Improper**

In the alternative, Colossus argues that the Court "should enter a protective order releasing BidSwitch and Basis from the unnecessary and overbroad subpoenas." Memo at 4. But under the plain language of Rule 26(c), a motion for a protective order must be filed "in the court where the action is pending," *i.e.*, in the District of Maryland court where the Action is pending. Fed. R. Civ. P. 26(c)(1).[5] Accordingly, the rule does not provide this Court with jurisdiction to issue a protective order on Colossus's motion.

Courts interpreting the analogous specification of venue in Rule 45(d) regularly find that motions to quash must be denied when they are improperly brought in a court other than "the court for the district where compliance is required." Fed. R. Civ. P. 45(d)(3); *see, e.g.*, *Rullan v. Goden*, Civil No. 1:17-cv-03741-CCB, 2024 WL 1191600, at *6 (D. Md. Mar. 20, 2024) (collecting cases); *The Neighbors Law Firm, P.C. v. Highland Capital Mgmt., L.P.*, No. 5:09–CV–352–F, 2011 WL 649925, at *2 (E.D.N.C. Feb. 10, 2011) ("The quashing remedy is not available in this

5 Rule 26(c)(1) also provides that a motion for a protective order may be filed in the "alternative on matters relating to a deposition, in the court for the district where the deposition will be taken." *Id.* Here, the Subpoenas at issue do not seek any deposition.

court because the subpoena issued, as required, from the United States District Court for the Eastern District of Virginia. … Only that court may quash the subpoena. … The portion of defendant's motion seeking an order quashing the subpoena will therefore be denied."); *City of Ann Arbor Employees' Retirement Sys. v. Sonoco Prods. Co.*, No. 4:08-2348-TLW-SVH, 2010 WL 11534402, at *2 (D.S.C. Oct. 19, 2010) (denying motion to quash brought in wrong court "for lack of jurisdiction under Fed. R. Civ. P. 45"). For the same reasons, Colossus's motion for a protective order should be rejected as well.

### 3. Adalytics' Requests Are Not Burdensome

Contrary to Colossus' claim that the Subpoenas are "onerous" (Memo, p. 8), the actual burden on the Non-Parties is minimal. Adalytics' subpoena to BidSwitch contains just six document requests. Four seek communications, three of which are virtually identical (save for the fact that the first seeks communications between BidSwitch and Colossus, the second communications between BidSwitch and Colossus' parent company, Direct Digital Holdings, Inc. ("DRCT"), and the third communications between BidSwitch and its customers). Those requests (Requests 2, 3, and 4, respectively) seek communications between BidSwitch and Colossus (Request 2), BidSwitch and DRCT (Request 3), and BidSwitch and its customers (Request 4) in just the four-month period of May through August of 2024. The communications sought are limited to "Colossus' compliance or non-compliance with BidSwitch Rules, including, but not limited to, communications regarding Colossus's supply quality or Non-Compliant Inventory, including mismatches in the 'buyer user ID' or 'user ID' field of an ad auction bid request." *See* Exhibit C to Motion to Quash, at 12. As explained *infra* in Section C, these requests are plainly relevant. Furthermore, they seek specific communications over a brief four-month period. These are narrowly tailored and cover a finite period of time.

The other request to BidSwitch seeking communications also is extremely narrow. While it seeks communications over a longer (yet still relatively short) period of time – September 30, 2023 through August 31, 2024 – the request is limited to communications with BidSwitch customers "regarding a request to pause or restrict bid requests submitted by Colossus." *Id.* Adalytics' other two document requests are similarly reasonable. Request No. 1 seeks one specific document – "the BidSwitch Terms of Supply Partners with Colossus and/or DRCT in effect on May 1, 2024." And Request No. 6 seeks documents related to Adalytics' Report. As such, none of the six requests to BidSwitch is even slightly burdensome or overbroad – let alone "onerous."

