IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| COLOSSUS MEDIA, LLC | : | |
| v. | : | Civil Action No. DKC 24-1402 |
| ADALYTICS RESEARCH, LLC | : | |

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this false advertising and defamation case is the motion to compel filed by Defendant Adalytics Research, LLC ("Adalytics" or "Defendant"), (ECF Nos. 68-1; 68-2); and the parties' letter brief regarding their proposed confidentiality protective order, (ECF No. 69). The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion will be granted in part and denied in part, and a confidentiality protective order that incorporates the court's findings below will be entered.

**I. Background**

The facts giving rise to this dispute between Adalytics and Plaintiff Colossus Media, LLC ("Colossus" or "Plaintiff") are set forth in previous opinions. (ECF Nos. 24; 44; 66).

**II. Motion to Compel**

Adalytics's Local Rule 104.7 certificate identifies the following issues requiring court resolution:

- A dispute remains as to the scope of relevant discovery generally applicable to Adalytics' discovery requests, as set forth in Section B(1) of Adalytics' Memorandum of Points and Authorities in Support of Its Motion to Compel; Section I of Colossus's Memorandum of Points and Authorities in Opposition to Adalytics' Motion to Compel; and Section A of Adalytics' Reply Memorandum of Points and Authorities in Support of Its Motion to Compel;

- A dispute remains regarding Colossus's responses to Document Request Nos. 2, 3, 9, 10, 12,[1] 13, 14, 15, and 19;

- A dispute remains regarding Colossus's response to Interrogatory No. 11; and

- A dispute remains regarding Colossus's failure to produce certain responsive documents.

(ECF No. 68, at 1-2).

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed.R.Civ.P. 26(b)(1). Pursuant to Fed.R.Civ.P. 33, a party may serve interrogatories on

[1] Adalytics's opening brief did not address Document Request No. 12 on its own beyond citing it in relation to Colossus's assertion of potential privileges. (ECF No. 68-2, at 6). And Document Request No. 12 is not specifically mentioned in either Colossus's opposition or Adalytics's reply. However, Adalytics stated in its reply that it "agrees to defer disputing Colossus's withholding of documents and information on the basis of privilege until it receives Colossus's privilege log." (ECF No. 68-14, at 3 n.2).

the other party into any matter that may be inquired into under Rule 26(b). Under Fed.R.Civ.P. 34, a party may serve a request for production of designated documents or electronically stored information, described with reasonable particularity, that are within Rule 26(b)’s scope and in the responding party’s possession, custody, or control. If a party is dissatisfied with another party’s response, the party may proceed to invoke the motion to compel process under Fed.R.Civ.P. 37(a). Under Local Rule 104.8.a, the memorandum in support of a motion to compel “shall set forth, as to each response to which the motion is directed, the discovery request, the response thereto, and the asserted basis for the insufficiency of the response.” The party seeking discovery bears the initial burden of establishing its relevancy and proportionality, then the burden shifts to the party resisting discovery to demonstrate why the discovery should not be permitted. *Courthouse News Serv. v. Harris*, No. 22-cv-548-ELH, 2022 WL 3577255, at *3 (D.Md. Aug. 18, 2022) (citations omitted). The party resisting discovery must

> clarify and explain precisely why its objections are proper given the broad and liberal construction of the federal discovery rules. *DIRECTV, Inc. v. Trone*, 209 F.R.D. 455, 458 (C.D.Cal. 2002); [*In re Aircrash Disaster Near Roselawn, Ind.*], 172 F.R.D. 295, 307 (N.D.Ill. 1997); [*Obiajulu v. City of Rochester, Dep’t of L.*], 166 F.R.D. 293, 295 (W.D.N.Y. 1996); *Nestle Foods Corp. v. Aetna Cas. and Sur. Co.*, 135 F.R.D. 101 (D.N.J.

> 1990). This includes, of course, where the resisting party asserts that the discovery is irrelevant. *Chavez v. DaimlerChrysler Corp.*, 206 F.R.D. 615, 619 (S.D.Ind. 2002); [*Nat'l Credit Union Admin. v. First Union Cap. Mkts. Corp.*], 189 F.R.D. 158 (D.Md. 1999); [*Schaap v. Exec. Indus., Inc.*], 130 F.R.D. 384, 386 (N.D.Ill. 1990); [*Spell v. McDaniel*], 591 F.Supp. 1090, 1114 (E.D.N.C. 1984).

