**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| COLOSSUS MEDIA, LLC,<br><br>*Plaintiff,*<br>*v.*<br><br>ADALYTICS RESEARCH, LLC,<br><br>*Defendant.* | Case No. 8:24-CV-01402-DKC |

# PLAINTIFF COLOSSUS MEDIA, LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO RECONSIDER THE COURT'S ORDER ON THE PARTIES' PROTECTIVE ORDER AND DEFENDANT'S MOTION TO COMPEL

# TABLE OF CONTENTS

I. LEGAL STANDARD....................2

II. ARGUMENT....................3

A. The Court Should Reconsider its Ruling Permitting Dr. Franaszek to Access Colossus' Highly Confidential Information.................... 3

1. Adalytics' September 2026 Partnership with BidSwitch Undermines the Two Pillars of the Court's Ruling....................3

2. There is Substantial Risk of Particularized Harm if Dr. Franaszek Receives Access to Colossus' Highly Sensitive Materials....................8

3. The Protective Order Should Permit Colossus to Designate Its Own Information When Produced by Non-Parties....................12

B. The Court Should Reconsider Its Order Compelling Responses to Document Request Nos. 13, 14, and 15. .................... 13

1. The Reply Exhibits Are Not Sufficient to Demonstrate That Google Observed ID-Mismatching....................14

2. Even if Taken as True, the Google Incident is Not Relevant to the Question of Mismatch at The Trade Desk. ....................15

III. CONCLUSION....................18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Canoe Ass'n v. Murphy Farms, Inc.*,
326 F.3d 505 (4th Cir. 2003) ....2

*BioConvergence LLC v. Emergent Biosolutions, Inc.*,
No. 21-cv-01959-CCB, 2023 WL 3866411 (D. Md. June 7, 2023) ....11

*Carlson v. Bos. Sci. Corp.*,
856 F.3d 320 (4th Cir. 2017) ....2

*Clawson v. FedEx Ground Package Sys., Inc.*,
451 F. Supp. 2d 731 (D. Md. 2006) ....14

*Clear Touch Interactive, Inc. v. Ockers Co.*,
171 F.4th 715 (4th Cir. 2026) ....2

*Courthouse News Serv. v. Harris*,
No. 22-cv-548-ELH, 2022 WL 3577255 (D. Md. Aug. 18, 2022) ....15

*M-Edge Accessories LLC v. Amazon.com Inc.*,
No. 11-cv-3332-MJG, 2013 WL 12241898 (D. Md. May 14, 2013) ....3, 5

*McAirlaids, Inc. v. Kimberly-Clark Corp.*,
299 F.R.D. 498 (W.D. Va. 2014) ....5

*Stanislaus Food Prods. Co. v. USS-POSCO Indus.*,
No. 1:09-cv-00560-LJO-BAM, 2012 WL 6160468 (E.D. Cal. Dec. 11, 2012) ....5

*Tomahawk Mfg., Inc. v. Spherical Indus., Inc.*,
344 F.R.D. 468 (D. Nev. 2023) ....5

*U.S. Steel Corp. v. United States*,
730 F.2d 1465 (Fed. Cir. 1984) ....3, 5, 13

*Univ. of Va. Patent Found. v. Gen. Elec. Co.*,
No. 3:14-cv-51, 2015 WL 7431412 (W.D. Va. Nov. 20, 2015) ....11

**Rules**

Fed. R. Civ. P. 26 ....14

Fed. R. Civ. P. 54 ....2

Loc. R. 105.2 ....14

Loc. R. 105.10 ........ 2

**Other Authorities**

BidSwitch, *BidSwitch partners with Adalytics to strengthen media quality for supply partners* (Sept. 9, 2026) ........ 1, 3, 5, 6, 7, 9, 10

Criteo S.A., announcement of acquisition of IPONWEB (Dec. 9, 2021) ........ 1, 5

Criteo S.A., *Criteo Launches First-ever Supply-side Platform Built for Commerce* (June 15, 2023) ........ 1, 5

AdExchanger, *Adalytics Claims Colossus SSP Is Misdeclaring IDs In Its Bid Requests* (May 10, 2024) ........ 6, 10

**PRELIMINARY STATEMENT**

Two rulings in the Court's October 19, 2026 Memorandum Opinion rest on premises that the record, as it now stands, does not support. First, the Court permitted Dr. Krzysztof Franaszek to review Colossus' "Highly Confidential" material because Adalytics and Colossus are not direct competitors and because Colossus had not identified a concrete way in which disclosure to Dr. Franaszek would cause it harm. ECF No. 72 at 21–23. The Court was not told that, on September 9, 2026, Adalytics announced a "data sharing and research partnership" with BidSwitch, Inc., the intermediary through which Colossus' supply reached The Trade Desk, the entity that suspended all Colossus trading on the day the Report was published, and a non-party whose production of Colossus' bid-level data Adalytics has subpoenaed. Ex. A. Through that partnership, Dr. Franaszek's company now "analyze[s] trading and alert[s] clients of activity meriting additional review" for a network of more than 200 demand-side and supply-side platforms. *Id.* BidSwitch's parent, Criteo S.A., also operates a supply-side platform that competes with Colossus. Exs. F, G. Simply put, Dr. Franaszek is working with a direct competitor to Colossus and is admittedly sharing data with that direct competitor. Colossus can expect that any information learned by Dr. Franaszek will be used for its partner (a Colossus competitor) BidSwitch's benefit. This is precisely the commercial use to which Colossus' bid-level data, customer identities, deal terms, and pricing could be put.

