# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| COLOSSUS MEDIA, LLC,<br><br>*Plaintiff*,<br><br>v.<br><br>ADALYTICS RESEARCH, LLC,<br><br>*Defendant*. | Case 8:24-cv-01402-DKC |

**DEFENDANT ADALYTICS RESEARCH, LLC'S OBJECTIONS AND ANSWERS**
**TO PLAINTIFF COLOSSUS MEDIA, LLC'S FIRST INTERROGATORIES**

Defendant Adalytics Research, LLC ("Adalytics"), by and through undersigned counsel, hereby submits these Objections and Answers (the "Answers") to the First Interrogatories ("Interrogatories") served by Plaintiff Colossus Media, LLC ("Colossus").

The information in these Answers is not based solely on the knowledge of the executing party, but includes the knowledge of the party, its agents, representatives and, unless privileged, its attorneys. The word usage and sentence structure may be that of the attorney assisting in the preparation of these Answers and thus does not necessarily purport to be the precise language of the executing party. The Interrogatories have been interpreted and answered in accordance with plain English usage meaning, and the answering party reserves the right to amend, modify, or supplement the Answers made herein upon receipt of new or different information obtained as a result of discovery and/or investigation undertaken on its behalf. As used herein, the term "subject matter of this litigation," or similarly worded phrases refer to the facts alleged in the Amended Complaint.

Any objection or failure to object to any of the Interrogatories is not to be deemed an admission that the responding party possesses the information called for by the Interrogatory. Adalytics reserves the right to amend, modify, or supplement its answers upon the receipt of new or clarifying information during this litigation.

## OBJECTIONS TO DEFINITIONS

**DEFINITION NO. 4**: Adalytics objects to Colossus' definition of "The Report," on the grounds that it is overbroad to the extent that it seeks to include "all versions, drafts, and iterations thereof." Colossus' defamation and injurious falsehood causes of action require the purported defamatory material to be published, and its false advertising and unfair competition cause of action requires the purportedly defamatory material to be used in commercial advertising and promotion. As such, any drafts of Adalytics' report that were not published or used in commercial advertising or promotion are not relevant to this matter. Adalytics further objects as the phrase "iterations thereof" is ambiguous.

**DEFINITION NO. 11**: Adalytics objects to Colossus' definition of "Document" to the extent that the definition exceeds that of Fed. R. Civ. P. 34 – specifically, in that it calls for "any written, printed, recorded, or graphic matter that is or has been in Adalytics' actual or constructive possession or control." Fed. R. Civ. P. 34 requires production of documents in a party's "possession, custody, or control." Adalytics, therefore, objects to the extent Colossus seeks documents that were but no longer are in Adalytics' possession as well as documents in its "constructive possession," which term is undefined and ambiguous.

## OBJECTIONS AND ANSWERS

**INTERROGATORY NO. 1**: Identify all persons who are likely to have personal knowledge, e-mails, documents, records, data, logfiles, or information related to any factual allegations in the Amended Complaint and state in detail the subject matter of the information possessed by each such person.

**ANSWER NO. 1**: Adalytics objects to this Interrogatory as overbroad, unduly burdensome, and disproportionate to the needs of the case, as it purports to require Adalytics to identify all persons likely to have knowledge, e-mails, documents, records, data, logfiles, or information related to the allegations in the Amended Complaint, which would embrace many persons and a massive amount of irrelevant information having nothing to do with the claims or defenses in this case whatsoever. Adalytics also objects to this Interrogatory as unduly burdensome insofar as it seeks information already in Colossus' possession, custody, or control. Adalytics also objects to the extent this Interrogatory is vague and may be construed as seeking attorney-client privileged communications and documents subject to the work-product privilege generated while preparing for the present litigation generally or in responding to this Interrogatory in particular.

Subject to and without waiving the foregoing objections, Adalytics answers this Interrogatory as follows:

- McGuire Woods attorneys, including but not limited to Robert Muckenfuss, likely will have information related to several of the factual allegations in the Amended Complaint. Correspondence between Mr. Muckenfuss and Jonathan Lee, General Counsel for Adalytics, will show that Adalytics requested written statements and evidence from Colossus describing any allegedly inaccurate statements contained in the Report. Such correspondence will also show that Adalytics repeatedly offered to consider any specific written evidence that Colossus wished to provide.
- Representatives of BidSwitch/Criteo, such as Barry Adams and Ryan Damon, likely will have information and records as to why and how BidSwitch submitted bids from Colossus to The Trade Desk, as well as the comparable rates of bid mismatches it submits from other Sell Side Platforms ("SSPs") to The Trade Desk. In addition, Valerie Zeltser of BidSwitch likely has

knowledge about BidSwitch's suspension of all Colossus SSP trading on May 10, 2024.

