# EXHIBIT D

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

COLOSSUS MEDIA, LLC,

*Plaintiff,*

*v.*

ADALYTICS RESEARCH, LLC,

*Defendant.*

Case No. 8:24-cv-01402-DKC

**DECLARATION OF KEITH SMITH IN SUPPORT OF PLAINTIFF'S MOTION TO RECONSIDER**

I, Keith Smith, declare as follows:

1. I am the Co-Founder and President of Direct Digital Holdings, Inc. ("DRCT"), the parent company of Plaintiff Colossus Media, LLC ("Colossus"). I am familiar with Colossus' operations, customers, and business records. I am over eighteen years of age and competent to make this declaration. The statements in this declaration are based on my personal knowledge and on my review of business records of Colossus and DRCT maintained in the ordinary course of business. I previously submitted an affidavit in this action. ECF No. 68-12.

2. I submit this declaration in support of Colossus' Motion to Reconsider the Court's Order on the Parties' Protective Order and Defendant's Motion to Compel.

**Colossus' Business**

3. Colossus operates a supply-side platform ("SSP") that sells publishers' digital advertising inventory to demand-side platforms ("DSPs") and other buyers. Colossus has operated continuously throughout this litigation and continues to operate today. During the period relevant to this action, a substantial portion of Colossus' traffic reached DSPs, including The Trade Desk

and Google's Display & Video 360, through BidSwitch, Inc. ("BidSwitch"), an intermediary that connects SSPs with DSPs.

4. Colossus' arrangement with The Trade Desk was a deals-only arrangement transacted through BidSwitch, under which transactions were to be executed by reference to deal IDs. The technical details of that arrangement are addressed in the Declaration of Anu Pillai.

**Colossus' Highly Confidential Information**

5. In the course of its business, Colossus maintains, and the discovery the Court has compelled will require Colossus to produce, the following categories of information: (a) the identities of the publishers whose inventory Colossus sold and the commercial terms of those relationships; (b) the identities of the DSPs, agencies, and advertisers that purchased through Colossus, together with deal IDs, negotiated deal prices, and floor prices; (c) bid-level and log-level data reflecting specific auctions; (d) revenue, payment, and settlement information by partner; (e) the technical configuration of Colossus' integrations with BidSwitch and DSPs; and (f) Colossus' internal analyses and communications concerning its BidSwitch integration, BidSwitch's suspension of Colossus on May 10, 2024, and Colossus' relationship with The Trade Desk.

6. Colossus does not disclose this information publicly. Colossus maintains this information on highly secured servers, with access restricted to personnel who need it to perform their duties. Colossus' agreements with its publishers, buyers, and other counterparties contain strict confidentiality provisions, and Colossus treats the terms of those relationships, its pricing, and its technical configurations as confidential.

7. In my experience in the programmatic advertising industry, this information would be valuable to a competing SSP or to an intermediary that serves Colossus' former counterparties.

It would allow such a party to identify and solicit Colossus' publishers and buyers, to undercut Colossus' pricing, and to understand and replicate the structure of Colossus' integrations. Colossus' internal analyses of its BidSwitch integration and of BidSwitch's suspension of Colossus would also reveal Colossus' assessment of BidSwitch's conduct, which is at issue in this case.

**Criteo and BidSwitch**

8. BidSwitch is a subsidiary of Criteo S.A. ("Criteo"). Criteo also operates an SSP business, which it markets as Commerce Grid and which incorporates the MediaGrid SSP. Criteo's SSP business is a direct competitor of Colossus. Both are SSPs that compete to represent the same publishers' inventory and to win demand from the same DSPs.

9. Because Colossus continues to operate and to compete with Criteo's SSP business and other SSPs, the information described in paragraph 5 remains commercially sensitive today. Disclosure of Colossus' publisher and buyer relationships, pricing, and integration details to a competitor, or to an intermediary affiliated with a competitor, would harm Colossus' ability to retain and win business.

**Adalytics' Peer Reviewers**

10. I have reviewed the list of individuals that Adalytics identified, in its answer to Colossus' Interrogatory No. 1, as having received or been offered pre-publication access to drafts of the Report. That list includes personnel of Raptive (f/k/a CafeMedia), The Hershey Company, Haleon, Dentsu, LEGO (and formerly HP), SI Capital/Arena Group, and Aidem. In 2024, each of these companies was among Colossus' largest trading relationships. Raptive, for example, was a publisher partner through which Colossus' monthly volume reached approximately $6–7 million at its peak.

11. Although counsel for Adalytics corresponded with Colossus' counsel on May 8 and 9, 2024, Adalytics did not provide Colossus with the Report or any draft of it before publication. Before publication, Adalytics did not describe the Report's findings to Colossus and did not share any excerpt of the Report with Colossus.

**Google**

12. Colossus sold inventory to Google's demand-side platform through BidSwitch, in both open-auction OpenRTB transactions and deals. The technical details of that integration are addressed in the Declaration of Anu Pillai.

13. On January 17, 2024, Colossus received a generic automated report indicating that approximately $10.6 million in payments for Colossus' November 2023 Google transactions, which ran through BidSwitch, would be withheld. This was followed by a debit memo two weeks later on February 7, 2024 which was later than the normal process. Google did not pay BidSwitch, and BidSwitch did not pay Colossus. Neither the report nor the debit memo provided any explanation or supporting data beyond dollar amounts attributed to 6 publishers out of 25,000+ publishers, and neither referred to user IDs, buyer user IDs, or cookie matching. Colossus has made multiple requests to both Google and BidSwitch for the reason payment was withheld and, to this day, has received no explanation from either.

14. Colossus has not been paid any portion of the $10.6 million withheld.

15. Google never suspended its purchasing through Colossus, and Google never informed Colossus that it intended to do so.

16. After the withholding, Google's spend through Colossus increased by approximately 70%, as reflected in Colossus' business records of revenue by demand-side platform.

**Burden of Request Nos. 13 Through 15**

17. Responding to Request No. 13 as compelled would require Colossus to identify, collect, and review the internal communications of every current and former Colossus employee who may have discussed Google during the period September 30, 2023 through March 31, 2024, across email, Slack, Microsoft Teams, WhatsApp, iMessage, SMS, and Signal. Much of that material resides on employees' personal mobile devices and messaging accounts, which would require forensic collection by an outside vendor. Some of those individuals are former employees whose devices and accounts Colossus does not control. The request's subject matter (non-payment, short payment, clawbacks, refunds, policy violations, and invalid traffic) would sweep in routine billing, reconciliation, and account-management communications that have nothing to do with user IDs. Collection and review would impose substantial cost on Colossus and divert its limited personnel from operating the business.

18. Colossus' agreements with Google contain confidentiality provisions that restrict disclosure of the terms of the parties' relationship, including pricing, payment, settlement, and dispute information. Information concerning the withholding is confidential to both Colossus and Google, and producing it would require Colossus to comply with those provisions, including any notice to Google that they require.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on November 2, 2026, in Houston, Texas.

*/s/ Keith Smith*
Keith Smith
Co-Founder and President, Direct Digital Holdings, Inc.