**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| COLOSSUS MEDIA, LLC<br><br>*Plaintiff*<br>*v.*<br><br>ADALYTICS RESEARCH, LLC<br><br>*Defendant* | Case 8:24-cv-01402-DKC |

# DEFENDANT ADALYTICS RESEARCH, LLC'S OPPOSITION TO PLAINTIFF COLOSSUS MEDIA, LLC'S MOTION TO RECONSIDER THE COURT'S ORDER ON THE PARTIES' PROTECTIVE ORDER AND DEFENDANT'S MOTION TO COMPEL

**HUGHES HUBBARD & REED LLP**
Koushik Bhattacharya (Fed. Bar No. 16994)
James "Jake" Schaller (Fed. Bar No. 21081)
Hughes Hubbard & Reed LLP
1775 I Street, N.W., Sixth Floor
Washington, DC 20006-2401
Tel: (202) 721-4600
Facsimile: (202) 721-4646
Email: koushik.bhattacharya@hugheshubbard.com; jake.schaller@hugheshubbard.com

*Counsel for Defendant Adalytics Research, LLC*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .......... iii

INTRODUCTION .......... 1

LEGAL STANDARD .......... 6

ARGUMENT .......... 6

A. The Court Should Not Disturb the Protective Order It Entered .......... 6

1. The Relationship with BidSwitch Neither Brings Adalytics Into Direct Competition with Colossus, Nor Makes Dr. Franaszek a Competitive Decisionmaker .......... 8

2. Colossus Still Cannot Identify Particular and Specific Competitive Harm .......... 15

3. No Discovery Material Would Benefit BidSwitch, Criteo, or any SSP .......... 19

4. Colossus Should Not Be Permitted to Designate Third-Party Information Confidential .......... 20

B. The Court Properly Required Colossus to Provide Responses to Document Request Nos. 13, 14, and 15 .......... 21

1. Reply Exhibits Provide Sufficient Information .......... 22

2. Colossus' Attempt to Draw a Distinction Fails .......... 23

CONCLUSION .......... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*BioConvergence*, *LLC v. Emergent Biosolutions, Inc.*,
No. 1:21-cv-01959-CCB, 2023 WL 3866411 (D. Md. June 7, 2023) .................................... 15

*Carr v. Double T Diner*,
No. WMN-10-CV-00230, 2010 WL 3522428 (D. Md. Sept. 8, 2010) .................................. 22

*Cezair v. JPMorgan Chase Bank, N.A.*,
No. DKC-13-2928, 2014 WL 4955535 (D. Md. Sept. 30, 2014) ............................................. 6

*M-Edge Accessories LLC v. Amazon.com Inc.*,
No. 11-cv-3332-MJG, 2013 WL 12241898 (D. Md. May 14, 2013) ................................. 7, 10

*Stanislaus Food Prods. Co. v. USS-POSCO Indus.*,
No. 1:09-cv-00560-LJO-BAM, 2012 WL 6160468 (E.D. Cal. Dec. 11, 2012) ...................... 14

*Tomahawk Mfg., Inc. v. Spherical Indus., Inc.*,
344 F.R.D. 468 (D. Nev. 2023) ......................................................................................... 12, 13

*U.S. Steel Corp. v. United States*,
730 F.2d 1465 (Fed. Cir. 1984) ............................................................................................... 10

*Univ. of Va. Patent Found. v. Gen. Elec. Co.*,
No. 3:14-cv-51, 2015 WL 7431412 (W.D. Va. Nov. 20, 2015) ....................................... 13, 14

**Statutes and Rules**

Fed. R. Civ. P. 26 ......................................................................................................................... 6

Fed. R. Civ. P. 54 ......................................................................................................................... 6

Fed. R. Civ. P. 54(b) ..................................................................................................................... 6

**Others/ Miscellaneous**

https://blog.bidswitch.com/bidswitch-partners-with-adalytics-to-strengthen-
media-quality-for-supply-partners ........................................................................................... 9

Defendant Adalytics Research, LLC ("Defendant" or "Adalytics"), by and through undersigned counsel, hereby files this Opposition to the Motion to Reconsider the Court's Order on the Parties' Protective Order and Defendant's Motion to Compel ("Motion to Reconsider"), filed by Plaintiff Colossus Media, LLC ("Plaintiff" or "Colossus").

## INTRODUCTION[1]

Colossus' Motion to Reconsider fails to provide a basis for the Court to alter its October 19, 2026 Memorandum Opinion (ECF No. 72) and Order (ECF No. 73). The purported "new evidence" Colossus presents does not, upon even minor scrutiny, establish a direct competitive link between Colossus and Adalytics; and Colossus fails to establish any realistic possibility of harm that could befall Colossus should the Court leave undisturbed its ruling permitting Adalytics' Dr. Krzysztof Franaszek to view discovery material designated "Highly Confidential." In addition, the distinction Colossus attempts to draw with respect to Adalytics' Google-related requests is a distinction without a difference, and the documents sought by Adalytics are clearly relevant and necessary to support its defenses in this case.

That the Motion to Reconsider lacks merit and should be denied is unsurprising. It seems clear that Colossus filed the motion not to secure some significant victory in discovery or to protect vital information, but to multiply the proceedings, force Adalytics to incur additional legal fees, and further delay the resolution of a case that continues to crumble with every third-party production that is made.[2] Indeed, it is amusing that Colossus opens its Motion to Reconsider by

---

[1] References to "Ex." refer to the exhibits attached to the Declaration of James Schaller ("Schaller Decl."), dated November 16, 2026, which was filed in support of Adalytics' Opposition to the Motion to Reconsider.

