# Exhibit O

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| COLOSSUS MEDIA, LLC,<br>*Adalytics,*<br>*v.*<br>ADALYTICS RESEARCH, LLC,<br>*Defendant.* | Case 8:24-cv-01402-DKC |

**PLAINTIFF COLOSSUS MEDIA, LLC'S FIRST AMENDED OBJECTIONS AND RESPONSES TO DEFENDANT ADALYTICS RESEARCH, LLC'S FIRST SET OF INTERROGATORIES**

Plaintiff Colossus Media, LLC ("Colossus"), by and through undersigned counsel, and pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, hereby serves its Objections and Responses to Defendant Adalytics Research, LLC's ("Adalytics") First Set of Interrogatories and states the following:

## GENERAL OBJECTIONS

Colossus makes the following general objections to Adalytics' First Set of Interrogatories. These general objections are incorporated by reference into each specific response set forth below, whether or not a specific objection is made therein.

1. Colossus objects to Adalytics' Interrogatories, including any accompanying instructions and definitions, to the extent that they seek to impose requirements beyond those imposed by the Federal Rules of Civil Procedure.

2. Colossus objects to Adalytics' Interrogatories to the extent that it seeks information which is protected from disclosure pursuant to the Federal Rules of Civil Procedure or purport to require the identification and disclosure of information that is subject to the attorney-client

privilege, work product doctrine, documents or information prepared in anticipation of litigation, or documents or information subject to any other applicable privilege, doctrine, law, or rule that may be asserted. The inadvertent disclosure of privileged or protected information or documents by Colossus will not be deemed to be a waiver of any applicable privilege or protection with respect to such information or documents, or the subject matter of the information or documents.

3. Colossus objects to Adalytics' Interrogatories as overbroad and unduly burdensome to the extent that they seek the identification and disclosure of information or documents that are irrelevant or immaterial or are otherwise not reasonably calculated to lead to the discovery of admissible evidence.

4. Colossus further objects to the Interrogatories as seeking information unrelated to the claims or defenses in this action, including seeking information unrelated to and outside the scope of the Report, which specifically cites Colossus's bid activity observed in April 2024 "through publicly available information" with respect to Trade Desk and Trade Desk IDs or TDIDs. Colossus further objects to the Interrogatories to the extent they seek information that is outside of the business relationship between Colossus and The Trade Desk at the relevant time, which was a "deals only" arrangement, and is therefore unrelated to the claims or defenses in this action.

5. Colossus further objects to Adalytics' Interrogatories as overbroad, unduly burdensome and oppressive insofar as they purport to seek information or documents not in the possession, custody, or control of Colossus or to the extent that Adalytics' Interrogatories are related to or require the production or identification of documents, writings, records or publications in the public domain, information which is equally available to Adalytics or which is available to Adalytics from sources other than Colossus.

6. Colossus objects to the "Definitions" in their entirety to the extent they are vague, ambiguous, overbroad, unduly burdensome, exceed the usual and ordinary meanings of the words defined therein and are beyond the permissible scope of discovery as set forth in the Federal Rules of Civil Procedure.

7. Colossus objects to Adalytics' Interrogatories as vague, overbroad and unduly burdensome to the extent they use the term "you" or "your" in a manner that would require Colossus to respond on behalf of another in this action or to respond other than in its own capacity.

8. Colossus's Responses to Adalytics' Interrogatories are not intended to waive or prejudice any Objection Colossus may assert now or in the future, including, without limitation, Objections as to the admissibility of any Response at any proceeding in this matter.

9. Colossus objects to Adalytics' Interrogatories to the extent that they are not limited in time as overly broad, unduly burdensome, and seeking irrelevant information not reasonably calculated to lead to the discovery of admissible evidence.

10. Colossus reserves the right to supplement and/or amend these Objections and Responses based upon, among other things, further investigation, discovery of additional facts, or discovery of person(s) with knowledge of relevant information in this action or any other related proceeding.

11. Each of these General Objections is applicable to, and incorporated in, each of Colossus's Responses to Adalytics' Interrogatories as if specifically set forth in each Response. The stating of Specific Objections to a particular Interrogatory shall not be construed as a waiver of Colossus's General Objections.

Subject to the foregoing General Objections, Colossus responds as follows:

## SPECIFIC OBJECTIONS AND RESPONSES TO INTERROGATORIES

**INTERROGATORY NO. 1: Identify all persons who are likely to have personal knowledge, emails, documents, records, data, logfiles, or information related to any factual allegations in the Complaint and state the subject matter of the information possessed by each such person.**

**AMENDED RESPONSE:** Colossus objects to this Interrogatory as overly broad and unduly burdensome to the extent it seeks identification of "all persons" with any knowledge related to "any factual allegations in the Complaint" and asks Colossus to provide "the subject matter of the information possessed by each such person." Colossus further objects to the extent this Interrogatory seeks information protected by the attorney-client privilege, work product doctrine, and/or other applicable privilege.