The Basis Subpoena includes only five requests, and all are limited to a manageable 14-month time period (November 1, 2023 to December 31, 2024). *See* Exhibit B to Motion to Quash at 5. Four of the requests seek communications, but Requests 1 and 2 are virtually identical, as are Requests 4 and 5. The lone difference is Requests 1 and 4 seek communications between Basis and Colossus and Requests 2 and 5 seek communications between Basis and Colossus' parent company, DRCT. Requests 1 and 2 involve communications relating to mismatched Advertising IDs, while Requests 4 and 5 involve communications relating to irregularities or anomalies in Colossus or DRCT publishing advertising information. Request No. 3 seeks Basis's internal aggregation of data related to inconsistencies in user IDs.

Colossus fails to provide more than its own assumption that responding to the Subpoenas would pose "onerous" burdens on the Non-Parties. This is insufficient (assuming, *arguendo*, Colossus even had standing to make this argument). *See U.S. ex rel. Fisher v. Network Software Assocs.*, 217 F.R.D. 240, 246 (D.D.C. 2003) (citing *Athridge v. Aetna Casualty and Surety Co.*, 184 F.R.D. 200, 191 (D.D.C. 1998)) ("The court entertains the burdensome objection only when the responding party demonstrates how the document is 'overly broad, burdensome, or oppressive,

by submitting affidavits or offering evidence which reveals the nature of the burden.' … The responding party cannot 'merely state, in conclusory fashion, that the requests are unduly burdensome.'"); *Stati v. Republic of Kazakhstan*, No. 14-1638 ABJ/DAR, 2020 WL 3259244, at *4 (D.D.C. June 5, 2020) (party resisting discovery must show "the manner and extent of the burden and the injurious consequences of insisting upon compliance with the subpoena' and not merely that compliance 'would be burdensome and onerous") (internal citation omitted).

Furthermore, the documents sought in the Subpoenas are not entirely available from Colossus. Plainly, Colossus provides no reason to assume that it is in possession of communications between BidSwitch and its customers (BidSwitch Request Nos. 4 and 5); nor all documents in ***BidSwitch's*** possession relating to the Report (BidSwitch Request No. 6), including communications between BidSwitch and third parties. Similarly, it would not have any aggregation queries of log-level data concerning user ID inconsistencies prepared by Basis (Basis Request No. 3). And while there could be overlap in the requests seeking communications between BidSwitch and Colossus and/or DRCT, even now Colossus has not indicated it will produce such communications – or that it is in possession of the communications of its parent company.

Colossus' responses to the discovery propounded on it by Adalytics do not inspire confidence. On June 29, 2026, Colossus provided objections and responses to Adalytics' First Set of Interrogatories and First Set of Requests for Production of Documents. Colossus' interrogatory answers are evasive and obfuscatory; and Colossus produced zero documents in response to 26 requests for documents. This after requesting a 30-day extension for its responses, waiting more than seven weeks to provide any substantive engagement on a straightforward draft protective order, ignoring and then refusing to answer basic questions related to how and whether information

was kept, and attempting to shut down third-party discovery, including requests for which it could not provide responsive documents.[6]

In such circumstances where Colossus itself is the source of barriers to obtaining discovery directly from Colossus, the Non-Party Subpoenas should be answered. *See Al Muderis v. Hernandez*, Case No. 1:20-mc-00090-RM, 2021 WL 119348, at *5 (D. Colo. Jan. 13, 2021) (explaining that while the plaintiffs "should be able to obtain" subpoenaed information from defendants, "the Court understands Defendants have been less than cooperative during the discovery process. Thus, the Court finds [subpoena recipient] shall respond to the subpoena with an affidavit" to provide the relevant portion of the requested information). Here, there are documents Adalytics knows are in Colossus' possession, and Colossus did not turn them over – specifically an open letter that had been posted on the internet by Colossus regarding the report; a video and a press release relating to the report; and a post on X (formerly Twitter).

Furthermore, and contrary to Colossus' suggestion in the Motion to Quash that this is "an early stage of discovery," nearly three months have passed since the start of the discovery process, and less than five weeks remain until the deadline for Colossus's expert reports.[7] Finally, even if Colossus had standing to pursue its undue burden argument in a motion to quash, even if a protective order was available from this Court, and even if Colossus presented more than

6 Notably, in Colossus' General Objections to both Adalytics' First Set of Interrogatories and First Set of Requests for Production of Documents, Colossus objects that the interrogatories and requests are "vague, overbroad and unduly burdensome to the extent they use the term 'you' or 'your' in a manner that would require Colossus to respond on behalf of another in this action or to respond other than in its own capacity." *See*, *e.g.*, Schaller Decl., Ex. 9, at 3. If this means Colossus will not provide information or documents and communications in the possession of its parent company, DRCT, then Adalytics certainly can seek such documents and communications from Basis and BidSwitch.