*United Oil Co. v. Parts Assocs., Inc.*, 227 F.R.D. 404, 411 (D.Md. 2005).

"Perhaps the single most important word in Rule 26(b)(1) is 'relevant,' for it is only relevant matter that may be the subject of discovery.[]" 8 Wright & Miller's Federal Practice & Procedure § 2008 (3d ed. 2026) (footnote omitted). Even if information is relevant, however, a court must consider the proportionality factors set forth in Fed.R.Civ.P. 26(b)(1): "[1] the importance of the issues at stake in the action, [2] the amount in controversy, [3] the parties' relative access to relevant information, [4] the parties' resources, [5] the importance of the discovery in resolving the issues, and [6] whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed.R.Civ.P. 26(b)(1). Because "[f]airness in the disposition of civil litigation is achieved when the parties to the litigation have knowledge of the relevant facts, . . . the discovery rules are given 'a broad and liberal treatment.'" *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Murray Sheet Metal Co.*, 967 F.2d 980, 983

(4th Cir. 1992) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)). Finally, "district courts 'have broad discretion in [their] resolution of discovery problems that arise in cases pending before [them].'" *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 402 (4th Cir. 2003) (alteration in original) (quoting *Mylan Lab'ys, Inc. v. Akzo, N.V.*, 2 F.3d 56, 64 (4th Cir. 1993)).

**A. Scope of Relevant Discovery**

The parties differ significantly in their conceptions of the appropriate timeframe for Adalytics's discovery requests to Colossus. Adalytics argues that the timeframe of relevant discovery ranges from April 1, 2022 through the present. It asserts that the "majority" of its discovery requests seek information from April 1, 2022 through the present day, save three discovery requests: Document Request Nos. 2, 13, and 15. (ECF Nos. 68-2, at 8; 68-14, at 8 n.4). Adalytics contends that the at-issue report "itself concerned data from as early as 2022." (ECF No. 68-2, at 9). The date range for Interrogatory No. 11 is not specified but is seemingly impliedly pinned to the timing of the complaint.

Colossus, on the other hand, asserts that "Adalytics' discovery should be generally limited to the scope" of its allegedly defamatory report, (ECF No. 68-10, at 10), which Colossus

contends spans "a single month of transactions between Colossus and a single DSP, The Trade Desk," (*id.* at 9). Put another way, Colossus appears to argue that Adalytics's discovery should only concern its April 2024 transactions with The Trade Desk.

While Adalytics has made passing mention of the data relied upon in its report deriving from as early as 2022, it is not clear what the significance of April 1, 2022 is—nor why Adalytics needs discovery from Colossus that is broader than the time range sought in the third-party subpoenas. (*See* ECF Nos. 66, at 11 (finding that the third-party requests covered about a year and a couple months at most); 59-3, at 11 (Basis subpoena, defining date range to be November 1, 2023, to December 31, 2024); 59-4, at 11 (BidSwitch subpoena, defining date range to be May 5, 2024, to August 31, 2024), 12 (BidSwitch subpoena, Request for Production No. 5 defining date range to be from September 30, 2023, to August 31, 2024)). Still, Adalytics argues that "[p]ublic statements from Colossus's customers confirmed that they independently observed that Colossus mismatched IDs, and had raised the exact issue to Colossus, more than a year prior to the publication of Adalytics' Report." (ECF No. 68-14, at 8). Adalytics's discovery requests will be limited to September 30, 2023 (the earliest date in a third-party subpoena), through December 31, 2024 (the latest date in a third-party subpoena). After receiving this information,

should Adalytics believe that additional discovery from Colossus beyond this date range is relevant and important, the issue may be addressed again if an appropriate motion is filed.