Second, the Court compelled responses to three Google-related requests because exhibits Adalytics attached for the first time to its reply made a "colorable" showing that Google "observed the same ID mismatching phenomenon described in Adalytics' Report." ECF No. 72 at 14 (quoting ECF No. 68-14 at 15). Colossus had no opportunity to respond to those exhibits. Had it been able to, it would have shown that the Report concerned a single transaction pathway (Colossus to BidSwitch to The Trade Desk) and no Google transaction; that the "phenomenon" it

described is a mismatch of Trade Desk user IDs, which a different competitor DSP could not observe; that the only characterization Colossus ever received for the Google payment withholding was a generic report that says nothing about user IDs; and that Google's conduct after the events Adalytics points to (expanding, not curtailing, its business through Colossus) is the opposite of what the Report's theory predicts. Colossus respectfully asks the Court to reconsider both rulings.

## I. <u>LEGAL STANDARD</u>

Because the Court's October 19, 2026 Order resolved discovery disputes and did not end the litigation, it is interlocutory and "may be revised at any time before the entry of a judgment." Fed. R. Civ. P. 54(b). A court's power to revisit an interlocutory order under Rule 54(b) is "not subject to the strict standards applicable to motions for reconsideration of a final judgment." *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514–15 (4th Cir. 2003). The Fourth Circuit has explained that revision under Rule 54(b) is appropriate where there is "(1) a subsequent trial produc[ing] substantially different evidence, (2) a change in applicable law, or (3) clear error causing manifest injustice." *Carlson v. Bos. Sci. Corp.*, 856 F.3d 320, 325 (4th Cir. 2017) (quoting *Am. Canoe Ass'n*, 326 F.3d at 515) (internal quotation marks omitted); *see also Clear Touch Interactive, Inc. v. Ockers Co.*, 171 F. 4th 715, 728–29 (4th Cir. 2026). Both the evidence-based and manifest-injustice grounds apply here. Because disclosure of Highly Confidential material to Dr. Franaszek cannot be undone once made, the manifest-injustice ground carries particular weight as to the first ruling. This Motion is timely because it is filed within fourteen days of the Court's October 19, 2026 Order. Loc. R. 105.10.

## II. ARGUMENT

### A. The Court Should Reconsider its Ruling Permitting Dr. Franaszek to Access Colossus' Highly Confidential Information.

The Court resolved the access question by balancing "the risk of inadvertent disclosure of trade secrets to competitors against the risk to the other party that protection of these trade secrets will prejudice its ability to prosecute or defend the present action," a determination that "turns on" whether the individual seeking access is involved in "competitive decisionmaking." ECF No. 72 at 18–19 (quoting *M-Edge Accessories LLC v. Amazon.com Inc.*, No. 11-cv-3332-MJG, 2013 WL 12241898, at *3 (D. Md. May 14, 2013), and citing *U.S. Steel Corp. v. United States*, 730 F.2d 1465 (Fed. Cir. 1984)). The Court's ruling rested on two findings: that "[t]he competitive decisionmaker inquiry does not favor Colossus because of the absence of a direct competitive relationship between the parties," ECF No. 72 at 21; and that Colossus' asserted harms were "conclusory," in particular because Colossus "stop[ped] short of saying that allowing Dr. Franaszek to access its highly confidential information might result in another report about Colossus like the one at-issue—or offering other potential concrete harms," *Id.* at 23. Facts that were not before the Court undermine both findings.

#### 1. Adalytics' September 2026 Partnership with BidSwitch Undermines the Two Pillars of the Court's Ruling.

**The BidSwitch-Adalytics partnership.** On September 9, 2026, BidSwitch, a subsidiary of Criteo S.A., "announced a data sharing and research partnership with Adalytics Research to offer specialized bidstream data analytics to its supply partners on an opt-in basis." Ex. A. According to the announcement, "BidSwitch will leverage Adalytics' research capabilities to assess inventory quality," and "[t]he agreement enables BidSwitch to leverage Adalytics' unique capabilities to analyze trading and alert clients of activity meriting additional review." *Id.* BidSwitch describes itself as "a connectivity layer between over 200 demand-side and supply-side

platforms." *Id.* Dr. Franaszek himself is quoted in the announcement: "By exchanging data and research insights, we aim to strengthen transparency, accountability, and media quality across the digital advertising ecosystem." *Id.*