- Representatives of The Trade Desk, such as such as Jud Spencer, Anna Wolk, Ken Gilberg, Will Doherty, and Ian Eisner likely will have information explaining The Trade Desk's reasons for terminating Colossus.
- Dr. Krzysztof Franaszek of Adalytics will have information on how the data for the study that informed the Adalytics Report was collected, the analysis and results of the study, pre-publication and pre-litigation correspondence between Adalytics and Colossus/Direct Digital Holdings, Inc. ("DRCT"), and Adalytics business.
- Jonathan Lee of Adalytics will have non-privileged information regarding pre-publication and pre-litigation communications between Adalytics and Colossus/DRCT.
- Mark Walker, Kevin Smith, Anu Pillai, and Geoffrey Schmidt of DRCT likely will have information related to DRCT's operations, communications with members of the press, and matters related to the statements in the Adalytics Report.
- Lashawnda Goffin, CEO of Colossus, likely will have information on Demand Side Platform ("DSP") concerns, Colossus' adherence to DSP rules, Colossus' business relationships with BidSwitch, The Trade Desk, and other relevant entities, and whether these DSPs ever identified concerns regarding Colossus' adherence to their rules.
- Dr. Augustine Fou, proprietor of FouAnalytics and the "expert" cited in Paragraphs 15, 26, and 28 of Colossus' Amended Complaint who worked with or interacted with staff at Colossus or DRCT, will likely have information regarding Colossus's response to press publications and Colossus's theories of falsity regarding the Report.
- Other Persons who will have general knowledge about events surrounding the litigation include:

Basis Global Technologies, Inc.

- Ian Trider, former Vice President of Product at Basis, likely will have information about digital advertising protocols, invalid traffic, the quality of digital ad auction bid requests transacted via Colossus SSP and Basis demand side platform (DSP), and meetings or correspondence with Colossus Media or DRCT staff regarding the quality of digital ad bid requests.
- Chris Coupland, Platform Operations Director (Supply Integrations) at Basis, likely will have information about digital advertising protocols, user ID bridging in the context of digital advertising, invalid traffic, the quality of digital ad auction bid requests transacted via Colossus SSP and Basis demand side platform (DSP), and meetings or correspondence with Colossus Media or DRCT staff regarding the quality of digital ad bid requests.

Sincera

- Mike O'Sullivan, co-founder of Sincera and now General Manager, Product at The Trade Desk, likely will have knowledge of his review of and commentary on a draft of the Adalytics Report and his online video recording on the platform Loom raising doubts about the Colossus SSP "rebuttal" technical evidence video published on Colossus's website, which was titled "Open Letter to the AdTech Community Regarding Recent False Adalytics Blog Post"

Jounce Media

- Chris Kane, founder of Jounce Media, likely has knowledge of digital advertising industry standards and protocols, including regarding user IDs; and likely conducted his own analysis of digital ad trading activity involving Colossus SSP and other SSPs.

Raptive (f/k/a CafeMedia)

- Patrick McCann, Senior Vice President, Research at Raptive, was given pre-publication

peer review access to the Report drafts; likely has knowledge of Google's analysis of invalid bid requests submitted to Google in digital ad auctions involving Colossus Media; likely has knowledge of Raptive's digital ad trading activity with various SSPs.

Google

- Per Bjorke, Product Director, Ad Traffic Quality, likely has knowledge of Google's analysis of invalid bid requests submitted to Google in digital ad auctions involving Colossus Media and invalid traffic generally.

Bayer Consumer Healthcare

- Gary Guarnaccia, Head of Investment, Ad Tech at Bayer Consumer Healthcare, likely has knowledge of brand advertiser perceptions of the utility of user IDs in digital ad auctions; and likely has knowledge of compensation issued to brand advertisers for invalid ad auctions involving Colossus SSP.
- Josh Pianko, formerly of Bayer, now at Pfizer, likely has knowledge of compensation issued to brand advertisers for invalid ad auctions involving Colossus SSP.
- Khara Hutchinson, Director, Commerce Media & Programmatic Innovation at Bayer Consumer Healthcare, likely has knowledge of compensation issued to brand advertisers for invalid ad auctions involving Colossus SSP.