[2] Perhaps not coincidentally, less than 12 hours after filing the Motion to Reconsider on November 2, 2026, Colossus' counsel emailed counsel for Adalytics to indicate that Colossus was "in the process of transitioning this matter to new counsel," and requested an extension of deadlines in the case. *See* Ex. A. Adalytics, in its response (ECF No. 77) to Colossus' Motion to Extend Remaining

stating that the Court's two rulings at issue in the motion "rest on premises that the record, as it now stands, does not support." Motion to Reconsider, at 1. Because the record, as it now stands, does not support the foundational allegations in Colossus' Amended Complaint.

For instance, Colossus' allegations that the Adalytics Report was the proximate cause of the harm Colossus purportedly suffered have been shown to be entirely without merit. Colossus alleged that, on May 9, 2024, The Trade Desk ("TTD") "suspended business with Colossus SSP ***because of*** the [Adalytics Report's] claims that Colossus SSP misrepresented user IDs in its bid requests." Am. Compl. (ECF No. 9), at ¶ 43 (emphasis added). But documents produced in discovery – including ***by Colossus*** – disprove that assertion. [redacted]

Similarly, Colossus alleged that "BidSwitch suspended Colossus SSP from trading through its platform ***because of the claims made in the Adalytics post***." Am. Compl. ¶ 44 (emphasis added). And in its Opposition to Adalytics' Motion to Compel (ECF No. 68-10), Colossus claimed BidSwitch "cut off Colossus immediately, ***citing a reference to Adalytics' Post***." Opposition to

---

Case Deadlines (ECF No. 76), addressed Colossus' various actions that have delayed this case. *See* Opposition, at ¶ 2, incorporated herein by reference. Notably, despite Colossus' current counsel's assertion on Nov. 3, 2026 that it was in the process of transferring the matter to new counsel and its claim eight days later (Nov. 11, 2026) that it was "coordinating with incoming counsel, who, as you know, is in the process of transitioning into this matter" (*see* Ex. B), new counsel has not yet entered an appearance for Colossus.

Adalytics' Motion to Compel, at p. 6 (emphasis added). [redacted]

In addition, while Colossus claimed that "on May 9, 2024, Basis suspended business with Colossus ***because of the Report's claims*** that Colossus misrepresented user IDs in its bid requests" (Ex. O (Colossus' Revised Answers to Interrogatories), at 15), this is not true either. [redacted]

Colossus' allegations that the Adalytics Report "accus[ed] Colossus SSP of engaging in fraudulent activity," are incorrect. The Report never made such allegations. Rather, Adalytics wrote that, for Colossus SSP, "the majority of observed impressions had a mis-match between the declared 'tdid=' query string parameter and the actual .adsrvr.org TDID user ID in the user's

[3] The BidSwitch email (Ex. D) was produced by BidSwitch, not Colossus, even though the email was responsive to Adalytics' requests to Colossus. Furthermore, Colossus moved to quash the subpoena Adalytics served on BidSwitch. Such motion was denied, and BidSwitch then produced this email.

chrome browser storage." Ex. G (the Adalytics Report), at 20. Adalytics did not state that Colossus was responsible for the mismatch or that Colossus affirmatively caused it. Rather, it merely observed that the majority of impressions "had a mis-match." In addition, Adalytics stated in the "Caveats & limitations" section of its conclusion that:

> This observational study makes no assertions with regards to the actual knowledge or intent of any parties observed or cited in this study. The study cannot comment on whether any phenomenon, such as apparent mis-matches in various user ID related code parameters, were engineered for some specific reason. It is ostensibly possible that any such mis-matches were due to valid ad serving behavior or due to new advances in user ID targeting technologies.

Ex. G to Schaller Decl. at 30.

Finally, and perhaps most importantly, the baseline allegation upon which Colossus built its entire lawsuit – that the Adalytics Report made false statements – also has been shown to be incorrect. [redacted]

Moreover, Colossus' ***own expert*** [redacted]

[redacted]

[redacted]

> [redacted]

[redacted]

Colossus may argue that these points are more appropriate for a summary judgment motion (and, indeed, they will be front and center when Adalytics brings such motion). But they are also relevant here as the baseline reasoning behind Colossus' argument to prevent Dr. Franaszek from seeing "Highly Confidential" material is that because he (purportedly) made false statements about Colossus in the Adalytics Report – "with actual malice" (Am. Compl. ¶ 58) – he necessarily would violate the protective order in this case to use highly confidential information with the intent of harming Colossus again. As Colossus has not – and cannot – support its allegations in its Amended Complaint, its suggestion that Dr. Franaszek necessarily would misuse highly confidential information in violation of the protective order has no basis in fact or reality.

In short, the Court's decisions on the protective order and the Google-related requests for production of documents were correct and should not be disturbed. The Court should deny Colossus' Motion to Reconsider.

## LEGAL STANDARD

"It is well-established that the appropriate Rule under which to file motions for reconsideration of an interlocutory order is [Fed. R. Civ. P.] 54(b)." *Cezair v. JPMorgan Chase Bank, N.A.*, No. DKC-13-2928, 2014 WL 4955535, at *1 (D. Md. Sept. 30, 2014). In dealing with motions for reconsideration under Fed. R. Civ. P. 54, "[m]ost courts have adhered to a fairly narrow set of grounds on which to reconsider their interlocutory orders and opinions." *Id.* (citations omitted). They reconsider such orders only when: "(1) there has been an intervening change in controlling law; (2) there is additional evidence that was not previously available; or (3) the prior decision was based on clear error or would work manifest injustice." *Id.* (citations and internal quotation marks omitted).