Subject to and without waiving these objections, Colossus responds as follows:

The following persons are likely to have knowledge relating to the factual allegations in the Complaint:

(a) **Mark D. Walker**, Chairman and Chief Executive Officer of Direct Digital Holdings, Inc. ("DRCT"). Mr. Walker has knowledge concerning Colossus' business operations, the impact of Adalytics' Report on Colossus' business and reputation, communications with industry partners, and Colossus' damages.

(b) **Keith Smith**, President of DRCT. Mr. Smith has knowledge concerning Colossus' business operations, customer and partner relationships, and the impact of Adalytics' Report on Colossus' business.

(c) **Anu Pillai**, Chief Technology Officer of DRCT. Mr. Pillai has knowledge concerning the technical aspects of Colossus' SSP platform, including user ID matching, the intermediary relationship with BidSwitch, and the technical inaccuracies in the Adalytics Report.

(d) **Lashawnda Goffin**, CEO of Colossus. Ms. Goffin has knowledge concerning Colossus' business operations, impact of Adalytics' Report on Colossus' business and reputation, and communications with industry partners, and has specific knowledge of the impact of Adalytics' Report on Colossus' relationship with BidSwitch.

(e) **Geoff Schmidt**, Vice President of Technical Services for DRCT. Mr. Schmidt has knowledge concerning the technical aspects of Colossus' SSP

platform, including user ID matching, the intermediary relationship with BidSwitch, and the technical inaccuracies in the Adalytics Report.

(f) Representatives of **Colossus**. Current and former representatives of Colossus have knowledge concerning Colossus' business operations, the impact of Adalytics' Report on Colossus' business and reputation, communications with industry partners, and Colossus' damages, including the following individuals: Lashawnda Goffin, Cheryl Goodman and Jennifer Kavcsak.

(g) Representatives of **Adalytics** are likely to have knowledge concerning communications between Adalytics and Colossus prior to publication of the Report, including Adalytics' refusal to provide Colossus with an advance copy of the Report or take a phone call with Colossus' executives, and likely to have knowledge of the false nature of the claims in Adalytics' defamatory report, including the following individuals: Dr. Krysztof Franaszek.

(h) Representatives of **BidSwitch** (a subsidiary of Criteo) are likely to have knowledge concerning the intermediary relationship between Colossus and demand-side platforms such as The Trade Desk, and the user ID matching process that is at the center of Adalytics' false and defamatory Report, and to have knowledge of BidSwitch's decision to terminate its relationship with Colossus as a result of the claims in Adalytics' defamatory report, including the following individuals: Barry Adams.

(i) Representatives of **The Trade Desk** are likely to have knowledge concerning their business relationship with Colossus, any suspension or restriction of Colossus' access to The Trade Desk platform, and the reasons therefor, including the following individuals: Jud Spencer.

Colossus' investigation is ongoing, and it reserves the right to supplement and/or amend this response as discovery continues.

**<u>INTERROGATORY NO. 2:</u> Provide a list of all current and former employees, executives, accountants, software developers, and engineers – including contractors – who have performed work for the Colossus Media or developed, maintained, or updated software systems or digital advertising platforms used by Colossus Media.**

**<u>AMENDED RESPONSE:</u>** Colossus objects to this Interrogatory as overly broad, unduly burdensome, and disproportionate to the needs of this case. The Interrogatory seeks identification of every person who has ever "performed work for" Colossus or developed, maintained, or updated its software systems, without any limitation as to time frame or relevance to the claims or defenses in this case. Such a request would encompass vast numbers of individuals with no connection to

the matters at issue. Colossus further objects to this Interrogatory because it contains multiple subparts and is impermissibly compound. Colossus further objects to the extent this Interrogatory seeks confidential and proprietary business information.

Subject to and without waiving the foregoing objections, Colossus states as follows: Lashawnda Goffin, Cheryl Goodman, Jennifer Kavcsak, and Maria Lowrey managed various aspects of Colossus' relationships with DSPs and intermediaries, including BidSwitch and The Trade Desk.