7 Adalytics' rebuttal reports are due September 2, 2026, and all fact and expert discovery closes October 19, 2026. ECF No. 52.

conclusory conjecture about the purported burden, such arguments would be undone by the willingness of Basis and BidSwitch to comply with Adalytics' subpoenas. *Cf. In re Polymer Solutions International, Inc.*, Civil Action No. DKC 18-1864, 2019 WL 1239778, at *9 (D. Md. Mar. 18, 2019) (declining to find undue hardship where subpoenaed individual "indicated his willingness to comply with a deposition subpoena, resides within close distance to the deposition location and declined to oppose the § 1782 application"). Colossus' undue burden argument is without merit.

### B. The Court Should Not Quash the Subpoenas Based Upon Purportedly Confidential and Commercially Sensitive Information

Colossus also argues that the Court should quash Adalytics' Subpoenas because they require production of confidential and proprietary information. But confidential and proprietary information is routinely exchanged in civil litigation – it is why Courts enter protective orders and why Adalytics has attempted to have one entered in this case. Despite receiving a draft protective order from Adalytics on May 4, 2026, however, Colossus did not provide comments or otherwise engage in putting together a protective order for more than seven weeks (and after filing its Motion to Quash).[8] And Colossus' argument that a protective order will not be sufficient to protect its interests is specious and based entirely upon baseless and false allegations.

#### 1. A Protective Order Will Shield Any Confidential or Proprietary Information Responsive to the Subpoenas

The Federal Rules allow for courts to quash or modify subpoenas that require "disclosing a trade secret or other confidential research, development, or commercial information." Fed. R.

8 Indeed, it appears – despite counsel for Adalytics repeatedly requesting comments on the draft protective order it provided to Colossus – that Colossus chose not to engage on crafting a protective order so it could argue that the Subpoenas could be quashed because they seek confidential information.

Civ. P. 45(d)(3)(B). But Colossus does not assert any trade secret or privilege protection, and the proper way to deal with confidentiality concerns is through a protective order, if merited. *See Richardson v. Sexual Assault/Spouse Research Ctr., Inc.*, 270 F.R.D. 223, 227 (D. Md. 2010) ("Documents that are not privileged, but that are confidential, are more appropriately produced subject to a protective order."); *see also Mayor and City Council of Baltimore v. Unisys Corp.*, Civil Case No. JKB–12–614, 2013 WL 6147780, at *4 (D. Md. Nov. 21, 2013); *In re Currency Conversion Fee Antitrust Litig.*, No. MDL No. 1409, M 21-95, 2004 WL 848171, at *1 (S.D.N.Y. Apr. 21, 2004) ("American Express' concern that production of the subpoenaed documents would compromise its trade secrets and other confidential information is obviated by the presence of the confidentiality agreement and protective order in this action.").

### 2. Colossus Fails to Explain Sufficiently Why Documents Responsive to Subpoenas Would Be Confidential

Setting aside the wild statements in Section B of the Memo, discussed *infra*, Colossus fails to provide more than conclusory explanations for why the documents sought by the Subpoenas would be confidential or commercially sensitive. "[F]or a party to have standing to challenge a subpoena served on a non-party, there must be more than a conclusory assertion that the subpoenas seek documents that are private, confidential, and commercially sensitive." *Refco Grp. Ltd., LLC v. Cantor Fitzgerald, L.P.*, No. 13-CV-1654, 2014 WL 5420225, at *4 (S.D.N.Y. Oct. 24, 2014) (internal quotations and citations omitted). The defendants in *Powell*, *supra*, failed to explain their assertions of privilege and confidentiality.