The parties also are far apart as to the entities of concern here. Adalytics's discovery requests use broad language that sweep in a host of entities—some that aren't even contemplated by name. By contrast, Colossus insists that the only entity of concern is The Trade Desk. Given this gulf, for now, discovery will be constrained to the following entities—unless otherwise described below: Colossus, Direct Digital Holdings, Inc. ("DCRT"), The Trade Desk, BidSwitch, and Basis.

Unless otherwise stated, all rulings regarding each of the disputed discovery requests apply only to (1) the relevant timeframe of September 30, 2023, through December 31, 2024 ("relevant timeframe"); and (2) the relevant entities: Colossus, DRCT, The Trade Desk, BidSwitch, and Basis ("relevant entities").

**B. Disputed Document Requests (Nos. 2, 3, 9, 10, 13, 14, 15 & 19)**

**Document Request No. 2.**[2] This document request concerns access to "[h]istorical or archived copies" of Colossus's "internal

[2] Document Request No. 2: "Historical or archived copies of your software's internal source code for cookie syncing, cookie matching, user ID resolution, user ID bridging, generating digital ad auction bid requests, and submitting those bid requests to BidSwitch or DSP partners, from April 1, 2022 through October 1, 2024." (ECF No. 68-4, at 5).

source code for cookie syncing, cookie matching, user ID resolution, user ID bridging, generating digital ad auction bid requests, and submitting those bid requests to BidSwitch or DSP partners[.]" (ECF No. 68-4, at 5). Colossus objects on relevance, vagueness, and burden grounds; it also objects to request to the extent it seeks "highly confidential, proprietary, and commercially sensitive information." (*Id.* at 5, 6). Source code is "often a company's most sensitive and most valuable property." *Drone Techs., Inc. v. Parrot S.A.*, 838 F.3d 1283, 1300 n.13 (Fed. Cir. 2016). Indeed, in its response to this request, Colossus asserts that its source code "constitutes the core" of its "competitive business." (ECF No. 68-4, at 50). Furthermore, "courts have found that source code presents a 'self-evident' risk of harm from disclosure." *Univ. of Va. Pat. Found. v. Gen. Elec. Co.*, No. 14-cv-51, 2015 WL 7431412, at *3 (W.D.Va. Nov. 20, 2015) (quoting *Telebuyer, LLC v. Amazon.com, Inc.*, No. 13-cv-1677, 2014 WL 5804334, at *2 (W.D.Wash. July 7, 2014)), *objections overruled*, No. 14-cv-00051, 2016 WL 379813 (W.D.Va. Jan. 29, 2016). Adalytics asserts that "whether this code can be run to generate mismatched IDs bears direct relevance to Colossus's claim that Adalytics' Report's observation of ID mismatching was false because it was 'not possible' for Colossus's SSP to do so." (ECF No. 68-14, at 13). At this early stage in the litigation, Adalytics has not

sufficiently established proportionality to justify discovery into this sensitive information. Adalytics's motion will be denied as to Document Request No. 2.

**Document Request Nos. 3**[3] **and 19.**[4] According to Adalytics's reply brief, these two document requests now "largely overlap[.]" (*Id.* at 14). Even as narrowed, Colossus argues that fulfilling its discovery obligations under Document Request No. 3 would be "massively burdensome to Colossus, and goes far beyond the precise dispute at issue in this case." (ECF No. 68-10, at 22). Colossus further states that it discusses the items listed in Document Request No. 3 with "its customers, intermediaries, and DSPs every single day, in relation to *billions* of transactions across more than a dozen DSPs." (*Id.*; *see* ECF No. 68-12 ¶ 7 (Affidavit of Keith Smith)). Adalytics asserts that it "neither seek[s] records of the transactions nor documents and communications relating to

[3] Document Request No. 3 (as narrowed): "All communications between Colossus and any entity or individual in the digital advertising industry regarding problems or concerns with Colossus' bid requests, regarding inconsistencies or mismatches in user IDs, cookie-syncs, partner IDs, 'puids,' browser cookies, dsp_cookie_id (DSP Cookie ID), buyeruid(s), or auction types." (ECF No. 68-10, at 22).