**BidSwitch's relationship to Colossus and to this case.** BidSwitch is not a bystander to this dispute. It is "an intermediary that helps connect SSPs," including Colossus, "with DSPs," and many of the billions of ad requests Colossus handles daily flowed through it. ECF No. 66 at 2. The Report itself identified BidSwitch as the "middle-layer vendor" through which Colossus transacted with The Trade Desk. Ex. B (Adalytics' Answers to Interrogatories) at Answer No. 14 (quoting the Report at COLOSSUS_0000004). Indeed, Adalytics has identified BidSwitch personnel as witnesses on "why and how BidSwitch submitted bids from Colossus to The Trade Desk," on "comparable rates of bid mismatches," and on "BidSwitch's suspension of all Colossus SSP trading on May 10, 2024," the day the Report was published. *Id.* at Answer No. 1. Adalytics asserts that BidSwitch "can . . . confirm that the statements contained within the Report are true." *Id.* at Answer No. 15. Adalytics' seventh affirmative defense depends on BidSwitch's account of why it suspended Colossus. ECF No. 72 at 11 (quoting ECF No. 28 at 10–11). And Adalytics has subpoenaed BidSwitch for communications concerning Colossus' supply, including "mismatches in the 'buyer user ID' or 'user ID' field of an ad auction bid request," which BidSwitch did not oppose. ECF No. 66 at 3–5. Colossus has also maintained that BidSwitch, The Trade Desk, and Basis bear responsibility for its losses, a position the Court has already noted. ECF No. 72 at 11.

**First pillar: the "competitive relationship."** The Court found the competitive-decisionmaker inquiry did not favor Colossus because Adalytics and Colossus are not direct competitors, and the Court identified no authority restricting access absent direct competition. ECF No. 72 at 21–22; *see also* ECF No. 66 at 14. But the purpose of the inquiry is to assess the

risk that confidential information will be used, even inadvertently, in decisions "made in light of similar or corresponding information about a competitor." ECF No. 72 at 19 (quoting *M-Edge*, 2013 WL 12241898, at *3, and *U.S. Steel*, 730 F.2d at 1468 & n.3).

Through the BidSwitch partnership, which was not before the Court in the parties' joint submission, Adalytics is now a commercial participant in the market in which Colossus' information has value. Dr. Franaszek's company supplies the analytics BidSwitch uses to "assess inventory quality" and to "alert clients of activity meriting additional review" across more than 200 platforms. Ex. A. Those judgments about which supply sources are trustworthy, which inventory merits scrutiny, and which partners to flag are exactly the kind of decisions that Colossus' bid-level data, deal terms, pricing, and customer identities would inform. Dr. Franaszek is not a disinterested analyst who would merely read Colossus' documents. He designs the product his commercial partner sells to Colossus' former customers and competitors.

Courts, *including in this circuit*, have found restriction appropriate in similar situations even in the absence of a direct competitor relationship between the disclosing party and its counterparty. *See, e.g.*, *Tomahawk Mfg., Inc. v. Spherical Indus., Inc.*, 344 F.R.D. 468, 473-74 (D. Nev. 2023) (restricting access to party who had consulting engagement with competitor); *Univ. of Va. Patent Found. v. Gen. Elec. Co.*, No. 3:14-cv-51, 2015 WL 7431412, at *4 (W.D. Va. Nov. 20, 2015) (collecting cases), *objections overruled*, 2016 WL 379813 (W.D. Va. Jan. 29, 2016); *Stanislaus Food Prods. Co. v. USS-POSCO Indus.*, No. 1:09-cv-00560-LJO-BAM, 2012 WL 6160468, at *5 (E.D. Cal. Dec. 11, 2012) ("substantial risk of serious harm could come from sources other than direct competitors" including "entities having adverse interests to the disclosing party."). For example, in *Univ. of Va. Patent Found.*, the Western District of Virginia concluded that "an ongoing consulting relationship with a competitor," as here, "presents a high risk of []

disclosure." 2015 WL 7431412, at *4. And in *Stanislaus Food Prods.*, the court found that mere *negotiation* with a party's competitor sufficed to restrict access to the counterparty's most sensitive materials. 2012 WL 6160468, at *5.

**BidSwitch's parent company operates a supply-side platform that competes with Colossus.** The competitive relationship the Court found absent exists one step removed, and the Court, on reconsideration, should consider it. BidSwitch is not an independent company. It became part of Criteo S.A. through Criteo's acquisition of IPONWEB, whose businesses included "BidSwitch®, IPONWEB's media trading marketplace." Ex. F (Criteo announcement, Dec. 9, 2021). In June 2023, nearly a year after that acquisition, Criteo launched Commerce Grid, which it describes as "a first-of-its-kind supply-side platform (SSP)," created by bringing together "IPONWEB's The MediaGrid SSP with Criteo's legacy Direct Bidder solution." Ex. G (Criteo press release, June 15, 2023). Criteo's SSP business is a direct competitor of Colossus: both sell publisher inventory to the same demand-side platforms, including through BidSwitch. Smith Decl. ¶¶ 8–9. MediaGrid is not a stranger to this case either. Contemporaneous coverage of the Report described Adalytics as having examined TrustX and MediaGrid, SSPs "which use BidSwitch for the same purpose," and as having found no ID discrepancies for them, in contrast to Colossus. Ex. H (AdExchanger, May 10, 2024).