HP

- Freddie Liversidge, former VP of Media at HP, now VP of Media at Lego, was offered pre-publication report access for the purpose of peer review; likely has knowledge of brand advertiser perceptions of the utility of user IDs in digital ad auctions; and provided an anonymous brand advertiser perception quote in the Report.

Hershey's

- Vinny Rinaldi was offered pre-publication report access for the purpose of peer review

and likely has knowledge of brand advertiser perceptions of the utility of user IDs in digital ad auctions.

- Kyle Shank was offered pre-publication report access for the purpose of peer review; likely has knowledge of compensation issued to media agencies or advertisers for invalid ad auctions involving Colossus SSP; and likely has knowledge of brand advertiser perceptions of the utility of user IDs in digital ad auctions.

Horizon Media

- Katie Gibson, Director Programmatic Investment, likely has knowledge of compensation issued to media agencies or advertisers for invalid ad auctions involving Colossus SSP.

SI Capital / Arena Group

- Greg Young, Head of Integrated Media Strategy, was offered pre-publication report access for the purpose of peer review; has knowledge of digital advertising industry standards and protocols, including regarding user IDs; and likely has knowledge of publisher digital ad trading activity with various SSPs.

Journalists

1. AdExchanger
   - James Hercher, journalist/editor, cited the Report in a news article; was offered pre-publication report access; likely has knowledge of Colossus's or DRCT's communications with members of the press regarding the report; likely has knowledge of quality concerns raised by The Trade Desk, Google, and others regarding invalid ad bid requests involving Colossus SSP.
   - Sarah Sluiss, journalist/editor, likely has knowledge of Colossus or DRCT's communications with members of the press regarding the report.
   - Allison Schiff, journalist/editor, was offered pre-publication report access; likely

has knowledge of Colossus's or DRCT's communications with members of the press regarding the report.

2. AdAge
   - Jack Neff, formerly of AdAge, cited the report in a news article; was offered pre-publication report access; likely has knowledge of Colossus's or DRCT's communications with members of the press regarding the report; and likely has knowledge of quality concerns raised by The Trade Desk, Google, and others regarding invalid ad bid requests involving Colossus SSP.
3. The Drum
   - Kendra Barnett, former journalist/editor at the Drum, cited the report in a news article; was offered pre-publication report access; likely has knowledge of Colossus's or DRCT's communications with members of the press regarding the report; and likely has knowledge of quality concerns raised by The Trade Desk, Google, and others regarding invalid ad bid requests involving Colossus SSP.
4. Marketecture
   - Ari Paparo, host of the Marketecture Podcast and writer for Marketecture Newsletter, cited the Report in a newsletter and podcast; and likely has knowledge of Colossus's or DRCT's communications with members of the press regarding the Report.
5. Digiday
   - Seb Joseph, journalist, cited the report in a news article; was offered pre-publication report access; likely has knowledge of Colossus's or DRCT's communications with members of the press regarding the report; and likely has knowledge of quality concerns raised by The Trade Desk, Google, and others

regarding invalid ad bid requests involving Colossus SSP.

- Kayleigh Barber, journalist, cited the report in a news article.
- Ronan Shields, journalist, cited the report in a news article; was offered pre-publication report access; likely has knowledge of Colossus's or DRCT's communications with members of the press regarding the report; and likely has knowledge of quality concerns raised by The Trade Desk, Google, and others regarding invalid ad bid requests involving Colossus SSP.

6. Campaign (part of Haymarket Media)
    - Jessica Heygate cited the report in a news article; likely has knowledge of Colossus's or DRCT's communications with members of the press regarding the report; and likely has knowledge of quality concerns raised by The Trade Desk, Google, and others regarding invalid ad bid requests involving Colossus SSP.

<u>TrustX/Symitri</u>

- David Kohl, CEO, likely has knowledge of TrustX's integrations with BidSwitch.

<u>Data Sources & Data Repositories</u>

- URLScan.io has publicly accessible records of digital ad impressions and ad auctions involving Colossus SSP, The Trade Desk, BidSwitch, and other ad tech platforms.
- HTTP Archive has publicly accessible records of digital ad impressions and ad auctions involving Colossus SSP, The Trade Desk, BidSwitch, and other ad tech platforms.