Colossus has not identified any intervening change in controlling law and, despite its bald claim in its Motion, it has not shown the Court made a clear error or that the Court's order would work manifest injustice. Indeed, the Court properly used the relevance and proportionality framework set by Fed. R. Civ. P. 26 to resolve Adalytics' motion to compel, carefully narrowing certain portions of the discovery. Colossus' Motion to Reconsider, therefore, asks the Court to reverse holdings precisely because Colossus believes a different evidentiary inference should be drawn: that a research relationship necessarily entails competitive decision making, and that the Google-related events must have an innocent explanation. Those are merits and factual disputes, not legal errors. Rule 54(b) does not authorize reconsideration on those bases.

## ARGUMENT

### A. The Court Should Not Disturb the Protective Order It Entered

In its Motion to Reconsider, Colossus acknowledges that "the Court permitted Dr. Krzysztof Franaszek to review Colossus' 'Highly Confidential' material because Adalytics and Colossus are not direct competitors and because Colossus had not identified a concrete way in

which disclosure to Dr. Franaszek would cause it harm." Motion to Reconsider, at 1 (citing ECF No. 72, at 21-23). This is correct, and nothing Colossus presents to update the record changes either of the Court's bases for its decision. Yes, BidSwitch announced a relationship with Adalytics in September of 2026. But that relationship neither creates a competitive relationship between Colossus and Adalytics nor establishes a concrete way in which Colossus would be harmed by the disclosure of "Highly Confidential" discovery material to Dr. Franaszek. Even if the Adalytics-BidSwitch relationship transformed Dr. Franaszek into a competitive decisionmaker (and it did not), Colossus has not manufactured (and cannot manufacture) any direct (or even indirect) competitive relationship between Colossus and Adalytics. And even if it could, any discovery material produced in this case would be irrelevant to the relationship between Adalytics and BidSwitch.

As the Court noted in its Opinion (ECF No. 72) (hereinafter, "Opinion"), its decision as to whether Dr. Franaszek could have access to highly confidential materials hinges on a balance of (a) the risk that trade secrets may be inadvertently disclosed to competitors against (b) the risk that the protection of such trade secrets will prejudice the other party's ability to defend the action. Opinion, at 18. At the center of such balancing is an evaluation of "whether an individual is involved in competitive decisionmaking." *Id.*, at 19. And the Court noted that "[i]nvolvement in competitive decisionmaking amounts to 'advice and participation in any or all of the [party's] decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor.'" *Id.* (quoting *M-Edge Accessories LLC v. Amazon.com Inc.*, No. 11-cv-3332-MJG, 2013 WL 12241898, at *3 (D. Md. May 14, 2013) (citations omitted)). Colossus, as the party resisting access, bore the burden of proving the competitive harm it would suffer if the material

was disclosed. Opinion, at 19-20. Adalytics, as the party seeking unrestricted access, was required to show the disclosure was relevant and necessary to the action. *Id.*, at 20.

The Court found that "[t]he competitive decisionmaker inquiry does not favor Colossus because of the absence of a direct competitive relationship between the parties" (Opinion, at 21), and that Colossus' asserted harms were "conclusory[.]" *Id.* at 23. The relationship between Adalytics and BidSwitch does nothing to change either determination. And despite Colossus' use of tenuously linked relationships, inaccurate information, and unsupported allegations, it cannot manufacture direct competition or harm.

**1. The Relationship with BidSwitch Neither Brings Adalytics Into Direct Competition with Colossus, Nor Makes Dr. Franaszek a Competitive Decisionmaker**

With respect to the BidSwitch-Adalytics partnership, Colossus strings together vague pronouncements and makes unsupported (and untenable) logical leaps to claim that "Dr. Franaszek is working with a direct competitor to Colossus and is admittedly sharing data with that direct competitor." Motion to Reconsider, at 1. As will be explained, this is simply untrue, because Colossus cannot establish that the BidSwitch-Adalytics partnership makes Adalytics (or BidSwitch) a direct competitor of Colossus. Furthermore, Colossus has not identified any evidence that Dr. Franaszek provides any information to Criteo's entirely separate SSP subsidiary business unit (he does not) – let alone that he makes decisions regarding that legally separate SSP's pricing, technology, customer relationships, or strategy.

As a preliminary matter, the September 9, 2026 Adalytics-BidSwitch announcement (*see* Exhibit A to Motion to Reconsider) post-dated Adalytics' Reply in support of its Motion to Compel (served September 2, 2026), so it was not intentionally hidden or left out of briefing. A subsequent event cannot show that the Court erred when it decided the issue on the record then available.

Furthermore, Colossus' assertion that Adalytics' discovery responses – specifically its initial response to Interrogatory No. 11[4] – should "give this Court pause," is meritless.

It is true that in Adalytics' initial Answers to Interrogatories it did not mention the Adalytics-BidSwitch partnership in its answer to Interrogatory No. 11. But that is because Adalytics did not consider the partnership to be responsive. After counsel for Colossus and counsel for Adalytics discussed the partnership in a meet-and-confer, however, Adalytics provided the following revised answer to Interrogatory No. 11 in its Revised Answers to Interrogatories (served on October 28, 2026): "While Adalytics does not consider this to be a payment, compensation, consideration, retainer, consulting fee, grant, subscription, or thing of value, Adalytics notes that it established an unpaid, pro bono partnership with BidSwitch in September of 2026. *See* https://blog.bidswitch.com/bidswitch-partners-with-adalytics-to-strengthen-media-quality-for-supply-partners." *See* Ex. E, Adalytics' Revised Answers to Interrogatories, at 28. Notably, Adalytics served its Revised Answers to Interrogatories on Colossus five days ***before*** Colossus filed its Motion to Reconsider – yet Colossus did not reference them in its motion. Instead, Colossus referenced only the ***original*** answers in an effort to disparage Adalytics before the Court. If anything, ***that*** is what should give the Court pause.