**INTERROGATORY NO. 3: Identify Colossus' top fifty (50) Customers (by gross revenue) for each quarter, from April 1, 2022, through December 31, 2024. Include with your answer how much gross revenue (in U.S. dollars) each customer transacted with Colossus per quarter.**

**AMENDED RESPONSE:** Colossus objects to this Interrogatory as seeking information unrelated to the claims or defenses in this action, including seeking information unrelated to, and outside the scope of the Report, which cites Colossus's bid activity observed in April 2024 "through publicly available information" with respect to The Trade Desk and Trade Desk IDs or TDIDs. Moreover, it seeks information that is outside of the business relationship between Colossus and The Trade Desk, which at the relevant time was "deals only." Colossus objects to this Interrogatory as overly broad, unduly burdensome, and disproportionate to the needs of this case. The Interrogatory seeks granular, customer-by-customer revenue data on a quarterly basis spanning more than two and a half years for fifty customers per quarter, which would amount to identification of hundreds of data points. These efforts are not appropriate for an Interrogatory and are instead seeking for Colossus to perform a detailed damages analysis on Adalytics' behalf. Colossus further objects because this Interrogatory seeks confidential and proprietary business information. Colossus further objects to this Interrogatory because it contains multiple subparts and is impermissibly compound. Subject to and without waiving these objections, and pursuant

to Rule 33(d) of the Federal Rules of Civil Procedure, Colossus will produce business records sufficient to provide responsive information, to the extent relevant to the claims and defenses in this action.

**<u>INTERROGATORY NO. 4:</u> For the Customers identified in Interrogatory No. 3, above, list how many digital ad impressions each transacted with Colossus per quarter and how each was integrated with or transacted with Colossus (e.g., directly, via an intermediary such as BidSwitch, or via a specific ad platform such as Google DV360).**

**<u>AMENDED RESPONSE:</u>** Colossus objects to this Interrogatory as overly broad, unduly burdensome, and disproportionate to the needs of this case because it seeks the precise number of ad impressions transacted per customer per quarter and the specific integration method for each, which would require an enormous undertaking to compile. Colossus further objects on the grounds that this information constitutes confidential, proprietary, and trade-secret business information.

Subject to and without waiving these objections, Colossus states generally that it transacts with DSPs both directly and indirectly. The vast majority of Colossus' business comes from transactions with DSPs that Colossus sends through BidSwitch, an intermediary that helps connect SSPs with DSPs. The only relevant DSP that Colossus transacts with through BidSwitch is The Trade Desk. Subject to and without waiving these objections, and pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, Colossus will produce business records sufficient to provide the remaining responsive information, to the extent relevant to the claims and defenses in this action.

**<u>INTERROGATORY NO. 5:</u> Identify with specificity all "inaccurate and false blog posts" published by Adalytics – as you allege in Paragraph 1 of your Complaint – and, for each such blog post, state what information it contained that was inaccurate or false.**

**<u>AMENDED RESPONSE:</u>** Colossus objects to this Interrogatory as overbroad, unduly burdensome, and improperly containing multiple subparts to the extent it asks Colossus to "[i]dentify with specificity all "inaccurate and false blog posts" published by Adalytics and to state for each blog post "what information it contained that was inaccurate or false." Paragraph 1 of the

Complaint refers to Adalytics' reputation in the industry for publishing articles which are widely criticized as ill-researched or inaccurate – or, as in Colossus' case, outright false. A number of Adalytics' reports have come under scrutiny in recent years. For example, industry players criticized Adalytics' 2023 article "Are YouTube Advertisers Inadvertently Harvesting Data From Millions of Children" which took aim at Google for alleged COPPA violations, as deeply flawed and inaccurate. And in 2024, Adalytics again came under fire for publishing a piece on AI-powered brand-safety technology, which critics dubbed inaccurate. *See* Rheem Makari, *DoubleVerify and IAS Accused of Running Fortune 500 Ads on Websites with Offensive Content*, Campaign Asia (Aug. 12, 2024), https://aws2.campaignasia.com/article/doubleverify-and-ias-accused-of-running-fortune-500-ads-on-websites-with-offensiv/497675 (criticizing Adalytics' reporting as inaccurate).

**INTERROGATORY NO. 6: Identify all requests by any person or company that were sent to Colossus requesting that Colossus refrain from making comments regarding other ad tech platforms or supply side platforms (SSPs), such as TrustX or BidSwitch.**

**RESPONSE:** Colossus objects to this Interrogatory as vague, overly broad, and not reasonably calculated to lead to the discovery of admissible evidence relevant to the claims or defenses in this action. Colossus further objects to this Interrogatory as overbroad and unduly burdensome because it seeks information not related to the claims or defenses at issue in this action.

Subject to and without waiving these objections, after a reasonable investigation, Colossus is not presently aware of any such requests. Colossus reserves the right to amend and/or supplement this response.