> Defendants offer no explanation for their conclusory assertions of privilege and confidentiality. In any event, because there is no explanation how invoices or training materials are confidential or constitute a trade secret, Defendants' objection is ultimately without merit. The materials sought are of the kind commonly sought via subpoena. To the extent there are confidentiality concerns, or even trade secrets, such interests are protected by the current protective order, see Dkt. No. 38 ("Protective Order"), and the Port Authority can join the order to receive its protection.

*Powell*, 2018 BL 503513, at *1-2.

Similarly, here, Colossus claims that the Subpoenas "seek a wide net of information from Colossus's closest business partners, including closely held information about how Colossus's proprietary technology works, the identities of Colossus's customers, and how Colossus and its customers target and reach certain customers." Memo, at 9. Colossus also claims the documents responsive to the Subpoenas will include "marketing strategy and information, and proprietary information about Colossus's product design." *Id.* But Colossus does not explain which of the 11 document requests in the Subpoenas seek this information, nor how the documents requested are "closely held" and "proprietary" when they are in the possession of (and sometimes created by) Basis, BidSwitch, and other third-parties, such as BidSwitch customers. Again, Colossus provides no reference to which Document Requests seek such information.

The Subpoenas seek communications between the Non-Parties and Colossus/DRCT relating to ID mismatches; communications between BidSwitch and Colossus/DRCT, and between BidSwitch and its customers, regarding compliance with BidSwitch Rules; communications between BidSwitch and its customers relating to requests to pause or restrict Colossus bid requests; documents relating to Adalytics' Report; data compiled by Basis; and BidSwitch's Terms of Supply Partners with Colossus. How any of these requests would capture information about how Colossus' technology works, its customer lists, its marketing and strategy information, or information about its product design is not clear. And Colossus makes no attempt to explain it – nor does Colossus explain why these materials (which are commonly sought in litigation) could not be produced pursuant to a protective order.

### 3. Colossus Makes only Conclusory – or False – Assertions

As with its unsupported and conclusory claim that the Subpoenas are "unduly burdensome," Colossus provides similarly insufficient support for its assertion that the Subpoenas should be quashed because they seek confidential and commercially sensitive information. Virtually every sentence in Section B of the Memo is unsupported, contradicts another portion of the motion, or is simply false.

Confidential commercial information under Rule 45(d)(3)(B)(i) "has been defined as important proprietary information that provides the business entity with financial or competitive advantage when it is kept secret and results in competitive harm when it is released to the public." *Lyman v. Greyhound Lines, Inc.*, No. 2:20-CV-01812-DCN, 2021 WL 3811298, at *5 (D.S.C. Aug. 26, 2021) (quotation omitted). And to establish good cause exists to issue a protective order or quash or modify the subpoena, the moving party must show that its disclosure would cause an "identifiable, significant harm." *Id*. Colossus "may not rely upon stereotyped and conclusory statements, but must present a particular and specific demonstration of fact as to why a protective order should issue." *Id.* (quoting *Baron Fin. Corp. v. Natanzon*, 240 F.R.D. 200, 202 (D. Md. 2006)). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not support a good cause showing." *Id.* (quotation omitted). Instead, Colossus must show that disclosure would cause significant competitive and financial harm through "specific demonstrations of fact, supported where possible by affidavits and concrete examples rather than broad, conclusory allegations of potential harm." *Deford v. Schmid Prod. Co.*, 120 F.R.D. 648, 653 (D. Md. 1987).

Notably, Colossus does not even attempt to specify what information sought – among the requested communications with and between third-parties and the internal data and analyses of Basis and Colossus – would constitute "confidential and competitively sensitive" information of

Colossus or how production of that particular information would cause significant harm when it is already in the possession of other entities. Instead, Colossus resorts to wild and unsupported accusations that impugn Adalytics' general business and ethics. Colossus states that "Adalytics has a track record of publishing false reports in order to incite controversy and, in turn, draw clients to its ad transparency services. Simply put, any business's confidential information is at risk in Adalytics' hands." Memo, at 8. But Colossus provides not even one example from this purported "track record." Nor does Colossus provide even one example, much less any evidence, of Adalytics improperly using or publishing any company's "confidential information." More importantly, Colossus does not explain how "publishing false reports" – which, to be clear, Adalytics has not done – has anything to do with handling confidential and commercially sensitive material.[9]