[4] Document Request No. 19: "All communications between and documents exchanged by Colossus and The Trade Desk, BidSwitch, Google, or Basis DSP relating to auction types (1st and 2nd price auctions), buyerUIDs, user IDs, or cookie misidentification, mis-representation, mis-declaration, or mismatches." (ECF No. 68-4, at 16).

every transaction." (ECF No. 68-14, at 11). Instead, so Adalytics argues, it seeks "communications concerning the exact ID mismatching phenomenon identified" in its allegedly defamatory report. Adalytics's argument is persuasive, and its motion will be granted as to Document Request No. 3 as modified by the relevant timeframe and the relevant entities. Adalytics's motion as to Document Request No. 19 will be denied because it concedes that it "largely overlaps" with Document Request No. 3, (*id.* at 14), and in recognition of the proportionality principles animating the scope of permissible discovery under Rule 26.

**Document Request No. 9.**[5] Adalytics's motion as to Document Request No. 9 will likewise be granted as modified by the relevant timeframe and the relevant entities. Colossus objects to this request on several grounds, including scope, burden, and its timeframe. (ECF No. 68-4, at 10). But, Colossus's lament about a potential "fishing expedition" at great expense into issues that

[5] Document Request No. 9: "All documents and communications between you and any partner, vendor, customer, or supplier (including but not limited to BidSwitch, Basis DSP, Confiant, HUMAN Security, Oracle Moat, Google, and The Trade Desk) regarding Colossus' submission of ad inventory or ad auction bid requests that were not conformant with the partner's or DSP's policies or rules, Media Rating Council ("MRC") standards, or Interactive Advertising Board ("IAB") standards. Non-conforming (or "low quality" inventory) includes invalid traffic, failures to use the partner or DSP-prescribed pricing mechanism (second price vs. first price auctions) and bids that do not faithfully or accurately submit a user's actual buyer user ID stored in the user's browser." (ECF No. 68-4, at 9-10).

"have nothing to do with this case" is insubstantial. (ECF No. 68-10, at 23). As Adalytics responds, the request is "relevant to determining the degree to which Adalytics' Report was the cause of DSPs and partners' decision to suspend business with Colossus as well as to establish Colossus's industry reputation." (ECF No. 68-14, at 14). This discovery request supports Adalytics's seventh affirmative defense that The Trade Desk and BidSwitch did not make "any decision on whether to suspend [Colossus] for any reason other than those firms' long-term experiences with [Colossus] and the firms' own comprehensive internal analyses as to whether [Colossus's] advertising transactions were consistent with those firms' policies and expectations." (ECF No. 28, at 10-11). Moreover, Colossus's relevancy objection is misplaced in light of its seemingly novel argument that "BidSwitch, Trade Desk[,] and Basis should have known the Adalytics' claim was false but nevertheless used the Adalytics' Post as a pretext to cut off Colossus"—and that "[a]ll of these parties are liable" for its losses. (ECF No. 68-10, at 11 n.2, 16 n.3).

**Document Request No. 10.**[6] Taking Colossus at its word that it does not "maintain a repository of 'complaints[,]'" the request

[6] Document Request No. 10 (as narrowed): "Documents and communications with any customer, advertiser, demand side platform, media buyer, or media agency regarding complaints about any bid requests submitted by Colossus." (ECF No. 68-10, at 23).

appears to sweep in any conceivable type of complaint—not just of the sort at the heart of this dispute. (ECF No. 68-10, at 23-24). This request was narrowed as reflected in Colossus's opposition brief, so its objections to the originally-worded request do not control. (*See id.* at 23; ECF No. 68-4, at 10-11). Still, its objections to the originally-worded request remain persuasive—the request continues to seek materials "discussing any 'complaint' by an extraordinarily wide range of third parties, without limitation as to subject matter." (ECF No. 68-4, at 11). Adalytics implies that it may have previously offered to narrow the scope of this request and other requests "based on Colossus ascertaining the number of documents at issue concerning the customer complaints" but Adalytics argues that Colossus did not provide that information. (ECF No. 68-14, at 12). Nonetheless, just as with Document Request No. 9, Adalytics's assertion that this request is "relevant to determining the degree to which Adalytics' Report was the cause of DSPs and partners' decisions to suspend business with Colossus as well as to establish Colossus' industry reputation," (ECF No. 68-14, at 14)—which aligns with its seventh affirmative defense—is convincing. Document Request No. 10 will be granted subject to the (1) relevant timeframe and (2) the relevant entities modifications, as well as (3) a constrained scope: "complaints"

are to be restricted to complaints about user id and cookie mismatches only.