In short, (1) the Report held up Criteo's own SSP as a favorable comparator to Colossus; Criteo's intermediary; (2) BidSwitch, suspended all Colossus trading the day the Report was published; and (3) Criteo's subsidiary has now entered a "data sharing" partnership with the Report's author, announced through Criteo's own public- and investor-relations contacts. Ex. A. Colossus' customer and publisher identities, deal terms, floor prices, and integration details are

exactly the information a competing SSP would value. *See* ECF No. 66 at 12. This very real risk must be mitigated in the parties' protective order.

**Second pillar: whether Dr. Franaszek is a "competitive decisionmaker."** The Court accepted that Dr. Franaszek is Adalytics' "sole member" and the "lone person" within Adalytics able to evaluate technical discovery. ECF No. 72 at 21 (quoting ECF No. 69 at 2–3). That same fact means the person who will review Colossus' Highly Confidential information is the same person who runs the BidSwitch data-sharing relationship *and* who will be generating BidSwitch's inventory-quality recommendations. No internal separation or ethical wall is possible in a single-member company, as Colossus explained at length in its initial letter brief. *See* ECF No. 69 at 6. While the proposed protective order theoretically places limits on Dr. Franaszek's *use* of the protected information outside of this case, the competitive-decisionmaker test exists because a person who both reviews an adversary's confidential information and makes commercial judgments in the same market cannot reliably compartmentalize what he has learned. *See* ECF No. 72 at 19 (collecting cases where competitive decision-maker's access to sensitive information was curtailed); *see also McAirlaids, Inc. v. Kimberly-Clark Corp.*, 299 F.R.D. 498, 499, 500 (W.D.Va. 2014).

**The partnership was not disclosed, and Adalytics' verified discovery responses are inconsistent with its public-facing statements.** One week after the partnership was announced, Dr. Franaszek verified under penalty of perjury Adalytics' answer to Interrogatory No. 11, which asked Adalytics to identify "any payment, compensation, consideration, retainer, consulting fee, grant, subscription, or thing of value that Adalytics received or was promised, directly or indirectly, from BidSwitch, Criteo, [or] The Trade Desk . . . from January 1, 2023 to the present." Ex. B at Interrogatory No. 11 & Verification (Sept. 16, 2026). Adalytics answered that "it has

neither received, nor was it promised, any benefit, monetary or otherwise, from any of the identified sources during the stated timeframe." *Id.* at Answer No. 11. A partnership under which Adalytics and BidSwitch are "exchanging data and research insights," Ex. A, is difficult to reconcile with that answer. Likewise, in response to Interrogatory No. 9, which sought Adalytics' verbal communications with BidSwitch and Criteo from January 1, 2023 to the present concerning the subject matter of the Report, Adalytics identified no communication with BidSwitch or Criteo at all. Ex. B at Answer No. 9. Colossus continues to investigate and press Adalytics on the scope of this partnership in discovery, but Adalytics' resistance to discovery on this point, coupled with its single-person operation, should be enough on its own to give this Court pause.

**Adalytics has withheld the information needed to assess its commercial relationships.** The Court required Colossus to make a "particular and specific demonstration of fact" of competitive harm. ECF No. 72 at 20, 22–23. Colossus has done so, by setting out what information is available to Colossus about Adalytics' business and its past conduct. But further facts that would show where Adalytics' commercial interests lie are in Adalytics' exclusive possession, and Adalytics has refused identify them. Adalytics should not be permitted to withhold the identity of its clients and partners and then prevail in its bid for Colossus' sensitive information because Colossus cannot know exactly which relationships those are.

### 2. There is Substantial Risk of Particularized Harm if Dr. Franaszek Receives Access to Colossus' Highly Sensitive Materials.

The Court faulted Colossus for offering only the "inevitable—even if subconscious—influence" of Dr. Franaszek's knowledge on Adalytics' future work, and for not saying that access "might result in another report about Colossus like the one at-issue—or offering other potential concrete harms." ECF No. 72 at 23. For the avoidance of doubt, there are a number of very real and specific ways that such disclosure could cause harm to Colossus, as set out below. *See*

*generally* Declaration of Keith Smith ("Smith Decl.") (Ex. D); Declaration of Anu Pillai ("Pillai Decl.") (Ex. E).