List of individuals given pre-publication access to Report draft for the purposes of Peer Review:

1. Antonio Torres, Chief Technology Officer at DeepSee.io

2. Arielle Garcia, Chief Operating Officer at Check My Ads Institute
3. Aram Zucker-Scharff, Engineering Manager for Advertising Engineering at the Washington Post
4. Brook Minto, Haleon
5. Cristian Figoli, Dentsu
6. David Nyunberg, advisor to Adalytics and peer reviewer
7. Freddie Liversidge, former VP of Media at HP, now VP of Media at Lego
8. Greg Young, Head of Integrated Media Strategy at SI Capital
9. Giovanni Sollazzo, CEO of Aidem
10. Iesha White
11. Israel Mirsky
12. Jay Friedman, former CEO of ad agency Goodway Group
13. Joshua Lowcock, President at Quad media agency
14. Keri Thomas
15. Kyle Shank, Hershey's
16. Ruben Scheurs, CEO of Ebiquity
17. Mike McCarver
18. Mike O'Sullivan (Sincera/TTD), contributor to IAB Tech Lab
19. Patrick McCann, Raptive/Cafemedia
20. Ratko Vidakovic, Founder of AdProfs
21. Rocky Moss, CEO of DeepSee.io
22. Vinny Rinaldi, Hershey's

Adalytics reserves the right to amend, modify, or supplement its answer to this Interrogatory upon receipt of new or clarifying information during this litigation.

**INTERROGATORY NO. 2**: Describe in detail all efforts undertaken by Adalytics to verify the accuracy of the statements and conclusions in the Report before and after its publication, including any communications with BidSwitch, Trade Desk, or other third parties to verify technical claims, and the identity and qualifications the identity and qualifications [sic] of each person involved in any verification effort. Your answer should include the identity of each person who authored, researched, analyzed, edited, reviewed, contributed in any way to, or approved the Report prior to publication.

**ANSWER NO. 2**: Adalytics objects to this Interrogatory as overbroad, unduly burdensome, and disproportionate to the needs of this case as it requests ***all*** efforts undertaken in a detailed study. Adalytics further objects to the extent this Interrogatory seeks information covered by the attorney-client privilege or work product doctrine.

Subject to and without waiving such objections, Adalytics directs Colossus to the "Methodology" and "Caveats & Limitations" sections of its Report at COLOSSUS_0000008-14 and COLOSSUS_0000026, respectively. In addition, while there was no reason to solicit third-party opinions to "verify" the claims, in the usual course of Adalytics' review of its research, Adalytics seeks the input, feedback, general knowledge, and/or advice of knowledgeable industry participants. Those reviewers are listed in response to Interrogatory No. 1.

**INTERROGATORY NO. 3**: State all facts and circumstances known to Adalytics, both at the time of publishing the Report and currently, that support or contradict the accuracy of the statements and conclusions in the Report.

**ANSWER NO 3**: Adalytics objects to this Interrogatory as overbroad, unduly burdensome, and disproportionate to the needs of this case insofar as it requests "***all*** facts and circumstances known to Adalytics," at the time of publishing and currently. Furthermore, Adalytics objects to this Interrogatory as unduly burdensome as the facts and circumstances supporting the accuracy of Adalytics' Report are set forth in the Report. Subject to and without waiving the above objections, facts and circumstances supporting the Adalytics Report include the data mentioned above and in the Adalytics Report, as well as the fact that DSPs with substantial experience with Colossus have ceased transacting with Colossus, including following the independent analysis of Colossus's data

by those DSPs or in connection with customer reports. In addition, reports by trade publications immediately after the release of the Report supported the accuracy of the Report. Also, Adalytics offered in correspondence with counsel for Colossus to review any specific information Colossus was willing to provide that disputed the accuracy of the Report. No such specific verifiable or dispositive information ever was provided to Adalytics. There are no current facts or circumstances known to Adalytics which contradict the statements in the Report. Adalytics reserves the right to amend, modify, or supplement its answer to this Interrogatory upon receipt of new or clarifying information during this litigation.