More fundamentally, however, the announcement of the Adalytics-BidSwitch relationship does not establish facts that would require the Court to alter its ruling. In determining that Dr. Franaszek could view discovery material marked "Highly Confidential," the Court focused its analysis on competitive decision-making, defined as advice and participation in decisions such as

[4] Colossus' Interrogatory No. 11 is: "Identify any payment, compensation, consideration, retainer, consulting fee, grant, subscription, or thing of value that Adalytics received or was promised, directly or indirectly, from BidSwitch, Criteo, The Trade Desk, Armistice Capital Management, or any person holding a short position in Direct Digital Holdings, Inc. (NASDAQ: DRCT) securities, from January 1, 2023 to the present, and state the amount, date, and purpose of each."

pricing or product design made in light of comparable information about a competitor. *M-Edge*, 2013 WL 12241898, at *3 (quoting *U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1468 & n.3 (Fed. Cir. 1984)). As the Court stated in its Opinion, Colossus did not provide, "and the court has not identified, a case in this district – let alone circuit – where direct competition was not a requirement to prevent someone in a position like Dr. Franaszek's from accessing highly confidential information in an action like this one." Opinion, at 21-22.

In its Motion to Reconsider, Colossus failed to demonstrate (and, indeed, it cannot demonstrate) that Dr. Franaszek makes, advises on, or participates in any competitive decision making for a Colossus competitor. Colossus' theory is premised upon multiple inferential steps: Adalytics has a research agreement with BidSwitch; BidSwitch is a subsidiary of Criteo; Criteo operates a separate SSP that competes with Colossus; thus, Adalytics is working for that separate SSP. That is a logical road to nowhere. It does not make Adalytics a competitor with Colossus; and it certainly does not make Adalytics' principal, Dr. Franaszek, a competitive decisionmaker.

The SSP with which Colossus allegedly competes is an entirely separate entity from BidSwitch. Adalytics' partnership is with BidSwitch – not the SSP, and not even Criteo, the shared parent company. Colossus attempts to muddy the analysis of the entities and their relationships by discussing how BidSwitch is a "'middle-layer vendor' through which Colossus transacted with The Trade Desk," and that Adalytics listed BidSwitch personnel as potential witnesses in this case. *See* Motion to Reconsider, at 4. But none of this establishes any sort of direct competition.[5] Colossus' claim that Dr. Franaszek "designs the product his commercial partner sells to Colossus'

[5] Curiously, Colossus states that it "has also maintained that BidSwitch, The Trade Desk, and Basis bear responsibility for its losses, a position the Court has already noted. ECF No. 72 at 11." Motion to Reconsider, at 4. Given this position, it must be asked – especially considering what discovery has revealed to date: Why is Colossus suing Adalytics rather than the companies that bear responsibility for its losses?

former customers and competitors" (Motion to Reconsider, at 5) is unsupported and makes no sense. Colossus does not explain the "product" Dr. Franaszek is purportedly designing; how a company with which he has no direct interaction is his "commercial partner"; who the former customers and competitors are to whom the "product" is allegedly being sold; or why any of this is relevant.

Colossus' strategy is to string together disconnected, tangentially relevant statements in the hope that it will kick up enough dirt to elicit a favorable ruling. For instance, Colossus links the following three statements: (1) "the Report held up Criteo's own SSP as a favorable comparator to Colossus"; (2) Criteo's intermediary, "BidSwitch, suspended all Colossus trading the day the Report was published"; and (3) "Criteo's subsidiary has now entered a 'data sharing' partnership with the Report's author, announced through Criteo's own public- and investor-relations contacts." Motion to Reconsider, at 6. This is a chain of *non sequiturs*. First, the Adalytics Report mentioned ***sixteen*** SSPs, including Colossus and Criteo's subsidiary. Second, as noted above, [redacted] And third, Criteo's subsidiary, BidSwitch, is an entirely separate entity from Criteo's SSP and – saliently – in moving to quash Adalytics' subpoena to BidSwitch (and Basis), Colossus referred to BidSwitch as one of its "close business partners." Memorandum in Support of Motion to Quash (ECF No. 59-1), at 1. BidSwitch cannot be a "business partner" of Colossus when Colossus is trying to stop

BidSwitch from providing information relevant to Adalytics' defense in this case, and then a "competitor" when Colossus is trying to shield information from Adalytics' principal.[6]

Dr. Franaszek does not have any authority to make commercial decisions on behalf of BidSwitch or Criteo, and certainly not Criteo's separate SSP. *See* Declaration of Dr. Krzysztof Franaszek ("Franaszek Decl."), at ¶ 4. He does not make or participate in decisions related to pricing or product for BidSwitch, Criteo, or any of their affiliates. *Id.*, at ¶ 6. And he does not design any "products" for BidSwitch, Criteo, or any of their affiliates. *Id.*, at ¶ 7.

In addition, the cases Colossus cites (in which protective orders were issued) do not present "similar situations" to the instant case, as Colossus claims. Motion to Reconsider, at 5. And none of the cases supports Colossus' request that the Court revise its decision and forbid Dr. Franaszek from accessing discovery material labeled "Highly Confidential." *Tomahawk Mfg., Inc. v. Spherical Indus., Inc.*, 344 F.R.D. 468, 473–74 (D. Nev. 2023), involved a lawsuit by a company against a competitor for trade secret misappropriation and the request for a blanket protective order restricting the company's former employees from accessing sensitive material as litigation consultants. Here, there is no discernible competitive relationship between any of the parties. Colossus does not compete directly with Adalytics (as the Court already has found); it does not compete with BidSwitch (indeed, Colossus referred to BidSwitch as one of its "close business partners"); and to the extent that it competes with a company that is owned by the same parent company that owns BidSwitch, that company and BidSwitch are entirely separate entities. In addition, at the time of the decision regarding the protective order in *Tomahawk*, the court already had granted a motion for temporary restraining order (which it later converted to a preliminary