**INTERROGATORY NO. 7: Identify each of the "false and misleading statements about Colossus SSP and its business" that you claim, in Paragraph 23 of your Complaint, Adalytics made in its Report.**

**AMENDED RESPONSE:** As alleged in Colossus' Complaint, the specific blog post at issue in this litigation is the post titled "Are user IDs declared consistently in ad auctions?" published by Adalytics on May 10, 2024, on the page URL: https://adalytics.io/blog/user-id-rotation (the "Report"). The Report's defamatory meaning is, and was intended to be, that Colossus committed fraud and engaged in improper business practices. The Report, viewed as a whole, leaves the distinct and inaccurate impression that Colossus committed fraud. The Report is false and misleading for the additional reasons stated in the Complaint, including but not limited to:

> (a) The Report falsely portrays Colossus as mis-declaring user IDs in its bid requests for the purpose of selling ad space at higher prices.
>
> (b) Colossus does not mis-declare or otherwise manipulate or alter user IDs in its bid requests. It is not possible for Colossus to mis-declare a user's TDID because Colossus connects to The Trade Desk through BidSwitch and has no control or knowledge of whether BidSwitch sends a particular bid request to The Trade Desk or another DSP, nor does Colossus have knowledge of TDIDs or the values associated with those TDIDs.
>
> (c) The Report falsely concluded that for all 15 of the other SSPs that transacted with The Trade Desk, the TDID declared by the SSP "always perfectly" matched the TDID in the user's browser. Contrary to the Report, there were discrepancies between the TDID sent in the bid response and the TDID in the user's browser for transactions between The Trade Desk and other SSPs that connect to The Trade Desk through an intermediary, as demonstrated by a video assembled by Colossus and confirmed by a third-party expert.
>
> (d) Upon information and belief, Adalytics doctored a screenshot in the Report in furtherance of the Report's false and defamatory conclusion that Colossus is responsible for the mis-declared TDIDs.
>
> (e) The Report falsely defines Colossus' activity as "Sophisticated Invalid Traffic" or "Cookie stuffing, recycling or harvesting."
>
> (f) The Report does not address or take into consideration the ID framework associated with the "deals only" arrangement that was specific to The Trade Desk's accounts, despite that the Report itself includes reference to a Colossus "deal id" which is only associated with "deals only" transactions. Consideration of the "deals only" arrangement and corresponding ID framework contradicts the basis upon which Adalytics claims the

misdeclaration was made given TDIDs/UserIDs were not the actionable IDs for a successful transaction between Colossus and Trade Desk.

The Report's false and/or misleading statements, include but are not limited to the following:

- "For fifteen SSPs, the declared 'tdid=' query string parameter seen in a Trade Desk win notification pixel was always perfectly aligned with the actual user cookie value."

- "However, for one of those sixteen SSPs - Colossus SSP - it appeared that the user ID declared to Trade Desk at ad auction time was markedly different from the actual user ID stored in user's Chrome browser cookie storage."

- "Out of sixteen SSPs analyzed, Colossus SSP is the only one for which consistent mis-declarations of declared user IDs were observed."

- "Only deterministic cookie IDs are allowed in the user.id or user.buyeruid field of the bid request. The user.buyeruid field should contain only browser-specific IDs issued directly from adsrvr.org or from an exchange-held matching table that contains only entries resulting from a cookie sync with adsrvr.org. UID1 can be sent in this field. UID2 should not be sent in this field [...] Probabilistic IDs, including probabilistically mapped TDIDs, device IDs, and UID2s, must be restricted to the extended identifiers (eids field) extension in the request along with the corresponding agent type (atype field)."

- "Trade Desk's public 'Unified ID Adoption Guidelines for SSPs' states: 'We write an ID called TDID into the top-level cookie in this domain along with the metadata describing the status of mapping that cookie to partners.'" (citing inapplicable Trade Desk guidelines as evidence of Colossus' wrongdoing).

- "For one SSP - Colossus SSP - the majority of observed impressions had a mis-match between the declared 'tdid=' query string parameter and the actual .adsrvr.org TDID user ID in the user's chrome browser storage.

  For example, during the course of a single browsing session on blavity.com, it was observed that when the Trade Desk transacted twice through Colossus SSP, in both instances a different 'tdid=' query string parameter was visible in the 'bid.adsrvr.org/bid/feedback/colossus' win notification pixel. In the first screenshot below, one can see that the 'tdid' parameter was mis-declared as 'ec0d2917-8cf6-43bc-bc27-e42f9619bd71'. This value does not align with the actual .adsrvr.org TDID user ID value in the user's Chrome cookie browser storage."

- "In the second screenshot below, from the same page view session on blavity.com, one can see that the 'tdid' was mis-declared as '5f8b12ef-b014-47f1-898d-d4b57693b766.'

This value does not align with the actual .adsrvr.org TDID user ID value in the user's Chrome cookie browser storage."

- "Given this observation, one might reasonably inquire whether it is possible that user ID mis-declarations observed in this report when Trade Desk transacts via Colossus SSP can be due to some Bidswitch mediated software services."
- "However, a review of Bidswitch's public documentation regarding Supplier User Matching ("https://protocol.bidswitch.com/support/cookie-matching.html") does not appear to contain any information on how Bidswtich might "override", "inject", "substitute", or "replace" user cookie IDs sent to it by an SSP partner."