Colossus' wandering argument shifts gears to assert that it is "willing to produce relevant commercially sensitive information to Adalytics as needed, pursuant an ironclad protective order, but Colossus vehemently objects to its commercially sensitive information being collected and shared by third-parties who may necessarily be less invested in the security of that information that Colossus is." *Id.* at 8-9. First, as explained *supra*, Colossus' claims regarding its willingness to produce information pursuant to a protective order is belied by its more than seven-week delay in engaging with the draft protective order provided by Adalytics or any of Adalytics' questions

9 Colossus suggests these claims are sufficient because the court in *Richards v. Octane Environmental, LLC*, granted a motion to quash a subpoena seeking "a broad array of financial and organizational documents from the subpoenaing party's direct competitor." Memo, at 9-10 (citing No. 1:18-cv-158, U.S. Dist. LEXIS 263228 (N.D. W.Va. Mar. 12, 2020)). But even by Colossus's own description, the parties are not competitors. *See id.* at 1. Adalytics is not an SSP and does not sell, buy, or otherwise enter into transactions for ad inventory. Moreover, *Richards* considered the heightened standard warranted to protect the confidentiality of a ***third-party's*** information, whereas here Colossus seeks to use its own confidentiality as a shield from production of documents in a case it commenced. *See* U.S. Dist. LEXIS 263228, at *7-8.

regarding Colossus's code and electronic data.[10] Second, Colossus also appears to be worried about how Basis and BidSwitch will handle its purported commercially sensitive information. And, finally, the protective order proposed by Adalytics would apply to non-parties and, therefore, address these concerns.

Colossus later returns to its disparaging remarks about Adalytics, claiming (in addition to the purported "track record" referenced above) that Adalytics "has a history of using incomplete and inaccurate data points to start a firestorm at the expense of others, which Colossus has learned firsthand." Memo, at 10. Of course, there are no examples from this purported "history," nor is there any explanation why "ask[ing] a third party to review and produce Colossus's confidential information is unnecessarily risky." *Id.* Colossus continues with the incredible statement that "[a] protective order would not assuage Colossus's concerns, particularly when Adalytics has shown no need for this information and no effort to obtain it from Colossus directly." *Id.* First, the statement contradicts Colossus' claim, less than two pages earlier, that it ***would produce*** what Colossus claims to be "plainly duplicative" commercially sensitive information "pursuant to an ironclad protective order." *Id.* at 7-8. Second, if Adalytics has shown "no effort" to obtain the information it seeks in the Subpoenas "from Colossus directly," Colossus cannot also argue that the Subpoena requests are duplicative of the discovery Adalytics served on it. As for the need for the discovery, its relevance is discussed, *infra*.

The unsupported and spurious attacks continue, as Colossus claims that "[w]here, as here, the subpoena seeks confidential information and the subpoenaing party's behavior has 'not inspired confidence' in the security of one's confidential commercial information, quashing the

---

10 Indeed, Colossus sat on the protective order for nearly two months, during which time its discovery requests were pending. *See supra* at 7.

non-party subpoena is the preferred course of action." *Id.* at 10 (internal citations omitted). Again, Colossus provides no explanation for how Adalytics has "not inspired confidence" in the security of Colossus' confidential information, nor could it.[11] Colossus has not, and cannot, point to any of its confidential information that Adalytics has in its possession – let alone that Adalytics has mishandled. Presumably, Colossus is referring to the Report, but such was ***based entirely upon publicly available information*** – and Adalytics has noted that anyone could check its work by relying on the same data. Franaszek Decl. Ex. A (Report), at 30 (citing sources).

### C. The Subpoenas Target Information Directly Relevant to Adalytics' Defenses

Of all the arguments Colossus presents for why the Subpoenas should be quashed, its suggestion that the Document Requests seek irrelevant information is perhaps the most outlandish. The requests seek documents that go to the core of this dispute and will inform Adalytics' defenses.