**Document Request Nos. 13,**[7] **14,**[8] **and 15.**[9] These three requests each implicate Google and responses to all will be required; the relevant entity modifications described above will not be imposed as to these document requests. Colossus objects to each of the requests as outside the scope of the allegedly defamatory report and unrelated to the claims or defenses in this case. (ECF No. 64-4, at 13, 14). Regarding Document Request No. 15, Colossus argues, "[t]here is no reasonable basis for seeking broad discovery into . . . payment issues." (ECF No. 68-10, at 25). However, Adalytics's discussion about the exhibits it attached to its reply,

---

[7] Document Request No. 13: "All internal communications – including but not limited communications via email, WhatsApp, Microsoft Teams, Slack, iMessage, SMS, text, Signal, or any other text message application/functionality – and all meeting notes and related documents among employees of Colossus and/or DRCT, referencing non-payment, short payment, refusal to pay, claw backs, refunds, ad inventory policy violations, user ID mismatches, cookie mismatches, user ID bridging, cookie table modifications, and invalid traffic from Google from August 1, 2023 through March 31, 2024." (ECF No. 68-4, at 12-13).

[8] Document Request No. 14: "All communications between you and Google or BidSwitch relating to ad inventory policy violations, refunds, claw backs, short payments, non-payments, user ID mismatches, cookie mismatches, and invalid traffic from Google." (ECF No. 68-4, at 13).

[9] Document Request No. 15: "All documents and communications relating to Google withholding approximately $9 million in payment for ad transactions related to Colossus during the fourth quarter of 2023, or first quarter of 2024." (ECF No. 68-4, at 14).

(ECF No. 68-14, at 8-10), as well as the exhibits themselves, make a colorable relevancy argument for not only Document Request No. 15, but Document Request Nos. 13 and 14, too, (*id.* at 15 ("[T]hese documents are relevant to falsity because they establish whether or not Google's DSP and advertising customers observed the same ID mismatching phenomenon described in Adalytics' Report, which Colossus claims to be impossible.")). As for Document Request No. 13, specifically, Colossus lodges an objection to the extent that it "improperly seeks to impose discovery obligations on DRCT, a separate entity not a party to this action." (ECF No. 68-4, at 13). Accordingly, Adalytics's motion as to Document Request Nos. 13, 14, and 15 will be granted subject to the timeframe limitations discussed above—along with the following three adjustments. First, Document Request No. 13 will be narrowed to include only Colossus employees' communications. Second, the timeframe for this request will be September 30, 2023, through March 31, 2024, to match both the start of the modified relevant timeframe and the end date listed in the request itself. Third, to the extent that non-party BidSwitch has already provided discovery coextensive with Document Request No. 14, Colossus need not duplicate efforts in recognition of the proportionality principles underpinning the scope of permissible discovery under Rule 26.

**C. Interrogatory No. 11**[10]

Colossus objects to this interrogatory as overly broad, unduly burdensome, and premature, as well as on privilege grounds and to the extent that the requested information is already in Adalytics's possession or more readily obtained from it. (ECF No. 68-3, at 11-12). Colossus argues that this interrogatory is an impermissible contention interrogatory, (ECF No. 68-10, at 27), but Adalytics's arguments distinguishing the case Colossus relies on are persuasive. (*See* ECF No. 68-14, at 15-16). "'[C]ontention interrogatories' are overly broad and unduly burdensome on their face if they seek 'all facts' supporting a claim or defense, such that the answering party is required to provide a narrative account of its case." *Mach. Sols., Inc. v. Doosan Infracore Am. Corp.*, 323 F.R.D. 522, 528 (D.S.C. 2018) (citation omitted). Interrogatory No. 11 is distinguishable as it does not charge Colossus with providing what amounts to "a narrative account of its case." Instead, it seeks support for phrases in Colossus's complaint that it has presumably known since it commenced this action. (*See* ECF Nos. 68-5, at 10; 68-14, at 15). Accordingly, Adalytics's motion as to Interrogatory No. 11 will be granted;

[10] Interrogatory No. 11: "State all facts and evidence in your possession to support the contention in Paragraph 31 of your Complaint that Adalytics 'worked to amplify' the 'false statements' described in the Complaint." (ECF No. 68-3, at 11).