**The information at stake.** The discovery the Court has now compelled will require Colossus to produce communications with The Trade Desk, BidSwitch, and Basis concerning bid requests, user IDs, cookie syncs, buyer UIDs, auction types, pricing mechanisms, and non-conforming inventory. ECF No. 72 at 9–13 (Request Nos. 3, 9, and 10). Those materials contain what Colossus has described to this Court as "the details of specific customers, specific bid auctions and the pricing and deal information applicable for each." ECF No. 66 at 14 (quoting ECF No. 53 at 8). That includes the identities of the publishers whose inventory Colossus sold, the buyers and deal IDs through which that inventory was purchased, negotiated deal prices and floors, and the technical configuration of Colossus' integration with its then-partners. Smith Decl. ¶¶ 5–7; Pillai Decl. ¶¶ 9–10. This Court has recognized that "customer lists and revenue information," "product design and development," and "[p]ricing and marketing information" are classic confidential commercial information. ECF No. 66 at 12. These are the very same sets of information that are at risk of disclosure here, to a person who has just announced an information-sharing partnership with Colossus' counterpart.

**Concrete harm 1: another damaging report.** Colossus did not need to speculate about whether Dr. Franaszek might publish about Colossus using non-public information.[1] Adalytics' business consists of publishing research about advertising-technology companies and selling services on the strength of that research. ECF No. 72 at 23 (quoting ECF No. 69 at 7). Its new

[1] He already has. The Report told readers that "[t]he study relied entirely upon publicly accessible or available data; it made use of no proprietary or internal data on how ads are placed or paid for." Adalytics now admits, in a verified discovery response, that it did *not* rely solely on public sources in preparing the Report. Ex. C (Adalytics' Answers to Requests for Admission) at Answer No. 3. Adalytics has also told this Court the Report "concerned data from as early as 2022," ECF No. 72 at 5 (quoting ECF No. 68-2 at 9), a dataset the Report itself does not describe.

partnership with Criteo's BidSwitch adds a second channel, BidSwitch's "actionable recommendations" to its partners. Ex. A. Colossus' Highly Confidential information would give Dr. Franaszek precisely what he lacked in 2024 – Colossus' own bid-level records, deal structures, and integration details, which he could use, consciously or not, to frame a new or revised publication, or a BidSwitch "alert," about Colossus or its clients.

**Concrete harm 2: targeting Colossus' clients.** Before publishing the Report, Adalytics provided or offered pre-publication access to twenty-two "peer reviewers," and sent drafts to journalists at six trade publications. Ex. B at Answer Nos. 1, 7. Among the peer reviewers were personnel from Raptive, The Hershey Company, Haleon, Dentsu, LEGO, SI Capital/Arena Group, and Aidem, which were among Colossus' largest trading relationships. Smith Decl. ¶ 10. Colossus was not given a draft. Smith Decl. ¶ 11. Adalytics has thus already shown it will put allegations about Colossus in front of Colossus' most important clients and partners before Colossus can respond. Colossus' Highly Confidential customer, publisher, and deal information would identify for Dr. Franaszek every other such counterparty and the commercial terms of each relationship.

**Concrete harm 3: transfer to an adverse non-party.** BidSwitch is Adalytics' data-sharing partner, a subpoenaed non-party, a key witness on Adalytics' seventh affirmative defense, and an entity Colossus contends is responsible for its losses. *See supra*; ECF No. 72 at 11. Colossus' Highly Confidential materials include its internal analysis of its BidSwitch integration, its communications about BidSwitch's handling of Colossus' traffic, and its assessment of BidSwitch's suspension. Smith Decl. ¶¶ 5, 7. Even inadvertent leakage of those materials into a relationship premised on "exchanging data and research insights" with BidSwitch, Ex. A, would give an adverse non-party insight into Colossus' litigation position and commercial information

that BidSwitch could not otherwise obtain. Because BidSwitch is part of Criteo, which operates a competing SSP, that information would reach a direct competitor of Colossus.

**Adalytics' need can be met without the risk.** The balance also turns on whether restricting access "would impair the ability of the party seeking full disclosure to proceed effectively with the litigation." ECF No. 72 at 20 (quoting *BioConvergence LLC v. Emergent Biosolutions, Inc.*, No. 21-cv-01959-CCB, 2023 WL 3866411, at *2 (D. Md. June 7, 2023)). It would not. Adalytics' outside counsel will have access to Highly Confidential material, as will its in-house counsel under the Court's current ruling, ECF No. 72 at 24–25. Adalytics may retain an independent technical expert, as litigants routinely do. Adalytics' conclusory note that Dr. Franaszek is "uniquely qualified" to serve as an expert is unsupported by any fact, and certainly does not overcome the risk of harm to Colossus. Dr. Franaszek will continue to have access to material designated "Confidential."