**INTERROGATORY NO. 4**: Describe in complete detail the research methodology Adalytics used in preparing the Report. Your response should include the specific data sources used, the time period of data collection, the tools, software, or platforms used to collect and analyze data, the methodology for comparing TDIDs declared in bid requests versus TDIDs stored in users' browsers, the sample size and scope of data analyzed for each SSP, the identity of all persons who conducted the research and analysis, and any limitations, qualifications, or caveats identified during the research, as well as a description of how Adalytics obtained the data underlying the Colossus-specific findings in the Report, including all bid requests, bid responses, win-notification pixels, query-string parameters, and Trade Desk ID (TDID) values Adalytics attributed to Colossus.

**ANSWER NO. 4**: Adalytics objects to this Interrogatory because it contains at least four subparts seeking information about discrete separate subjects and, therefore, is impermissibly compound. Subject to and without waving such objection, *see* the "Methodology" and "Caveats & Limitations" sections of the Report at COLOSSUS_0000008-14 and COLOSSUS_0000026, respectively.

**INTERROGATORY NO. 5**: Describe in detail all sources of revenue for Adalytics from January 1, 2023 to the present, including the identification of specific customers, the services provided to each customer, and how Adalytics markets those services. Your answer should include Adalytics' total revenue for 2023 and 2024.

**ANSWER NO. 5**: Adalytics objects to this Interrogatory as it is entirely overbroad, disproportionate to the needs of this case, and not at all relevant to Colossus's causes of action or

Adalytics' defenses thereto. Adalytics' customers, the services it provides, and its marketing have nothing to do with the veracity of the Adalytics' Report. Adalytics' total revenue in 2023 and 2024 also are entirely irrelevant to the issues in this case. Adalytics further objects to this Interrogatory as impermissibly compound, as it contains at least four discrete requests for information.

**INTERROGATORY NO. 6**: Identify all other blog posts, articles, reports, or publications authored, co-authored, or published by Adalytics from January 1, 2020 to the present that criticized, analyzed, or made negative statements about advertising technology vendors or other participants in the programmatic advertising industry. Your response should include the title, date, and subject of the publication, whether Adalytics faced any actual or threatened legal claims as a result of the publication, and whether Adalytics earned new business, clients, or viewership as a result of the publication.

**ANSWER NO. 6**: Adalytics objects to this request as overly broad as it seeks information from January 1, 2020 to the present, and Adalytics did not even begin operating as a legal entity until March of 2021. Adalytics further objects as this request is disproportionate to the needs of this case and not relevant to any of Colossus' causes of action or Adalytics' defenses thereto. Adalytics further objects to this Interrogatory as impermissibly compound, as it contains at least three discrete requests for information. Adalytics further objects to the characterization used in the Interrogatory related to its reports.

**INTERROGATORY NO. 7**: Describe in detail all steps taken by Adalytics to disseminate, distribute, or share the Report or any information contained therein with media outlets, journalists, reporters, industry analysts, clients, prospective clients, or any other persons prior to the Report's publication on May 10, 2024. Your response should include the identity of each person or entity to whom the Post or its contents were provided, the date of each such dissemination, the form in which the information was shared (e.g., advance copy, summary, embargo), whether any revisions were made to the Report during the period between dissemination and final publication, and the purpose of each such pre-publication dissemination and revision.

**ANSWER NO. 7**: Adalytics objects to this Interrogatory because it contains multiple subparts and is impermissibly compound. Adalytics further objects to this Interrogatory to the extent it calls for the disclosure of privileged communications with counsel. Subject to and without waving such

objection, Adalytics provided drafts of the report to:

Journalists

- AdExchanger – James Herger, Allison Schiff

- AdAge – Jack Neff

- The Drum – Kendra Barnett

- Digiday – Seb Joseph, Ronan Shields, Kayleigh Barber

- VideoWeek – Vincent Flood, Tim Cross

- Adweek – Catherine Perloff

Peer Reviewers (*see* Answer to Interrogatory No. 1, above)

Legal Counsel

Adalytics reserves the right to amend, modify, or supplement its answer to this Interrogatory upon receipt of new or clarifying information during this litigation.