[6] This duplicity further underscores that Colossus' goal here is simply to deny Adalytics and its lone member relevant and potentially case-dispositive information.

injunction), finding that the plaintiffs were likely to prevail on their trade secret misappropriation claims that their former employees unlawfully funneled trade secret information to the defendants, who then sought to exploit the information. *Tomahawk*, 344 F.R.D. at 471. There is nothing remotely similar to that here, where Adalytics simply posted a report that discussed publicly available data (and utilized feedback from third parties) and did not use any proprietary or internal data in its published report. Colossus can point to no evidence that Dr. Franaszek has used or even accessed any confidential or proprietary data that would create any cause for concern.[7]

Colossus also cites *Univ. of Va. Patent Found. v. Gen. Elec. Co.*, No. 3:14-cv-51, 2015 WL 7431412, at *4 (W.D. Va. Nov. 20, 2015), but it presents a selectively excerpted quotation from the case when the full context of the cited material actually supports Adalytics. Colossus states that "in *Univ. of Va. Patent Found.*, the Western District of Virginia concluded that 'an ongoing consulting relationship with a competitor,' as here, 'presents a high risk of [] disclosure.' 2015 WL 7431412, at *4." Motion to Reconsider, at 5-6. The full context of the Western District of Virginia's statement is as follows: "Generally, an ongoing consulting relationship with a competitor presents a high risk of inadvertent disclosure, while a past or attenuated relationship does not." *Univ. of Va. Patent Found.*, 2015 WL 7431412, at *4. Here, as explained above, Dr. Franaszek has a relationship not with a competitor of Colossus but with – according to Colossus – one of its ***partners***. Furthermore, any attempt to connect Adalytics to Criteo's SSP via Adalytics'

---

[7] Colossus attempts to manufacture the appearance of impropriety by comparing a line from the Report ("The study relied entirely upon publicly accessible or available data; it made use of no proprietary or internal data on how ads are placed or paid for.") with Adalytics' answer to a Request for Admission (stating that, subject to objections to the Request, it "denie[d] that it relied solely upon public sources in preparing the Report."). There is a simple explanation for this. The final Report published by Adalytics discusses only observations and data that were collected from public sources. However, ***in preparing*** the Report, Adalytics received input from various third parties and had conversations with various individuals in the digital marketing space, including peer reviewers of the report draft.

partnership with BidSwitch is – at best – an ***extremely*** attenuated relationship that would not present a high risk of inadvertent disclosure under *Univ. of Va. Patent Found*.

In addition, unlike in *Stanislaus Food Prods. Co. v. USS-POSCO Indus.*, No. 1:09-cv-00560-LJO-BAM, 2012 WL 6160468 (E.D. Cal. Dec. 11, 2012), there is no non-party in the instant case with interests adverse to Colossus that will have access to the discovery materials (which, again, will be subject to a protective order). *Stanislaus*, 2012 WL 6160468, at *5. Further, unlike in *Stanislaus*, Colossus has not identified any particular document request made by Adalytics or any particular documents responsive to any document requests that require the "Highly Confidential" designation and protection. *Id.* at *6. To the contrary, Colossus uses broad, general terms in discussing – and exaggerating – what it must produce in discovery.

For instance, in the Declaration of Keith Smith in Support of Plaintiff's Motion to Reconsider ("Smith Decl."), Mr. Smith, the Co-Founder and President of Direct Digital Holdings, Inc. ("DRCT"), the parent company of Colossus, states:

> In the course of its business, Colossus maintains, and the discovery the Court has compelled will require Colossus to produce, the following categories of information: (a) the identities of the publishers whose inventory Colossus sold and the commercial terms of those relationships; (b) the identities of the DSPs, agencies, and advertisers that purchased through Colossus, together with deal IDs, negotiated deal prices, and floor prices; (c) bid-level and loglevel data reflecting specific auctions; (d) revenue, payment, and settlement information by partner; (e) the technical configuration of Colossus' integrations with BidSwitch and DSPs; and (f) Colossus' internal analyses and communications concerning its BidSwitch integration, BidSwitch's suspension of Colossus on May 10, 2024, and Colossus' relationship with The Trade Desk.

Smith Decl., at ¶ 5. Yet, in reality, Adalytics' discovery requests do not seek (and the Court's Opinion and Order on Adalytics' Motion to Compel did not compel) production of a publisher list, publisher contracts, or their commercial terms; or customer lists, deal IDs, negotiated deal prices, or floor prices. In addition, while Adalytics requested documents relating to the technical configuration of Colossus' integrations with BidSwitch and DSPs (*see* Request Nos. 2 and 3), the

Court determined Colossus did not have to produce source code responsive to Request No. 2, and it narrowed Request No. 3 such that it related specifically to ***communications*** about problems or concerns with Colossus' bid requests and specified ID, cookie-sync, partner-ID, and auction-type issues. ECF No. 72, at 7-13.

Adalytics is not seeking deal prices or floor prices; the Court has indicated it is not (at least at this time) entitled to Colossus' source code; and, according to Colossus' expert, [redacted]

Thus, little of what Colossus will produce should even merit a "Highly Confidential" designation.

In short, the Adalytics-BidSwitch partnership provides no basis for the Court to reconsider and reverse its decision that the Protective Order in this case should permit Dr. Franaszek to review "Highly Confidential" material.