Each of these statements is false and/or misleading because they falsely misrepresent Colossus as "injecting" or "mis-declar[ing]" user-ids in order to give the defamatory impression that Colossus intentionally manipulated the bid auction process in order to inflate its own revenue and because they inaccurately describe Colossus' technology and the operation of the relevant ad auctions. Colossus's investigation is ongoing, and it reserves the right to amend and/or supplement this response as discovery proceeds.

As alleged in Paragraph 23 of the Complaint, on May 10, 2024, Adalytics published the Report, which "makes false and misleading statements about Colossus SSP and its business to instill distrust of Colossus SSP and other ad technology products among ad buyers and other ad technology vendors for the purpose of winning new business from ad buyers." The specific false and misleading statements include, without limitation, the statements identified above and in Paragraphs 23 through 34 of the Complaint. Colossus reserves the right to amend and/or supplement this response.

**AMENDED INTERROGATORY NO. 8: Identify the experts referenced in Paragraphs 15, 26, and 28 of your Complaint.**

**RESPONSE:** Colossus states that the expert author of the publicly available statements identified in Paragraphs 15, 26, and 28 of the Complaint is Dr. Augustine Fou.

**<u>INTERROGATORY NO. 9:</u> Identify the "discrepancies between the TDID sent in the bid response and the TDID in the user's browser for transactions between Trade Desk and other SSPs that connect to Trade Desk through an intermediary," as you state in Paragraph 28 of your Complaint. For each such discrepancy, identify the SSP that was engaged in a transaction with Trade Desk.**

**<u>AMENDED RESPONSE:</u>** Colossus objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, work product doctrine, and/or other applicable privilege. Colossus further objects to this Interrogatory because it contains multiple subparts and is impermissibly compound. Colossus further objects to this Interrogatory as overly broad and unduly burdensome.

Subject to and without waiving these objections, as alleged in the Complaint, contrary to Adalytics' claims in the Report, the TDID sent in the bid response and the TDID in the user's browser for transactions between The Trade Desk and other SSPs that connect to The Trade Desk through an intermediary, like Colossus does, have different values. For example, testing conducted by Colossus and its representatives indicates that TrustX and other SSPs that like Colossus, connect to Trade Desk indirectly through an intermediary (like BidSwitch), report different values between the TDID sent in the bid response and the TDID in the user's browser for transactions. Colossus' investigation is ongoing, and it reserves the right to amend and/or supplement this response as discovery proceeds. Subject to and without waiving these objections, and pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, Colossus will produce business records sufficient to provide responsive information, to the extent relevant to the claims and defenses in this action.

**<u>INTERROGATORY NO. 10:</u> State all facts and evidence in your possession to support the contention in Paragraph 30 of your Complaint that Adalytics "doctored" the screenshot that you included in your Complaint above Paragraph 30.**

**<u>AMENDED RESPONSE:</u>** Colossus objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, work product doctrine, and/or other applicable privilege. Colossus further objects to this Interrogatory to the extent it seeks information already in the possession of, or more readily obtained from, Adalytics. Colossus further objects to this Interrogatory as overly broad and unduly burdensome to the extent it asks Colossus to state "all facts and evidence" supporting the allegations in Paragraph 30 of the Complaint.

Subject to and without waiving these objections, Colossus states as follows: The screenshot referenced in Paragraph 30 of the Complaint is heavily redacted to only show a few isolated data points and appears to refer to an impression observed at "media.grid.bidswitch .net" and not "bid.adsrvr .org/feedback/trustx," which would be the appropriate url for the TrustX transaction supposedly observed in the screenshot. Colossus expects that discovery may provide further evidence in support of the allegations in Paragraph 30, that Adalytics doctored the screenshot included in the Report purporting to show that there were no discrepancies in TDIDs for transactions with another SSP that connects to The Trade Desk through an intermediary. =Colossus' investigation is ongoing, and it reserves the right to amend and/or supplement this response as discovery proceeds.

**<u>INTERROGATORY NO. 11:</u> State all facts and evidence in your possession to support the contention in Paragraph 31 of your Complaint that Adalytics "worked to amplify" the "false statements" described in the Complaint.**

**<u>RESPONSE:</u>** Colossus objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, work product doctrine, and/or other applicable privilege. Colossus further objects to this Interrogatory to the extent it seeks information already in the possession of, or more readily obtained from, Adalytics. Colossus further objects to this

Interrogatory as overly broad and unduly burdensome to the extent it asks Colossus to state "all facts and evidence" supporting the allegations in Paragraph 31 of the Complaint. Colossus further objects to this Interrogatory as premature to the extent it seeks "all facts and evidence" that support Colossus' "contention in Paragraph 31 of [the] Complaint that Adalytics 'worked to amplify' the 'false statements' described in the Complaint." Colossus will respond to this Interrogatory at the appropriate time pursuant to Federal Rule of Civil Procedure 33(a)(2).