Preliminarily, "[t]he concept of relevancy is broadly construed at the discovery stage of an action, and discovery rules are to be accorded liberal treatment." *Chubb Integrated Sys. Ltd. v. Natl. Bank of Washington*, 103 F.R.D. 52, 59 (D.D.C. 1984); *see also In re Denture Cream Prods. Liab. Litig*, 292 F.R.D. 120, 123 (D.D.C. 2013) ("[A] request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the claim or defense of any party.") (cleaned up). The construction of relevancy is even broader in situations, like here, where a court is handling a discrete discovery issue (while the underlying litigation

---

11 Neither *Diamond Servs. Mgmt. Co. v. Knobb*, 339 F.R.D. 334 (D.D.C. 2021), nor *Insulate America v. Masco Corp.* 227 F.R.D. 427 (W.D.N.C. 2005), support Colossus's contentions. Each of the two cases concerned the confidentiality of the third-party subpoena recipient, not a party, and in each case the subpoena recipients were direct competitors to the parties. And in *Insulate America*, the subpoenaed party provided an affidavit explaining exactly how the information was confidential and the specific risks of producing that information to plaintiffs and defendants, which were both direct competitors, and counsel for one plaintiff had "repeatedly threatened to challenge" the application of the existing protective order. *See* 227 F.R.D. at 433. None of those facts apply in the present case.

proceeds in a separate court). "[A] district court whose only connection with a case is supervision of discovery ancillary to an action in another district should be especially hesitant to pass judgment on what constitutes relevant evidence thereunder." *Westernbank P.R. v. Kachkar*, No. M8-85-X3 (Part I), 2009 WL 856392, at *4 (S.D.N.Y. Mar. 26, 2009) (internal quotations and citations omitted). "[W]here relevance is in doubt, the district court is to be permissive." *Id. See also Darling v. Girard*, No. 15-mc-499, 2015 WL 13898434, at *5 (D.D.C. July 20, 2015) ("In making relevancy assessments, a court with jurisdiction over a discovery dispute for an action pending in a different district generally has limited exposure to and understanding of the primary action[] and should be wary of unduly restricting the scope of discovery.") (cleaned up).

Here, Adalytics' targeted Subpoena requests center around Adalytics' defenses and the key issues in this case, including whether the statements in Adalytics' Report are true; whether Colossus in fact had issues with mismatching user IDs; and whether any suspensions by The Trade Desk or BidSwitch occurred as a result of Colossus' performance rather than the Report, as Colossus alleges. *See, e.g.*, ECF No. 9, Complaint, at 8 ("The foregoing statements and conclusions of the post are false and misleading … it is not possible for Colossus SSP to mis-declare a user's TDID. . ."), 12-13 (alleging Adalytics' Report caused "direct financial harm" including BidSwitch's decision to suspend Colossus). Adalytics seeks communications that BidSwitch and Basis have had on this very topic, documents they have compiled on this subject, as well as documents relating specifically to the Report.[12]

---

12 Furthermore, and notably, in the wake of Colossus' filing of the Action, Ryan Damon, the general counsel for Criteo (of which BidSwitch is a wholly owned subsidiary), essentially invited this discovery, telling AdExchanger that "[a]ny claims or implications by Colossus SSP that BidSwitch is to blame for Colossus SSP's manipulation of the content of bid requests are untrue and we encourage all parties to investigate further into the merits of any such statements before publishing untrue statements." *See* Franaszek Decl., Ex. B (AdExchanger article).

Finally, and notably, Colossus ***itself*** has admitted that BidSwitch is in possession of relevant, discoverable information. In response to Interrogatory No. 1 from Adalytics ("Identify all persons who are likely to have personal knowledge, emails, documents, records, data, logfiles, or information related to any factual allegations in the Complaint and state the subject matter of the information possessed by each such person"), Colossus included in its answer: "Representatives of BidSwitch (a subsidiary of Criteo) are likely to have knowledge concerning the intermediary relationship between Colossus and demand-side platforms such as The Trade Desk, and the user ID matching process that is at the center of Adalytics' false and defamatory Report." Ex. 9, at 5. Given this admission, Adalytics' discovery requests to BidSwitch are unquestionably relevant.

**D. Colossus' Request for Sanctions Is Baseless**

Colossus tops off its entirely meritless Motion to Quash with a request for sanctions. *See* Memo, at 8 (requesting Court "award appropriate sanctions" and citing Fed. R. Civ. P. 45(d)(1) and *People for the Ethical Treatment of Animals, Inc. v. Vital Farms, Inc.*, No. 2:22-mc-24-EWH-RJK, 2023 WL 5506028 (E.D. Va. Aug. 14, 2023) (hereinafter, *PETA*)).