Colossus is free to amend its answer to this interrogatory as discovery proceeds. The relevant timeframe and relevant entities modifications do not apply to Interrogatory No. 11 because the request is limited by its own terms.

### D. Colossus's Alleged Failure to Produce Certain Responsive Documents

This item on Adalytics's Local Rule 104.7 certificate is not squarely addressed in the briefing and it is unclear to what "certain responsive documents" the certificate refers. (ECF No. 68, at 2). Presuming that this dispute amounts to Adalytics's charge in its reply brief that "Colossus has yet to produce a single document," (ECF No. 68-14, at 3), it is expected that entry of a confidentiality protective order will spur Colossus to begin producing documents. If documents remain outstanding, the court will consider any subsequent discovery motion filed by Adalytics pursuant to Local Rule 104 procedures.

## III. Confidentiality Protective Order[11]

In a joint letter brief filed on September 29, 2026, the parties requested entry of competing versions of a proposed

[11] This section only analyzes the parties' dispute as to who may access "Highly Confidential" and "Highly Confidential – Source Code" information. (ECF No. 69, at 1). The parties' dueling edits to the proposed confidentiality protective order contain additional areas of dispute: (1) who can assert coverage, (ECF Nos. 69-1 ¶ 1; 69-4 ¶ 1); and (2) a potential showing for documents made available for inspection, (ECF Nos. 69-1 ¶ 2(b); 69-4 ¶ 2(b)). Because the source code will not be ordered to be produced, any

confidentiality protective order to govern discovery in this case. (ECF No. 69). Adalytics seeks entry of its own version of the proposed confidentiality protective order, or a hearing to give oral argument on the issues—or, in the alternative, for entry of the standard Stipulated Order Regarding Confidentiality of Discovery Materials in Appendix D of this district's local rules ("Standard Order"). (*Id.* at 4); *see* Local Rule 104.13. Colossus asks that Adalytics's version of the proposed confidentiality protective order be rejected in favor of its own version; it also objects to entry of the Standard Order. (*Id.* at 5, 5 n.4). While the parties "have agreed on a substantial majority" of the confidentiality protective order's proposed terms, they represent that "a dispute" remains as to who may access "Highly Confidential" and "Highly Confidential – Source Code" information. (*Id.* at 1). Upon a close review of the parties' edits to the proposed confidentiality protective order, however, it appears that access to material designated "Confidential" is disputed, too. More specifically, the parties disagree about whether Dr. Krzysztof Franaszek, the founder and president of Adalytics—who Adalytics represents it intends to qualify as a hybrid fact/expert witness—

outstanding disputes as to the "Highly Confidential – Source Code" provision are not discussed. The other disputes are not discussed by the parties and the differences from the Standard Order will be deleted.

may view material designated as “Confidential,” “Highly Confidential,” and “Highly Confidential – Source Code.” The parties also disagree as to whether in-house counsel may view material designated “Highly Confidential” and “Highly Confidential – Source Code.”

The parties, however, appear to agree that a confidentiality protective order is appropriate. (*see* ECF No. 69, at 2).

> [W]hile it is not unusual . . . for the parties to assert that documents sought in discovery contain confidential commercial information or trade secrets, these claims do not remove the documents from the scope of discovery, rather they properly are addressed in a protective order, Rule 26(c)(1)(G) or, as in this case, through a confidentiality order.

*Tobacco Tech., Inc. v. Taiga Int’l*, No. 06-cv-563-CCB, 2008 WL 11363269, at *1 (D.Md. Mar. 17, 2008). Any proposed confidentiality protective order must include the required information listed in Local Rule 104.13.