**Dr. Franaszek's intended expert role heightens the risk rather than reducing it.** Adalytics intends to qualify Dr. Franaszek as a hybrid fact and expert witness. ECF No. 72 at 17. Had Adalytics proposed an outside expert who was in a current data-sharing partnership with a subsidiary of Colossus' competitor, Colossus could have objected, and the expert would ordinarily be barred from receiving Colossus' most sensitive information. *See Univ. of Va. Patent Found. v. Gen. Elec. Co.*, No. 3:14cv51, 2015 U.S. Dist. LEXIS 157137, at *10–11, *18–19, *22–23 (W.D. Va. Nov. 20, 2015) (explaining that "an ongoing consulting relationship with a competitor presents a high risk of inadvertent disclosure," and barring even a uniquely qualified outside expert with competitor ties from the producing party's sales, marketing, and strategic planning materials). A "hybrid" designation should not give Dr. Franaszek access that an outside expert with the same commercial ties could not obtain. His dual role also means that whatever he learns as an expert

will inform his work as Adalytics' sole member and as BidSwitch's analytics partner; there is no one else at Adalytics to whom that work could be assigned.

**3. The Protective Order Should Permit Colossus to Designate Its Own Information When Produced by Non-Parties.**

Since the parties submitted their joint letter brief, Adalytics has taken the unjustified position that Colossus cannot designate its own material as Confidential or Highly Confidential when that material is produced by third parties. In footnote 11 of the Opinion, the Court deleted the parties' remaining departures from the Standard Order, including their dispute over "who can assert coverage." ECF No. 72 at 16–17 n.11 (citing ECF Nos. 69-1 ¶ 1; 69-4 ¶ 1). Colossus views the present form of the protective order to permit either party to designate its own Confidential or Highly Confidential material within a reasonable time, even if that material is initially produced by a third party.

Confirmation on this point is crucial. Adalytics has already subpoenaed BidSwitch and Basis (parties who have non-disclosure obligations with respect to Colossus' material) for documents that contain Colossus' bid-level and commercial information, ECF No. 66 at 3–5. If only the producing party may designate, then BidSwitch, Adalytics' commercial partner and a subsidiary of Colossus' competitor, alone decides whether and at what tier Colossus' data in its own production is protected. Additional non-party productions, including those for subpoenas that Colossus intends to serve, are expected. For the avoidance of doubt, Colossus asks this Court confirm that any party to designate material produced by a non-party that contains the designating party's confidential information, within 21 days after the production is served, with such material treated as Highly Confidential in the interim period.

### B. The Court Should Reconsider Its Order Compelling Responses to Document Request Nos. 13, 14, and 15.

Colossus also respectfully requests that the Court reconsider its decision to compel responses to Adalytics' far-afield requests about Google's DSP. The Court compelled responses to Request Nos. 13, 14, and 15 on the basis of "Adalytics' discussion about the exhibits it attached to its reply, as well as the exhibits themselves," which the Court found made "a colorable relevancy argument" that the documents "establish whether or not Google's DSP and advertising customers observed the same ID mismatching phenomenon described in Adalytics' Report." ECF No. 72 at 13–14 (quoting ECF No. 68-14 at 15). The Court did so while lifting, for these requests alone, the "relevant entities" limitation it had thoughtfully imposed on all of Adalytics' other requests. *Id.* at 7, 13. Colossus had no opportunity to respond to these reply exhibits, which were never discussed in the course of the parties' meet and confer or Adalytics' opening Motion to Compel.[2] Colossus submits that the objections to these requests should be sustained, as the requests go far beyond the straightforward limitations the Court placed on Request Nos. 3, 9, 10, and 19, and beyond the specific allegations at issue in this case.[3]

---

[2] Courts in this District ordinarily decline to rely on material raised for the first time in reply for exactly that reason. *See, e.g.*, *Clawson v. FedEx Ground Package Sys., Inc.*, 451 F. Supp. 2d 731, 734 (D. Md. 2006).

[3] Request No. 19 sought "[a]ll communications between and documents exchanged by Colossus and The Trade Desk, BidSwitch, Google, or Basis DSP relating to auction types (1st and 2nd price auctions), buyerUIDs, user IDs, or cookie misidentification, mis-representation, mis-declaration, or mismatches." ECF No. 72 at 9 n.4. The Court denied it because it "largely overlaps" with Request No. 3 "and in recognition of the proportionality principles animating the scope of permissible discovery under Rule 26." *Id.* at 10. Request No. 3, in turn, was granted only as limited to the relevant entities (Colossus, DRCT, The Trade Desk, BidSwitch, and Basis), which do not include Google. *Id.* at 7, 10. Request No. 9 expressly named Google among the partners whose communications it sought, *id.* at 10 n. 5, and the Court likewise limited it to the relevant entities. *Id.* at 10–11. Three times, then, the Court declined to require production of Colossus' communications with Google about user-ID mismatching. If this logic follows, Adalytics' motion to compel production as to Request No. 14 should likewise be denied.