**INTERROGATORY NO. 8**: Identify with specificity how and why Adalytics identified and selected Colossus as a subject of the Report, including the date on which the decision to analyze or reference Colossus was first made, every person who proposed, suggested, requested, or approved the inclusion of Colossus, the reasons Colossus was selected, and the criteria or considerations that led Adalytics to examine Colossus rather than, or in addition to, other supply-side platforms. Your answer should identify every other supply-side platform that, in the data Adalytics reviewed, exhibited the same or a similar pattern of identifier declaration that Adalytics attributed to Colossus, and for each, state whether it was named in the Report, the reason it was or was not named, and whether that platform operated with The Trade Desk under a fixed-price "Deals Only" arrangement under which user identifiers did not determine price.

**ANSWER NO. 8:** Adalytics objects to this Interrogatory because it contains at least three subparts seeking information about discrete separate subjects and, therefore, is impermissibly compound. In addition, Adalytics objects to this Interrogatory insofar as it assumes the application of a "Deals Only" framework as defined by Colossus. Even theoretical fixed-price deals need user IDs to be declared accurately – not for pricing, but for frequency capping (i.e., how many times a user views an ad) and for user consent opt-out flows.

Subject to and without waiving the above objections, Adalytics refers to the content of the Report, which explains how and why Colossus became a subject of the Report based on the analysis performed by Adalytics.

**INTERROGATORY NO. 9**: Identify and describe all verbal communications between Adalytics and BidSwitch, Criteo, The Trade Desk, any third-party consultant, contractor, or adviser engaged by or working with Adalytics (whether paid or unpaid), Armistice Capital Management, or any person holding a short position in Direct Digital Holdings, Inc. (NASDAQ: DRCT) securities, or any of their respective officers, employees, agents, or representatives, or any other third party from January 1, 2023 to the present, concerning Colossus, DRCT, the subject matter of the Report, the Report itself, or any draft or contemplated version of the Report. For each communication, provide the date, the participants, the medium, the subject matter, and a brief description.

**ANSWER NO. 9**: Adalytics objects to this Interrogatory as overbroad, unduly burdensome, and disproportionate to the needs of the case, as it seeks all verbal communications between Adalytics and essentially any person or company other than Colossus during a span of nearly four years relating to a host of subjects, including Colossus, DRCT, and the Report. This Interrogatory thus encompasses a multitude of conversations, many of which would be entirely irrelevant to this case, Colossus's claims, or Adalytics' defenses. Subject to and without waiving these objections, Adalytics identifies the following verbal communications:

1. Conversation with Mike O'Sullivan from Sincera regarding user ID mismatch issues at some point in 2024;
2. Conversation with Jud Spencer from The Trade Desk regarding user ID related topics and invalid traffic at some point in 2024;
3. Conversation with Chris Kane from Jounce Media regarding user ID related topics and invalid traffic at some point in 2024;
4. Conversation with Ian Trider from Basis Technologies at some point after May 10, 2024;
5. Shared a copy of a draft of the Report with David Nyrenberg, an advisor to Adalytics; and
6. Conversation with Ian Eisner of the Trade Desk on May 17, 2024, who confirmed: that the

information in the Report was accurate; that The Trade Desk had communicated its concerns about buyer user IDs with Colossus for "over a year"; that only The Trade Desk makes decisions about vendor access to The Trade Desk advertisers; that The Trade Desk decided to eliminate 1-to-1 PMP deals prior to and without regard to the Adalytics Report published on May 10, 2024; and that The Trade Desk's policies regarding bid submissions (including the requirement for accurate/matching cookies in the buyer user ID field) apply to all vendors.

Adalytics reserves the right to amend, modify, or supplement its answer to this Interrogatory upon receipt of new or clarifying information during this litigation.

**INTERROGATORY NO. 10**: State whether any person or entity other than Adalytics requested, suggested, encouraged, commissioned, funded, directed, edited, reviewed, or provided data or information for the Report or for the Colossus-specific analysis contained in the Report, and if so, identify each such person or entity, the nature of their involvement, and all documents reflecting that involvement.

**ANSWER NO. 10**: Adalytics objects to this Interrogatory as wildly overbroad, unduly burdensome, and disproportionate to the needs of the case, as well as impermissibly compound, as it contains numerous discrete requests for information. Subject to and without waiving these objections, Adalytics responds that no third parties or entities other than Adalytics requested, commissioned, funded, or directed the Report. Numerous persons reviewed the report – *see* answer to Interrogatory Nos. 1 and 2. Adalytics further responds that the Reviewers identified in its response to Interrogatory 1 and the journalists identified in response to Interrogatory 7 received and may have reviewed a draft of the Report.