**2. Colossus Still Cannot Identify Particular and Specific Competitive Harm**

The Court found that Colossus' claims about the potential harm it would suffer if Dr. Franaszek was given access to "Highly Confidential" material did not "amount to the required 'particular and specific demonstration[s] of fact, as distinguished from stereotyped and conclusory statements.'" Opinion, at 22-23 (quoting *BioConvergence*, *LLC v. Emergent Biosolutions, Inc.*, No. 1:21-cv-01959-CCB, 2023 WL 3866411, at *2 (D. Md. June 7, 2023) (citations omitted)). Colossus fares no better in its Motion to Reconsider.

**The Information at Stake:** Adalytics has requested Colossus' communications with The Trade Desk, BidSwitch, and Basis, and for good reason. Colossus has alleged that:

- The Trade Desk "suspended business with Colossus SSP ***because of*** the post's claims that Colossus SSP misrepresented user IDs in its bid requests." Am. Compl., at ¶ 43 (emphasis added);
- BidSwitch "cut off Colossus immediately, ***citing a reference to Adalytics' Post***." Opposition to Adalytics' Motion to Compel, at 6 (emphasis added); and
- "Basis suspended business with Colossus ***because of*** the Report's claims that Colossus misrepresented user IDs in its bid requests." Revised Answer to Interrogatory No. 13 (emphasis added).

Given these allegations, one would expect that Colossus would be ***rushing*** to produce the communications that support them. Instead, Colossus has slow-rolled production and even moved to quash Adalytics' third-party subpoenas to Basis and BidSwitch (ECF No. 59). Furthermore, if – as Colossus has alleged – it "does not mis-declare or otherwise manipulate or alter user IDs in its bid requests" (Am. Compl., at ¶ 26), the information Adalytics has requested would support that statement.

**Purported Concrete Harm 1:** Colossus' first purported "concrete" harm is that Dr. Franaszek might use information gathered in discovery to "frame a new or revised publication, or a BidSwitch 'alert,' about Colossus or its clients." Motion to Reconsider, at 10. First, this assumes Dr. Franaszek would violate the terms of the protective order. Second, this purported harm is based upon the allegation that Adalytics made false statements about Colossus in its initial Report which – given the third-party discovery addressed above – is baseless. In addition, Colossus' claim that Dr. Franaszek "already has" published an article using "non-public information" is yet another example of Colossus twisting the facts to disparage Adalytics and, furthermore, is untrue as explained *supra*, at n. 7. Similarly, Colossus states that "Adalytics has also told this Court the

Report 'concerned data from as early as 2022,' ECF No. 72 at 5 (quoting ECF No. 68-2 at 9), a dataset the Report itself does not describe." Motion to Reconsider, at 9 n.1. As counsel for Adalytics explained to counsel for Colossus numerous times during the parties' meet-and-confer discussions, there is a difference between the data observed and analyzed and the specific impressions that were referenced in the report.

In addition, and saliently, given Colossus has professed that it cannot mis-declare user IDs and that, in this lawsuit, it has accused Adalytics of defaming it by claiming to have observed such mis-declarations, Colossus should welcome BidSwitch and other third parties seeing any exculpatory information that proves Colossus' case and disproves the Adalytics Report. Colossus has identified none.

**Purported Concrete Harm 2:** This supposed "concrete" harm also depends upon Dr. Franaszek willfully disregarding the terms of the Protective Order entered in this case. Also, while Colossus continues to lament that it "was not given a draft" of the Report before its publication, Adalytics offered – before publication and after – to review any evidence Colossus had that disproved any statement in the Adalytics Report and then to revise the Report accordingly. Specifically, Adalytics requested the HTTP Archive (.har) files that counsel for Colossus initially offered to provide to Adalytics' General Counsel, Jonathan Lee, on May 10, 2024, as evidence of purported errors in the Adalytics Report. Colossus, however, failed to turn the files over (despite repeated requests from Adalytics) and initially objected to turning them over in discovery before finally producing them. Franaszek Decl., at ¶¶ 8-10.

Finally, as stated above, the "deal information" Colossus claims it would have to turn over in discovery is not responsive to any of Adalytics' actual discovery requests.

**Purported Concrete Harm 3:** Colossus claims that Dr. Franaszek could give Highly Confidential information to BidSwitch, "an adverse non-party" and "an entity Colossus contends is responsible for its losses." That assertion is untenable. Putting aside that this possible harm, like the first two, depends upon Dr. Franaszek willfully violating the protective order, calling BidSwitch "an adverse non-party" is diametrically opposed to Colossus' position in its motion to quash subpoenas to BidSwitch and Basis when Colossus called BidSwitch and Basis "close business partners." Furthermore, if BidSwitch is responsible for its losses, why has Colossus dragged Adalytics through years of litigation?

**Dr. Franaszek Should Be Permitted to Review the Material:** Dr. Franaszek is Adalytics' sole member and the person who collected the data and performed the research and analysis that supported the Report. That is why he is uniquely qualified to review discovery material produced in this case. He also is entitled, from a practical perspective, to review the information that purportedly supports Colossus' claims against him and Adalytics.[8] Furthermore, the fact Adalytics plans to qualify him as a hybrid fact/expert witness does not "heighten[] the risk" of his reviewing "Highly Confidential" material as Colossus baldly claims.

Colossus claims that "[h]ad Adalytics proposed an outside expert who was in a current data-sharing partnership with a subsidiary of Colossus' competitor, Colossus could have objected, and the expert would ordinarily be barred from receiving Colossus' most sensitive information." Motion to Reconsider, at 11. But that does not accurately describe the relationship. Dr. Franaszek is not in a data-sharing partnership with a subsidiary of Colossus' competitor. He is in a data-

[8] Colossus' suggestion that Adalytics just hire a technical expert to do the work that Dr. Franaszek easily could do himself (and, in large part, already has done), is another effort by Colossus to drive up Adalytics' costs in this matter.

sharing partnership with an entity whose parent company has a separate subsidiary (with whom Dr. Franaszek has no direct connection) that competes with Colossus.