**INTERROGATORY NO. 12: Identify all the "false statements" made by Adalytics in the Report that you reference in Paragraph 41 of your Complaint.**

**AMENDED RESPONSE:** Colossus incorporates by reference its responses and objections to Interrogatory No. 7 above. As alleged in Paragraph 41 of the Complaint, upon information and belief, Adalytics illegally doctored the screenshot and made other false statements in furtherance of a financially motivated scheme designed to eliminate Colossus from the industry in order to benefit Adalytics financially. The false statements in the Report include, without limitation, all of the statements identified in Colossus' response to Interrogatory No. 7 and in Paragraphs 23 through 41 of the Complaint.

**INTERROGATORY NO. 13: Explain in detail and with specificity the "massive harm to Colossus SSP's business and reputation" that you allege in Paragraph 42 of your Complaint was caused by Adalytics' Report.**

**AMENDED RESPONSE:** Colossus objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, work product doctrine, and/or other applicable privilege. Colossus further objects to this Interrogatory as overly broad and unduly burdensome to the extent it asks Colossus to explain "in detail and with specificity" the massive harm Adalytics' defamatory report has caused Colossus.

Subject to and without waiving these objections, as alleged in the Complaint, the false, defamatory, and disparaging Report published by Adalytics has caused massive harm to Colossus' business and reputation and threatens its very existence. Specifically:

(a) After Adalytics released an advance copy of the Report to the media on or about May 8 or May 9, 2024, on May 9, 2024, The Trade Desk suspended business with Colossus because of the Report's claims that Colossus misrepresented user IDs in its bid requests.

(b) Also on May 9, 2024, Basis suspended business with Colossus because of the Report's claims that Colossus misrepresented user IDs in its bid requests.

(c) Only mere hours after Adalytics published the Report on May 10, 2024, BidSwitch, citing a reference to the Report as the basis for its suspension, suspended Colossus from trading through its platform, causing Colossus significant financial harm as the majority of Colossus' revenue comes from transactions through BidSwitch, and the vast majority of Colossus' thousands of publisher customers connect to DSPs through Colossus' transactions with BidSwitch. Months after the Report was published, BidSwitch partially reinstated Colossus, but Colossus remained limited in which DSPs it could engage with through BidSwitch, and accordingly, the number of DSPs that it could offer to connect its publisher customers with. Because of the devastating reputational harm caused by the Report's false attacks, Colossus' performance deteriorated. BidSwitch permanently suspended its relationship with Colossus because of the sharp decline in Colossus' business that the Report caused.

(d) Beyond the direct financial harm, the Report caused damage to Colossus' reputation and goodwill by accusing Colossus of engaging in fraudulent activity and impeaching Colossus' honesty, integrity, and core business.

Colossus' damages continue to accrue, and the full extent of the harm is still being evaluated. Colossus reserves the right to amend and/or supplement this response as its investigation and discovery proceed.

**<u>INTERROGATORY NO. 14:</u> Explain exactly when and why The Trade Desk suspended business with Colossus, as you state in Paragraph 43 of your Complaint, and include with your answer the reasons provided by The Trade Desk for suspending business.**

**<u>RESPONSE:</u>** Colossus objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, work product doctrine, and/or other applicable privilege.

Colossus further objects to this Interrogatory to the extent it seeks information more readily obtained from a third party. Colossus further objects to this Interrogatory because it contains multiple subparts and is impermissibly compound.

Subject to and without waiving these objections, as alleged in the Complaint, after Adalytics released an advance copy of the Report to the media on or about May 8 or May 9, 2024, and before Colossus had been provided any opportunity to view the Report or address the Report's false claims, The Trade Desk suspended business with Colossus on May 9, 2024, because of the Report's claims that Colossus misrepresented user IDs in its bid requests. Colossus reserves the right to amend and/or supplement this response as discovery proceeds.

**INTERROGATORY NO. 15: Identify any other times The Trade Desk has suspended, restricted, or reduced business with Colossus, and for each such other time, provide the reason for the suspension, restriction or reduction.**

**AMENDED RESPONSE:** Colossus objects to this Interrogatory as vague and ambiguous to the extent it asks Colossus to identify and explain each time The Trade Desk has "reduced business" with Colossus. Colossus further objects to this Interrogatory as overly broad and unduly burdensome to the extent it asks Colossus to identify "any other times the Trade Desk has suspended, restricted or reduced business with Colossus" without regard to whether those instances have any relation to the claims or defenses at issue in this action.