Colossus' reference to Fed. R. Civ. P. 45(d)(1) is misplaced. This section governs sanctions for failure to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena," and its reference to an appropriate sanction which may include "lost earnings and reasonable attorney's fees" relates to those of ***the party bearing the undue burden***. That would be Basis or BidSwitch, not Colossus, which, as explained *supra*, does not even have standing to bring this motion. Colossus misplaces its reliance on *PETA*, which involves a motion to quash third-party subpoena brought by the third party served with the subpoena. In *PETA*, the court upheld the magistrate judge's award of sanctions where the third parties served with the subpoenas received overbroad and unduly burdensome subpoenas and the defendants who served them

"failed to establish the need and relevance for any of the documents or testimony it demanded." 2023 WL 5506028, at *5.

Furthermore, even if Colossus could seek Rule 45 sanctions here, their attempt would fail. Factors for Rule 45 sanctions include: "relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." *In re Mod. Plastics Corp.*, 890 F.3d 244, 251 (6th Cir. 2018). The "reasonable steps to avoid" imposing such a burden, as required by Rule 45 can be demonstrated by evidence of conferring with the subpoenaed parties, "engaging in good faith negotiations to resolve a conflict over its subpoena and to avoid imposing an undue burden." *In re Am. Kidney Fund, Inc.*, No. TDC-17-1787, 2019 WL 1894248, at *6 (D. Md. Apr. 29, 2019); *see also Goldberg v. Amgen, Inc.*, 123 F. Supp.3d 9, 23 (D.D.C. 2015) (finding party complied with duty to avoid undue burden where it attempted to resolve a matter in good faith for several weeks, "stated from the outset that it would not be seeking confidential source information," and attempted to narrow the issues but ultimately to no avail; and noting that there was "nothing on the record to suggest that [the party] issued the subpoena in bad faith or for an improper purpose"). Here, as explained *supra*, counsel for Adalytics was in touch with counsel for both Non-Parties before Colossus raised this motion to quash and has promised to work in good faith to ensure compliance with the subpoenas will not be burdensome.

Furthermore, this Court has found "undue burden" to be "'limited to harms inflicted by complying with the subpoena' and 'not to the adjudication of related follow-on issues, such as whether the subpoenaed information is potentially protected by a privilege.'" *Goldberg v. Amgen, Inc.*, 123 F. Supp.3d 9, 23 (D.D.C. 2015) (citing *Mount Hope Church v. Bash Back!*, 705 F.3d 418,

428 (9th Cir. 2012) (reversing sanctions imposed where third-party quashed subpoena on First Amendment privilege grounds)).

## CONCLUSION

Each of the three arguments upon which Colossus bases its Motion to Quash is flawed and does not provide grounds for the relief Colossus seeks. Colossus lacks standing to argue about any (nonexistent) undue burden; a protective order will take care of confidentiality concerns; and the documents sought are not only relevant but critical to Adalytics' defense in this matter.

WHEREFORE, for the foregoing reasons, Defendant Adalytics Research, LLC, respectfully requests the Court deny the Motion to Quash Non-Party Subpoenas to BidSwitch, Inc. and Basis Global Technologies, Inc., or in the Alternative, for Protective order, and grant such other and further relief as the Court deems just and proper.

Dated: July 1, 2026

Respectfully submitted,

**HUGHES HUBBARD & REED LLP**

By: */s/ Koushik Bhattacharya*

Koushik Bhattacharya (D.C. Bar. No. 1006901)
Hughes Hubbard & Reed LLP
1775 I Street, N.W., Sixth Floor
Washington, DC 20006-2401
Tel: (202) 721-4600
Facsimile: (202) 721-4646
Email: koushik.bhattacharya@hugheshubbard.com

*Counsel for Defendant Adalytics Research, LLC*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 1st day of July, 2026, a copy of the foregoing was served on all counsel of record via CM/ECF.

*/s/ Koushik Bhattacharya*
Koushik Bhattacharya