To determine whether certain people, like in-house counsel or company founders, may have access to highly confidential materials, a court must “‘balance [1] the risk of inadvertent disclosure of trade secrets to competitors against [2] the risk to the other party that protection of these trade secrets will prejudice its ability to prosecute or defend the present action.’” *M-Edge Accessories LLC v. Amazon.com Inc.*, No. 11-cv-3332-MJG, 2013 WL 12241898, at *3 (D.Md. May 14, 2013) (quoting *Layne*

*Christensen Co. v. Purolite Co.*, 271 F.R.D. 240, 249 (D.Kan. 2010)). This determination "turns on" whether the individual seeking access is involved in competitive decisionmaking. *Id*. District courts in this circuit have applied the framework set out in *U.S. Steel* to evaluate whether an individual is involved in competitive decisionmaking. *U.S. Steel Corp. v. United States*, 730 F.2d 1465 (Fed. Cir. 1984); *see, e.g.*, *M-Edge Accessories*, 2013 WL 12241898, at *2, *3 (patent infringement case between direct competitors); *McAirlaids, Inc. v. Kimberly-Clark Corp.*, 299 F.R.D. 498, 499, 500 (W.D.Va. 2014) (patent infringement case between direct competitors); *BioConvergence LLC v. Emergent Biosolutions, Inc.*, No. 21-cv-01959-CCB, 2023 WL 3866411, at *1, *2 (D.Md. June 7, 2023) (alleged misappropriation of confidential information and trade-secret information by former employee of plaintiff who went to work for defendants). Involvement in competitive decisionmaking amounts to "advice and participation in any or all of the [party's] decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor." *M-Edge Accessories*, 2013 WL 12241898, at *3 (alteration in original) (quoting *U.S. Steel*, 730 F.2d at 1468, 1468 n.3).

Colossus, as the party resisting access, bears the "'burden of proving the competitive harm that would befall [it] by virtue

of . . . disclosure to in-house personnel'" or other particular individuals. *BioConvergence*, 2023 WL 3866411, at *2 (alterations in original) (quoting *MPG Ingredients, Inc., v. Mars, Inc.*, 245 F.R.D. 497, 502 (D.Kan. 2007)). In doing so, Colossus is "required to make a 'particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements.'" *Id.* (quoting *MPG Ingredients*, 245 F.R.D. at 502); *see Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n. 16 (1981).

Adalytics, as the party seeking unrestricted access, must "'"establish that disclosure is relevant and necessary to the action."'" *BioConvergence*, 2023 WL 3866411, at *2 (quoting *Layne Christensen Co.*, 271 F.R.D. at 249). "To establish necessity, some courts have considered whether the proposed limitation on disclosure to certain individuals would impair the ability of the party seeking full disclosure to proceed effectively with the litigation." *Id.* (quoting *Layne Christensen Co.*, 271 F.R.D. at 249).

**A. "Highly Confidential – Source Code" Designation**

As discussed above, Adalytics's Document Request No. 2 will be denied. Because source code will not be produced, the proposed confidentiality designation "Highly Confidential – Source Code" in the parties' proposed confidentiality protective order is unnecessary at this time. If the need for this confidentiality

designation later arises, the parties may move for an amendment to the confidentiality protective order.

**B. Dr. Franaszek's Access**

Adalytics has demonstrated that denying Dr. Franaszek's access to the highly confidential information "'would impair'" its ability to "'proceed effectively with the litigation.'" *Id.* (citation omitted). Adalytics argues that Dr. Franaszek is "uniquely" and "singularly" qualified to review the highly confidential information. (ECF No. 69, at 2). It further states that it "would be prejudiced by Colossus's withholding of large swaths of technical discovery material from a key witness," (*Id.*), and that as Adalytics's "sole member" he is the "lone person" within Adalytics who "has the knowledge to evaluate . . . documents concerning other complex information that will be produced in discovery," (*id.* at 3).

Colossus's showing of the risk of inadvertent disclosure of trade secrets to competitors does not counterbalance Adalytics's showing of relevance and necessity. The competitive decisionmaker inquiry does not favor Colossus because of the absence of a direct competitive relationship between the parties. (*See* ECF No. 66, at 14). Colossus has not provided, and the court has not identified, a case in this district—let alone circuit—where direct competition was not a requirement to prevent someone in a position like Dr.