### 1. The Reply Exhibits Are Not Sufficient to Demonstrate That Google Observed ID-Mismatching.

The party seeking discovery bears the initial burden of establishing relevance. ECF No. 72 at 3 (citing *Courthouse News Serv. v. Harris*, No. 22-cv-548-ELH, 2022 WL 3577255, at *3 (D. Md. Aug. 18, 2022)). Adalytics' reply exhibits—all of which are anonymously sourced, second-hand, speculative trade-press commentary published in May 2024 in direct response to the Report—do not show that Google observed ID mismatching in Colossus' traffic. Exhibit A provides quotes from an anonymous "publisher executive" and "[a]nother person familiar with the matter" attributing the suspension to ID matching issues. ECF No. 68-15 at 4. Exhibit B cites an anonymous "source at Google" implying that there may have been an ID-related issue. ECF No. 68-16 at 4. The article in Exhibit C states that "Google identified an issue with some bid requests from the SSP last fall within its DSP DV360 and immediately paused traffic" but does not state or speculate on what the actual issue was. ECF No. 68-17 at 5. As reflected in all the exhibits, Google itself has only ever referred to "invalid traffic," in a statement that does not name Colossus, and says nothing about user IDs, TDIDs, cookie matching, or mismatches. ECF No. 68-15 at 4. Adalytics' own interrogatory answer describes these materials as reports in which "various company spokespersons mentioned that The Trade Desk and Google had issues with Colossus." Ex. B at Answer No. 15. Unspecified "issues" are not the "same ID mismatching phenomenon described in Adalytics' Report."

Nor does the payment withholding vaguely referenced in Request No. 15 and in trade press indicate that Google observed ID mismatching. On January 17, 2024, Colossus received what appeared to be a generic automated report indicating that approximately $10.6 million in payments for Colossus' November 2023 Google transactions, which ran through BidSwitch, would be

withheld; a debit memo followed on February 7, 2024. Smith Decl. ¶ 13.[4] The only characterization Colossus has ever received was that generic report, with no explanation or data beyond dollar amounts attributed to six publishers—among more than *25,000*—and no reference to user IDs, buyer user IDs, or cookie matching. *Id.* Colossus cannot produce an explanation it was never given. Whatever explanation exists is held by Google and by BidSwitch, a non-party that Adalytics has already subpoenaed and with which Adalytics is now partnered, which is the more convenient source for any such information. *See* Fed. R. Civ. P. 26(b)(2)(C)(i). Adalytics, for its part, has identified no source for its suggestion that the withholding related to user IDs. Nothing in the reply exhibits shows otherwise, and the Report explicitly addresses only transactions between Colossus and The Trade Desk (which were integrated through BidSwitch).

Most importantly, Google's conduct after the period Adalytics points to is irreconcilable with the inference Adalytics asks the Court to draw. Google never suspended Colossus. Smith Decl. ¶ 15. To the contrary, following the withholding period, Google's spend through Colossus *increased* by approximately 70%. *Id.* ¶ 16. A demand-side platform that had concluded a supply partner was mis-declaring user IDs would not expand its purchasing from that partner by seventy percent. The record Adalytics relies on therefore does not establish even a "colorable" showing that Google observed what the Report describes. The request to compel these documents should be denied.

**2. Even if Taken as True, the Google Incident is Not Relevant to the Question of Mismatch at The Trade Desk.**

**The Report concerned one pathway: Colossus to BidSwitch to The Trade Desk.** The Report's methodology compared the user ID value in the "tdid=" query-string parameter of The

[4] Google did not pay BidSwitch, and BidSwitch did not pay Colossus. Smith Decl. ¶ 13. Colossus has repeatedly asked both Google and BidSwitch why payment was withheld and, to this day, has received no explanation from either. *Id.* None of the withheld amount has been paid. *Id.*

Trade Desk's win-notification pixels with the Trade Desk user ID stored in the user's browser cookie. Report at COLOSSUS_0000008–14. Its central finding was framed in terms of that pathway: "Colossus SSP appears to be integrated with a middle-layer vendor – Criteo-owned Bidswitch – when transacting with the Trade Desk DSP. . . . When Trade Desk transacted via Colossus SSP and Bidswitch – there were observed discrepancies in declared versus actual user IDs. When Trade Desk DSP transacted via TrustX and Bidswitch – there were no observed discrepancies." Ex. B at Answer No. 14 (quoting Report at COLOSSUS_0000004). The Report did not purport to analyze any impressions between Colossus and Google. The Report itself explains that The Trade Desk "was used for the purposes of this digital forensics analysis purely because Trade Desk mediated bid responses and ad creative source code are relatively straightforward to parse and analyze," and describes its data as "a convenience sample of data that was readily obtainable." Report (ECF No. 28-1) at 17, 31. By Adalytics' own framing, the "phenomenon" it described is specific to how user IDs were handled when Colossus' supply reached The Trade Desk through BidSwitch.