**INTERROGATORY NO. 11**: Identify any payment, compensation, consideration, retainer, consulting fee, grant, subscription, or thing of value that Adalytics received or was promised, directly or indirectly, from BidSwitch, Criteo, The Trade Desk, Armistice Capital Management, or any person holding a short position in Direct Digital Holdings, Inc. (NASDAQ: DRCT) securities, from January 1, 2023 to the present, and state the amount, date, and purpose of each.

**ANSWER NO. 11**: Adalytics objects to this Interrogatory as overbroad, vague, and

ambiguous, particularly in its use of the phrases "thing of value," "directly or indirectly," and "any person holding a short position in Direct Digital Holdings, Inc. (NASDAQ: DRCT) securities." Adalytics further objects to this Interrogatory as impermissibly compound. Subject to and without waiving the foregoing objections, Adalytics responds that it has neither received, nor was it promised, any benefit, monetary or otherwise, from any of the identified sources during the stated timeframe.

**INTERROGATORY NO. 12**: Identify each occasion on which Adalytics was informed, whether before or after publication of the Report, that any statement or conclusion in the Report was inaccurate, incomplete, unsupported, or disputed—including DRCT's technical rebuttal and any statement by any industry organization, trade body, independent expert, or third party refuting the Report's findings—and, for each, state when and how Adalytics was so informed, who informed Adalytics, and what action, if any, Adalytics took in response.

**ANSWER NO. 12**: Adalytics objects to this Interrogatory as overbroad, vague and ambiguous, and impermissibly compound. Subject to and without wavier of the foregoing objections, Adalytics responds that it has only received general and conclusory statements that the Report was "false and misleading," and it has only received these statements from counsel for Colossus. In-house counsel for Adalytics, Jonathan Lee, requested Colossus provide specific information about what in the Report was verifiably false, and specific technical information to support Colossus's claims in multiple emails with counsel for Colossus on May 8 and 9, 2024, prior to publication of the Report. Counsel for Colossus did not provide such information.

On the date of the publication of the Report, Mr. Lee, received a document from DRCT counsel that purported to rebut some aspects of the Report. However, the rebuttal document made conclusory determinations supposedly supported by evidence in the form of ".HAR" documents that were ostensibly available upon request. The technical rebuttal included screenshots which were illegible or truncated. Mr. Lee requested the ".HAR" evidence from DRCT's counsel on at least four occasions (including on May 10th, twice on May 13th, and on May 14th, 2024) but received no response from DRCT or its counsel.

After his request for this alleged supporting information was repeatedly ignored, Mr. Lee informed Colossus' counsel that if DRCT and Colossus refused to provide this supporting evidence, then Adalytics would have to conclude that it did not exist.

**INTERROGATORY NO. 13**: State whether, in preparing the Report, Adalytics examined the "EID" (extended/encrypted identifier) field transmitted in the bid requests it analyzed, and if Adalytics did not examine the EID field, explain why not. Your answer should include, for both Open RTB and Deal Only frameworks, Adalytics' understanding, at the time of publication, of how user identifiers are transmitted, mapped, and converted when a supply-side platform connects to demand partners through an intermediary such as BidSwitch, and should identify all documents supporting that understanding.

**ANSWER NO. 13**: Adalytics objects to this Interrogatory because it contains at least two subparts seeking information about discrete separate subjects and, therefore, is impermissibly compound. Subject to and without waiving such objection, Adalytics directs Colossus to the "Methodology" and "Caveats & Limitations" sections of the Report at COLOSSUS_0000008-14 and COLOSSUS_0000026, respectively. Such sections specifically address how Adalytics scoped its published analysis.

**INTERROGATORY NO. 14**: Describe Adalytics' understanding and the basis of its understanding, at the time of publication of the Report, of how Colossus connected to The Trade Desk. Your answer should include Adalytics' understanding of whether Colossus connected to The Trade Desk through BidSwitch acting as an intermediary, BidSwitch generated or converted Trade Desk IDs within that transmission pathway, and whether Colossus and The Trade Desk transacted, in whole or in part, under a fixed-price "Deals Only" arrangement under which user identifiers do not determine price.

**ANSWER NO. 14**: Adalytics objects to this Interrogatory as vague, ambiguous, overbroad, and, because it contains at least four subparts seeking information about discrete separate subjects, impermissibly compound. Adalytics further objects to this Interrogatory as it states as fact an issue that is in dispute – specifically, that the "user identifiers do not determine price."