Moreover, ***Colossus already has shared with BidSwitch for years exactly the kind of information it now claims would harm it if Dr. Franaszek violated the Protective Order***. Colossus' Exhibit G to its Motion to Reconsider is a June 15, 2023 press release in which Criteo announced the launch of its SSP, Commerce Grid. While Colossus now claims Commerce Grid is a competitor and attempts to link the SSP to Adalytics through Adalytics' relationship with BidSwitch, Colossus worked with BidSwitch, including after Criteo's acquisition of IPONWEB and its launch of Commerce Grid (and despite the existence of Media Grid) and during that time provided BidSwitch information that it now laments could be in the hands of Dr. Franaszek. If the information was not potentially damaging to Colossus when it was sharing it directly with BidSwitch, it is hard to imagine how the same information in the hands of someone who is merely BidSwitch's partner – and subject to a protective order – represents a concrete harm.

**3. No Discovery Material Would Benefit BidSwitch, Criteo, or any SSP**

Finally, as a practical matter, the documents responsive to the requests Adalytics propounded on Colossus[9] are specifically tied to the central issue in this case – user ID mismatches and the proximate cause of Colossus' purported harm, including business losses. As such, nothing that Colossus produces in response to Adalytics' requests – whether "Highly Confidential" or not – would provide any commercial benefit to BidSwitch, Criteo, or any other ad supply side platform. The documents that show Colossus' purported damages and the records that reveal user ID mismatches have no strategic, intellectual property, or commercial value to BidSwitch.

[9] The requests were served on April 29, 2026 – more than six months ago. To date Colossus has produced only a fraction of the documents responsive to the requests, despite the Court granting most of Adalytics' Motion to Compel.

### 4. Colossus Should Not Be Permitted to Designate Third-Party Information Confidential

Adalytics' position regarding whether Colossus can designate material produced by non-parties to this litigation as "Confidential" or "Highly Confidential" is not "unjustified," as Colossus claims. Motion to Reconsider, at 12. To date, Colossus has (1) attempted to block third-party discovery with a meritless motion to quash; (2) stonewalled on discovery, forcing Adalytics to file a motion to compel; and (3) fought to keep Adalytics' lone member from viewing key discovery material. Such tactics not only forced Adalytics to incur unnecessary fees but also delayed Adalytics' defense of this case. Requesting the ability to designate material in the possession of third parties as "Confidential" or "Highly Confidential" appears to be another tactic to delay the case and – should the Court reverse its decision on whether Dr. Franaszek can view "Highly Confidential" material – keep important and possibly exculpatory information out of the hands of Adalytics' sole member.

Adalytics is unaware of any authority – and Colossus cited to none – that provides Colossus the ability to review a third party's production and designate the material prior to Adalytics' use of such material. Adalytics of course has no issue with third parties designating material it produces as "Confidential" or "Highly Confidential" and, indeed, third parties in the instant litigation – including BidSwitch – waited to produce material until the Court had entered a protective order so they could designate documents accordingly. And if any third party has material that is subject to a non-disclosure agreement with Colossus, such party would have the ability (and, indeed, obligation) to designate documents properly. But providing Colossus a blanket ability to delay review of discovery so it can determine if material ***already in the hands of a non-party*** constitutes Colossus' confidential material is not something with which Adalytics can agree.

## B. The Court Properly Required Colossus to Provide Responses to Document Request Nos. 13, 14, and 15

Colossus' description of Adalytics' requests for production of documents relating to Google as "far-afield" defies common sense. The requests (recited in full in the Court's Opinion, at 13 nn.7-9) all seek information relating to, *inter alia*, user ID and cookie mismatches and non-payment, short payment, claw backs, etc. relating to Google. Such information is extremely relevant to several of Adalytics' defenses in this case. First, as to the damages Colossus claims it has suffered – both monetarily and reputationally – because of Adalytics' Report, evidence that Google withheld millions of dollars from Colossus in the months before the Report was published is squarely relevant. Second, the Report describes user ID mismatches that were observed, and Colossus has claimed it does not (and cannot) misidentify user IDs; evidence that Google's demand-side platform observed the same phenomenon bears directly on the falsity of that claim.

As for Colossus' complaint that the Court "lift[ed] for these requests alone, the 'relevant entities' limitation it had thoughtfully imposed on all of Adalytics' other requests" (Motion to Reconsider, at 13), such limitation was made for requests that sought information relating to "a host of entities – some that aren't even contemplated by name." Opinion, at 7. Request Nos. 13-15, of course, concern only one third-party entity – Google. The Court specifically stated in its first sentence on the three Google document requests: "These three requests each implicate Google and responses to all will be required; ***the relevant entity modifications described above will not be imposed as to these document requests***." Opinion at 13 (emphasis added). So there was not any mistake or oversight in not applying the relevant entity distinction to these three requests; the Court specifically carved out these requests from that general limitation. Nor did the Court decline, in ruling on other Requests, to require production of Colossus' communications ***with*** Google: Request No. 19 was denied as largely duplicative of Request No. 3 (Opinion, at 10), and the

"relevant entities" limitation on Request Nos. 3 and 9 addressed their open-ended scope, not the relevance showing the Court found for the Google Requests. While Colossus states that Request No. 9, which the Court subjected to the "relevant entities" limitation, "expressly named Google" (Motion to Reconsider, at 13, n.3), it also expressly named six other entities.