Subject to and without waiving these objections, Colossus states that in 2024, including the months preceding the release of Adalytics' defamatory Report, Colossus' transactions with The Trade Desk were made on a "deals only" basis. Apart from this agreed arrangement, and the termination that followed the release of Adalytics' defamatory Report, Colossus is aware of no suspension or restriction on the part of The Trade Desk. Colossus reserves the right to amend and/or supplement this response, as discovery is ongoing.

**<u>INTERROGATORY NO. 16:</u> Identify any other business that you claim paused or ceased engaging with you or otherwise altered its relationship with you as a result of the publication of the Report.**

**<u>AMENDED RESPONSE:</u>** Colossus objects to this Interrogatory to the extent it seeks confidential and proprietary business information. Colossus further objects to this Interrogatory as vague and ambiguous because the scope of the phrase "altered its relationship with you" is unclear.

Subject to and without waiving these objections, Colossus states as follows: At the time the Report was released, Colossus engaged with thousands of publisher customers who utilized Colossus' services to sell advertising space to DSPs. The vast majority of those publisher customers utilized Colossus' services through the intermediary BidSwitch. More than 70% of Colossus' revenue was generated from transactions with BidSwitch prior to the defamatory Report's publication. As a result of the defamatory claims in the Report, BidSwitch suspended its relationship with Colossus on May 10, 2024, which immediately cut Colossus and its publisher customers off from DSPs that could purchase the publishers' advertising inventory. The Trade Desk and Basis Technologies also suspended their relationships with Colossus as a result of the Report. Colossus' investigation is ongoing, and it reserves the right to amend and/or supplement this response as discovery proceeds, including following the exchange of documents and depositions.

**<u>INTERROGATORY NO. 17:</u> Describe any limitation of Colossus' access to any type of customer or partner as a result of the Report.**

**<u>AMENDED RESPONSE:</u>** Colossus objects to this Interrogatory to the extent it seeks confidential and proprietary business information. Colossus further objects to this Interrogatory as overly broad and unduly burdensome to the extent it asks for Colossus to describe "any

limitation" of Colossus access to any type of customer or partner as a result of Adalytics' defamatory report.

Subject to and without waiving these objections, Colossus incorporates its response to Interrogatory Nos. 13 and 16 above. Further, pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, Colossus will produce business records sufficient to provide responsive information, to the extent relevant to the claims and defenses in this action.

**INTERROGATORY NO. 18: Itemize and show how you calculate any damages claimed by you in this action, whether economic, non-economic, punitive, or other.**

**RESPONSE:** Colossus objects to this Interrogatory as premature to the extent Colossus' damages are still being evaluated and quantified, and discovery is ongoing. Colossus further objects to the extent this Interrogatory seeks information protected by the attorney-client privilege, work product doctrine, and/or other applicable privilege.

Subject to and notwithstanding the foregoing objections, Colossus states that it has suffered significant damage as a result of Adalytics' false, misleading, disparaging, and defamatory statements. Adalytics' actions have directly and proximately injured Colossus SSP, causing the loss of customers and industry partners and resulting in special damages, as well as the loss of good will and reputational injury. Colossus' investigation of its claims, and discovery, is ongoing, and its damages are yet to be finally determined. Colossus will amend and/or supplement this Interrogatory as required by Federal Rule of Civil Procedure 26(a)(2) and the scheduling order.

**INTERROGATORY NO. 19: Identify all evidence, described in Paragraph 1 of your Complaint, that you "presented" to Adalytics that purportedly shows the Report "was false and inaccurate."**

**RESPONSE:** Colossus objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, work product doctrine, and/or other applicable privilege. Colossus further objects to this Interrogatory to the extent it requests information already in

Adalytics' possession. Colossus further objects to this Interrogatory as overly broad and unduly burdensome to the extent it asks Colossus to identify "all evidence" that Adalytics' report was false and inaccurate.

Subject to and without waiving these objections, and pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, Colossus will produce business records sufficient to respond to this Interrogatory.

**INTERROGATORY NO. 20: Describe the "limited information" you received from reporters about the Report, as described in Paragraph 20 of your Complaint.**

**RESPONSE:** Colossus objects to this Interrogatory to the extent it seeks information protected by the reporter's privilege, the attorney-client privilege, and/or the work product doctrine.

Subject to and without waiving these objections, as alleged in Paragraph 20 of the Complaint, in early May 2024, several reporters contacted Colossus regarding an advance copy of the Report that the reporters had received from Adalytics. Based on the limited information that the reporters provided to Colossus about the Report, Colossus knew that Adalytics' post contained false and inaccurate information about Colossus. The limited information included descriptions or summaries of the allegations in the Report concerning purported user ID mismatches in ad auctions involving Colossus. Colossus reserves the right to amend and/or supplement this response.