Franaszek's from accessing highly confidential information in an action like this one. *See, e.g.*, *M-Edge Accessories*, 2013 WL 12241898, at *3 (United States District Court for the District of Maryland case applying competitive decisionmaker analysis where parties are direct competitors); *McAirlaids*, 299 F.R.D. at 500 (same, but United States District Court for the Western District of Virginia case).

Nonetheless, Colossus argues that instead of allowing Dr. Franaszek to view its "proprietary technical information," Adalytics should retain an outside expert because Dr. Franaszek is "not qualified in the least" to analyze its technical information. (ECF No. 69, at 8). Colossus cites *Safe Flight* to support its contention that Dr. Franaszek is not qualified. That court found assertions that the company president was uniquely qualified to review highly confidential information were "speculative" because the company had yet to investigate the availability of outside experts. (*Id.* at 8); *see Safe Flight Instrument Corp. v. Sundstrand Data Control Inc.*, 682 F.Supp. 20, 22 (D.Del. 1988). But that case, like several others cited by Colossus, involved direct competitors and was a patent infringement action.

Finally, the potential competitive harms Colossus additionally points to do not amount to the required "particular and specific demonstration[s] of fact, as distinguished from

stereotyped and conclusory statements." *BioConvergence*, 2023 WL 3866411, at *2 (citations omitted). For example, Colossus asserts that if highly confidential information is disclosed to Dr. Franaszek, harm would come from "[t]he inevitable—even if subconscious—influence" of Dr. Franaszek's knowledge of its highly confidential information "on Adalytics['] future work with Colossus' commercial counterparties." (ECF NO. 69, at 8). This "is, alone, what creates the unacceptable risk of competitive and financial harm," Colossus asserts. (*Id.*). While Colossus also argues that Adalytics's "entire business model depends on analyzing, evaluating, and publicly reporting on the operations of advertising technology companies like Colossus" and "leverage[ing] those insights to create its offerings and sell them back to its customers," (*id.* at 7), Colossus stops short of saying that allowing Dr. Franaszek to access its highly confidential information might result in another report about Colossus like the one at-issue—or offering other potential concrete harms.

Colossus's conclusory statements do not fulfill its burden of proving competitive harm, and the overarching risk-balancing test does not favor preventing Dr. Franaszek from accessing highly confidential information. Accordingly, Dr. Franaszek may be permitted to view documents designated "Highly Confidential," provided he agrees to be bound by the confidentiality protective

order's terms by signing Exhibit A prior to disclosure, as stated in the parties' proposal.[12]

**C. In-House Counsel's Access**

Access to confidential information "should be denied or granted on the basis of each individual counsel's actual activity and relationship with the party represented, without regard to whether a particular counsel is in-house or retained." *U.S. Steel*, 730 F.2d at 1469. In conducting such an assessment, a court should consider "the factual circumstances surrounding each individual counsel's activities, association, and relationship with a party, whether counsel be in-house or retained." *Id.* at 1468.

Information about Adalytics's in-house counsel to this degree of granularity has not been provided. Instead, Adalytics plainly states in a footnote that its in-house counsel is "not a 'competitive decision-maker.'" (ECF No. 69, at 2). Adalytics did not furnish a declaration from its in-house counsel to back up this assertion, and Colossus does not rebut it. Colossus is otherwise virtually silent on Adalytics's in-house counsel's

[12] The parties' competing redlines to the proposed confidentiality protective order show that there is also disagreement as to whether Dr. Franaszek may view materials designated "Confidential." (ECF Nos. 69-1 ¶ 8(d) (Adalytics's version); 69-4 ¶ 8(d) (Colossus's version)). Because of the above finding that Dr. Franaszek may access the more restricted "Highly Confidential" materials, he may also access the less restricted "Confidential" materials.

status as a competitive decisionmaker. Without more, and given the lack of a direct competitive relationship between the parties, in-house counsel may view materials designated as "Highly Confidential" under the proposed confidentiality protective order.

**IV. Conclusion**

For the foregoing reasons, Adalytics's motion to compel will be granted in part and denied in part. A confidentiality protective order will be entered. A separate order will follow.

/s/
DEBORAH K. CHASANOW
United States District Judge