**The "phenomenon" the Report describes is specific to Trade Desk user IDs.** Colossus transacted with The Trade Desk only through BidSwitch, and on a Deals Only basis, under which transactions are matched by deal ID. Pillai Decl. ¶¶ 3–4. In that pathway, Colossus did not maintain a cookie-synchronization relationship with The Trade Desk and did not possess Trade Desk user IDs. *Id.* ¶¶ 5–6. Colossus therefore could not have been the source of the Trade Desk user IDs the Report describes. *Id.* ¶ 6. Google's demand-side platform, Display & Video 360, is a different buyer, which transacted with Colossus through both open-auction OpenRTB and deals, *id.* ¶ 8, and it does not use Trade Desk user IDs. Whatever Google did or did not observe about its own transactions therefore could not be "the same ID mismatching phenomenon described in

Adalytics' Report." ECF No. 72 at 14. The Report's own comparator confirms the point: Adalytics attributed significance to the difference between two SSPs transacting through the *same* intermediary with the *same* DSP. Ex. B at Answer No. 14. A different DSP, transacting on different terms and using its own identifiers, cannot show "the same . . . phenomenon."

**Google is outside every theory the Court relied on to define the scope of discovery.** The Court limited Adalytics' discovery to Colossus, DRCT, The Trade Desk, BidSwitch, and Basis. ECF No. 72 at 7. It justified broader discovery into those entities by reference to Adalytics' seventh affirmative defense, which concerns why The Trade Desk and BidSwitch suspended Colossus, and to Colossus' contention that "BidSwitch, Trade Desk[,] and Basis" used the Report as a pretext. *Id.* at 11. Google appears in neither. Google never suspended Colossus, so Google's conduct cannot bear on the seventh affirmative defense, except to rebut it: the one demand-side platform Adalytics points to as having "issues" with Colossus responded by growing the relationship. And the Report never mentions Google's transactions. Request Nos. 13, 14, and 15 thus open a separate inquiry into a commercial payment matter between Colossus and a non-party that is tied neither to the statements at issue nor to any defense Adalytics has pleaded.

**The requests are disproportionate as written.** Even if some Google-related material were relevant, these requests reach far beyond user-ID mismatching. Request No. 13 seeks every internal message among Colossus employees, across email, WhatsApp, Teams, Slack, iMessage, SMS, and Signal, "referencing non-payment, short payment, refusal to pay, claw backs, refunds, ad inventory policy violations, user ID mismatches, cookie mismatches, user ID bridging, cookie table modifications, and invalid traffic from Google." ECF No. 72 at 13 n.7. Request No. 14 seeks all communications with Google or BidSwitch on the same list of topics, and Request No. 15 seeks "[a]ll documents and communications relating to" a payment matter with Google. *Id.* at 13 nn.8–

9. Payment disputes, refunds, and revenue figures with a customer are the kind of "commercial financial information" this Court has recognized as confidential, ECF No. 66 at 12, and they have no bearing on whether Colossus mis-declared Trade Desk IDs. Smith Decl. ¶¶ 17–18. The Court has already narrowed Request No. 10 for the same reason, restricting "complaints" to "complaints about user id and cookie mismatches only." ECF No. 72 at 12–13. At minimum, the same limitation should apply here as well.

**Requested relief.** Colossus respectfully asks the Court to vacate the portion of its Order compelling responses to Request Nos. 13, 14, and 15. In the alternative, Colossus asks that the Court limit those requests to documents and communications concerning user-ID, buyer-UID, or cookie mismatching in Colossus traffic, consistent with the Court's treatment of Request No. 10, and strike the remaining subject matter (non-payment, short payment, refusal to pay, claw backs, refunds, ad inventory policy violations, and invalid traffic generally).

## III. CONCLUSION

For the foregoing reasons, Colossus respectfully requests that the Court grant this Motion and (1) vacate the portion of its October 19, 2026 Order permitting Dr. Franaszek to access material designated "Highly Confidential"; (2) vacate the portion of its Order compelling Colossus to respond to Document Request Nos. 13, 14, and 15 or, alternatively, limit those requests as described above and require that any Google-related financial material be produced as Highly Confidential and withheld from Dr. Franaszek; and (3) confirm the parties' ability to designate their confidential information when it is contained in non-party productions.

[*Signature follows on the next page*]

Dated: November 2, 2026

Respectfully submitted,

*/s/ Lucy J. Wheatley*

Ava E. Lias-Booker (Fed. Bar No. 05022)
Melissa O. Martinez (Fed. Bar No. 28975)
**MCGUIREWOODS LLP**
500 East Pratt Street, Suite 1000
Baltimore, MD 21202-3169
(410) 659-4400
(410) 659-4482 Fax
alias-booker@mcguirewoods.com
mmartinez@mcguirewoods.com

Robert A. Muckenfuss *(pro hac vice)*
**MCGUIREWOODS LLP**
201 N. Tryon Street, Suite 3000
Charlotte, NC 28202
(704) 343-2052
(704) 343-2300 Fax
rmuckenfuss@mcguirewoods.com

Lucy J. Wheatley (*pro hac vice*)
Carson R. Bartlett *(pro hac vice)*
**MCGUIREWOODS LLP**
Gateway Plaza
800 East Canal Street
Richmond, VA 23219
(804) 775-4320
(804) 698-2017 Fax
lwheatley@mcguirewoods.com
cbartlett@mcguirewoods.com

*Counsel for Plaintiff Colossus Media, LLC*