Subject to and without waiving such objections, as Adalytics noted in its Report, "Colossus SSP appears to be integrated with a middle-layer vendor – Criteo-owned Bidswitch – when

transacting with the Trade Desk DSP. A different SSP – TrustX – also appears to integrate with Bidswitch. When Trade Desk transacted via Colossus SSP and Bidswitch – there were observed discrepancies in declared versus actual user IDs. When Trade Desk DSP transacted via TrustX and Bidswitch – there were no observed discrepancies." COLOSSUS_0000004. *See also* Trade Desk's Public Inventory Policies – Bid Request Transparency, at https://partner.thetradedesk.com/v3/portal/ssp/doc/InventoryPolicies#bid-request-transparency.

**INTERROGATORY NO. 15**: For each statement in the Report that Colossus has identified as false or defamatory in its pleadings, state the complete factual and technical basis on which Adalytics contends the statement was and is true and not misleading, and identify all documents and all persons with knowledge supporting that contention.

**ANSWER NO. 15**: Adalytics objects to this Interrogatory because it contains at least two subparts seeking information about discrete separate subjects and, therefore, is impermissibly compound. Subject to and without waving such objection, Adalytics refers to the trade publications from May 10, 2024 through June of 2024 in which various company spokespersons mentioned that The Trade Desk and Google had issues with Colossus even before Adalytics' Report was published (including AdExchanger's May 10, 2024 article); Adalytics' discussions with third-party experts; the fact that Adalytics' Report was peer-reviewed; and the fact that Adalytics requested from Colossus, through its counsel, information regarding the portions of the Report Colossus claimed were inaccurate both before and after Adalytics published the Report but before litigation began.

Furthermore, Adalytics also understands that The Trade Desk, Google, Basis, and BidSwitch can each confirm that the statements contained within the Report are true and not misleading and would confirm that Colossus had a history of failing to deliver accurate buyer user ID fields in bid submissions to these DSPs.

Similarly, based on third-party information, Adalytics believes that The Trade Desk stopped supporting so-called "Deals Only" transactions between individual advertisers and Colossus because

of Colossus' persistent submissions of bids that contained inaccurate user IDs as well as its circumvention of other Trade Desk inventory policies. The Trade Desk also gave "make good" credits to its advertisers who purchased ad placements in which Colossus misrepresented user IDs in "Deals Only" transactions.

**INTERROGATORY NO. 16**: Describe every business, client, revenue, publicity, reputational, or other benefit that Adalytics obtained, expected to obtain, or solicited as a result of the Report, including any new client engagement, subscription, media coverage, speaking opportunity, or inbound inquiry, and identify all documents and communications reflecting any such benefit.

**ANSWER NO. 16**: Adalytics objects to this Interrogatory as overbroad and unduly burdensome. Subject to and without waiving such objection, Adalytics states it did not receive any financial benefits or add any new clients as a direct result of the Report.

Dated: September 16, 2026

Respectfully submitted,

**HUGHES HUBBARD & REED LLP**

By: *<u>/s/ Koushik Bhattacharya</u>*
Koushik Bhattacharya (Fed. Bar No. 16994)
James "Jake" Schaller (Fed. Bar No. 21081)
Hughes Hubbard & Reed LLP
1775 I Street, N.W., Sixth Floor
Washington, DC 20006-2401
Tel: (202) 721-4600
Facsimile: (202) 721-4646
Email: koushik.bhattacharya@hugheshubbard.com
jake.schaller@hugheshubbard.com
*Counsel for Defendant Adalytics Research, LLC*

# **VERIFICATION**

I, Krzysztof Franaszek, declare under penalty of perjury that I have read the foregoing Answers to Interrogatories, and that such Answers are true and correct to the best of my knowledge, information, and belief, and based upon the information available to me.

Executed on: September 16, 2026

*/s/ Krzysztof Franaszek* *
Krzysztof Franaszek

*Counsel hereby certifies that he has a signed copy of the foregoing document available for inspection at any time by the court or a party to this action.

**CERTIFICATE OF SERVICE**

I hereby certify that on this 16th day of September, 2026, a copy of the foregoing was served upon all counsel of record.

*/s/ Koushik Bhattacharya*
Koushik Bhattacharya