**1. Reply Exhibits Provide Sufficient Information**

"Courts broadly construe relevancy within the context of discovery to encompass any matter that bears or may bear on any issue that is or may be in the case." *Carr v. Double T Diner*, No. WMN-10-CV-00230, 2010 WL 3522428, at *2 (D. Md. Sept. 8, 2010) (citations omitted). Here, Adalytics clearly has established the relevance of the discovery it seeks relating to Google, as explained above. The fact that multiple trade publications referenced invalid traffic between Colossus and Google also makes the requests relevant, as does the fact that Colossus itself admits that "[o]n January 17, 2024, Colossus received what appeared to be a generic automated report indicating that approximately $10.6 million in payments for Colossus' November 2023 Google transactions, which ran through BidSwitch, would be withheld; a debit memo followed on February 7, 2024." Motion to Reconsider, at 14-15. Colossus attempts to discredit the published reports by noting that the sources of information were unnamed. The anonymity of a source does not defeat relevance, and Colossus merely posits competing explanations for the events described – confirming the need for discovery rather than showing it would be irrelevant.[10]

Colossus' complaint that it had no opportunity to respond to the reply exhibits fares no better. Adalytics attached those exhibits to answer Colossus' own contention that the Google

[10] [redacted]

requests were unrelated to any claim or defense (*see* Opinion, at 13), and Colossus has now had a full opportunity to address them. Nothing in its Motion shows that the Court's "colorable" relevancy determination was clear error. Colossus' further argument relating to the exhibits – that it has not received an explanation regarding the $10.6 million debit – is implausible but, if true, Colossus can so state in its response; it does not make the requests irrelevant.[11]

**2. Colossus' Attempt to Draw a Distinction Fails**

Colossus seeks to draw a distinction between the user ID mismatches described in the Report and mismatches with Google. It states that the Report analyzed transactions by Colossus with The Trade Desk through BidSwitch but did not analyze impressions between Colossus and Google. But the issue Adalytics addressed in the Report was user ID mismatches as a general matter – the ones described in the report happened to be in the context of The Trade Desk. That Google's demand-side platform did not use Trade Desk user IDs is a distinction without a difference. The "phenomenon" that Adalytics identified was mis-declarations of declared user IDs. Indeed, the Report explains that The Trade Desk "was used for the purposes of this digital forensics analysis purely because Trade Desk mediated bid responses and ad creative source code are relatively straightforward to parse and analyze," and describes its data as "a convenience sample of data that was readily obtainable." Motion to Reconsider, at 16 (quoting Report (ECF No. 28-1), at 17, 31).

Furthermore, the statement by Anu Pillai, the Chief Technology Officer of DRCT, that "Colossus did not maintain a cookie-synchronization relationship with The Trade Desk and did

[11] Notably, Google's SSP was one of the 16 that were studied in the Report. *See* Ex. G, at 16-17 ("The study looked at ad serving mechanics and Trade Desk win notification pixels transacted from the following SSPs or supply sources across the sample of different websites. The following Trade Desk win notification pixels were cross referenced against the actual .adsrvr.org TDID user IDs. … Google ("bid.adsrvr.org/bid/feedback/google") … .") Yet another reason why Adalytics' Google-related requests are relevant.

not store or maintain The Trade Desk user identifiers ("TDIDs")" (Declaration of Anu Pillai in Support of Plaintiff's Motion to Reconsider ("Pillai Decl."), at ¶ 5) is incorrect. [redacted].[12]

Pillai also states in her declaration that "Colossus' arrangement with The Trade Desk was a deals-only arrangement, under which transactions were to be matched and executed by reference to deal IDs rather than in the open auction." Pillai Decl., at ¶ 4. That is beside the point – whether Colossus' arrangement with The Trade Desk was "deals only" does not eliminate the requirement that user IDs match.

Colossus also claims that the Google-related requests "are disproportionate as written." Motion to Reconsider, at 17. But it provides no analysis for why this is the case. Colossus merely regurgitates the requests, partially quoting their language. And the Court already tailored these Requests: Request No. 13 is limited to Colossus employees' communications and to the period September 30, 2023 through March 31, 2024, and Colossus need not duplicate discovery BidSwitch has already provided in Response to Request No. 14. Opinion, at 14.

Finally, Colossus' reliance on the purported increase in Google's spend after the withholding period is a merits argument, not a ground for reconsideration; it asks the Court to draw an inference in Colossus' favor from facts that discovery will test. Its premise, moreover – that "Google never suspended Colossus" (Motion to Reconsider, at 15) – is contradicted by the very

[12] In addition, Keith Smith's Declaration (ECF No. 75-5) states that Aidem, in 2024, "was among Colossus' largest trading relationships." Such cannot be true. *See* Declaration of Giovanni Sollazzo, filed in conjunction with this Opposition.

article Colossus quotes, which reports that Google "identified an issue with some bid requests from the SSP last fall within its DSP DV360 and immediately paused traffic." *Id*. at 14 (quoting ECF No. 68-17, at 5).

## CONCLUSION

WHEREFORE, for the foregoing reasons, Defendant Adalytics Research, LLC, respectfully requests that the Court deny Plaintiff Colossus Media, LLC's Motion to Reconsider in its entirety and grant such other and further relief as the Court deems just and proper.

Dated: November 16, 2026

Respectfully submitted,

**HUGHES HUBBARD & REED LLP**

By: */s/ Koushik Bhattacharya*

Koushik Bhattacharya (Fed. Bar No. 16994)
James "Jake" Schaller (Fed. Bar No. 21081)
Hughes Hubbard & Reed LLP
1775 I Street, N.W., Sixth Floor
Washington, DC 20006-2401
Tel: (202) 721-4600
Facsimile: (202) 721-4646
Email: koushik.bhattacharya@hugheshubbard.com
jake.schaller@hugheshubbard.com

*Counsel for Defendant Adalytics Research, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 16th day of November, 2026, a copy of the foregoing was served on all counsel of record via CM/ECF.

*/s/ Koushik Bhattacharya*
Koushik Bhattacharya