**INTERROGATORY NO. 21: Describe with detail and specificity all external individuals and companies with whom Colossus or DRCT representatives discussed Adalytics – in person, via phone or video, or in written correspondence – from May 5, 2024 to present.**

**RESPONSE:** Colossus objects to this Interrogatory as overly broad and unduly burdensome given that it seeks identification of "all external individuals and companies" with

whom Colossus or DRCT discussed Adalytics, without limitation, over a period of approximately two years. Colossus further objects to the extent this Interrogatory seeks information protected by the attorney-client privilege and/or work product doctrine. Colossus also objects to the extent this Interrogatory improperly seeks to impose discovery obligations on DRCT, which is not a party to this action.

Subject to and without waiving these objections, Colossus states that its representatives have discussed Adalytics and the Report with certain customers, partners, media, investors, and industry contacts in the ordinary course of business, including in connection with the public statements and filings referenced in the pleadings. Colossus reserves the right to supplement this response as discovery proceeds.

**INTERROGATORY NO. 22: Identify all companies or individuals who provide servers, logging, software, or other functionality for you, including in your answer what each company or individual provides.**

**AMENDED RESPONSE:** Colossus objects to this Interrogatory as overly broad, unduly burdensome, and disproportionate to the needs of this case. This Interrogatory seeks identification of every vendor or service provider that provides any technology or functionality to Colossus, irrespective of whether such information is relevant to the claims or defenses in this action. Colossus further objects on the grounds that this information constitutes confidential, proprietary, and trade-secret business information.

Subject to and without waiving these objections, as publicly stated on its website, Colossus' partnerships include HUMAN Security for pre-bid filtering and post-bid analysis to mitigate fraud, and Confiant for creative scanning and blocking to prevent malware. The majority of Colossus' business comes from transactions with DSPs that Colossus sends through BidSwitch, which serves

as an intermediary helping connect SSPs with DSPs. Colossus does not currently engage third parties for the development or maintenance of its software.

Colossus will provide further responsive information to the extent it is relevant to the claims and defenses in this action and proportional to the needs of the case.

Dated: August 19, 2026

Respectfully submitted,

*/s/ Robert A. Muckenfuss*

Ava E. Lias-Booker (Federal Bar No. 05022)
Melissa O. Martinez (Federal Bar No. 28975)
**McGuireWoods LLP**
500 East Pratt Street, Suite 1000
Baltimore, MD 21202-3169
(410) 659-4400
(410) 659-4482 Fax
alias-booker@mcguirewoods.com
mmartinez@mcguirewoods.com

Robert A. Muckenfuss (admitted *pro hac vice)*
**McGuireWoods LLP**
201 N. Tryon Street, Suite 3000
Charlotte, NC 28202
(704) 343-2052
(704) 343-2300 Fax
rmuckenfuss@mcguirewoods.com

Lucy J. Wheatley (admitted *pro hac vice*)
**McGuireWoods LLP**
Gateway Plaza
800 East Canal Street
Richmond, VA 23219
(804) 775-4320
(804) 698-2017 Fax
lwheatley@mcguirewoods.com

Carson R. Bartlett (admitted *pro hac vice*)
**McGuireWoods LLP**
Gateway Plaza
800 East Canal Street
Richmond, VA 23219
(804) 775-1829

(804) 698-2029Fax
cbartlett@mcguirewoods.com

***Counsel for Colossus Media, LLC***

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on August 19, 2026, a true and correct copy of the foregoing Plaintiff Colossus Media, LLC's First Amended Objections and Responses to Defendant Adalytics Research, LLC's First Set of Interrogatories was served upon the following counsel of record via email:

Koushik Bhattacharya
James "Jake" Schaller
**HUGHES HUBBARD & REED LLP**
1775 I Street, N.W., Sixth Floor
Washington, DC 20006-2401
koushik.bhattacharya@hugheshubbard.com
jake.schaller@hugheshubbard.com

***Counsel for Defendant***
***Adalytics Research, LLC***

*__/s/ Robert A. Muckenfuss__*
*Counsel for Colossus Media LLC*

## VERIFICATION

I, Keith W. Smith, am authorized to make this verification on behalf of Colossus Media, LLC, in the case of *Colossus Media, LLC v. Adalytics Research, LLC*, Civil Action No. 8:24-cv-01402-DKC (D. Md.). I have reviewed the document entitled "***Plaintiff Colossus Media, LLC's First Amended Objections and Responses to Defendant Adalytics Research, LLC's First Set of Interrogatories***" and am familiar with its contents. I am informed and believe that the matters stated therein pertaining to Colossus Media, LLC are true and correct to the best of my knowledge, information, and belief.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

PLAINTIFF COLOSSUS MEDIA, LLC

Signature: Keith W. Smith

Date: 8-19-26

Title: President

Print Name: Keith W. Smith